Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
SIGA TECHNOLOGIES, INC.,                    :    14-_____ (___)
                                            :
                        Debtor.             :
                                            :
------------------------------------------------------------x
```

**MOTION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING (I) PAYMENT OF
PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION
AND BENEFITS, (II) MAINTENANCE OF EMPLOYEE BENEFITS PROGRAMS
AND PAYMENT OF RELATED ADMINISTRATIVE OBLIGATIONS, AND
(III) APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS
TO RECEIVE, PROCESS, HONOR, AND PAY ALL CHECKS PRESENTED
FOR PAYMENT AND TO HONOR ALL FUND TRANSFER REQUESTS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**" or "**SIGA**"), respectfully represents:

**Background**

1. On the date hereof (the "**Commencement Date**"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage

its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

2. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit of Eric A. Rose Pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York, sworn to on the date hereof, which has been filed with the Court on the date hereof.

## Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4. The Debtor requests that the Court enter, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, an order: (i) authorizing, but not requiring, SIGA to pay, in its sole discretion, all payments required under or related to Wage Obligations, Payroll Taxes, Withholding Obligations, Health and Welfare Plan Obligations, Payroll and Benefit Administration Obligations, Reimbursement Obligations, Temporary Employee Obligations, Vacation Obligations, Sick Leave Obligations, Severance Obligations, and Other Employee Programs (each as defined below and, collectively, the "**Prepetition Employee Obligations**," and, the programs underlying each, collectively, the "**Employee Programs**")[1] and all costs

---

[1] The Debtor believes that the list of wages, benefits, and other programs and obligations is a comprehensive list of employee compensation and benefits. To the extent, however, any plan or program was inadvertently omitted, the terms "Prepetition Employee Obligations" and "Employee Programs" include such plan or program and obligations thereunder.

2

incident to the foregoing, and to continue to honor its practices, programs, and policies for its Employees, as those practices, programs, and policies were in effect as of the Commencement Date and as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's business; and (ii) authorizing applicable banks and other financial institutions (collectively, the "**Disbursement Banks**") to receive, process, and pay any and all checks drawn on the Debtor's payroll and general disbursement accounts (collectively, the "**Disbursement Accounts**"), and to honor all fund transfer requests to the extent such transfers relate to any of the foregoing.

### The Debtor's Employees

5. As of the Commencement Date, the Debtor employs thirty-four (34) employees (the "**Employees**"), of whom thirty-one (31) are full-time employees, two (2) are part-time employees, and one (1) is an intern. None of the Employees are unionized, and the Debtor is not a party to any collective bargaining agreement.

### Prepetition Employee Obligations

6. As described more fully herein, the Debtor estimates that its Prepetition Employee Obligations are less than $30,000, excluding those Prepetition Employee Obligations (e.g., Vacation Obligations and Sick Leave Obligations) that either (i) will be honored or paid over time in the ordinary course of the Debtor's business and/or (ii) may not require cash payments. As also described more fully herein, while the Debtor does not believe that any Employees are owed in excess of the $12,475 cap for Wage Obligations (as defined below), the aggregate of its Prepetition Employee Obligations may result in some Employees having claims in excess of the priority in section 507(a)(4) of the Bankruptcy Code.

3

**Wages, Salaries, and Other Compensation**

7. The Debtor typically pays its full-time Employees and one of the part-time Employees a percentage of their base pay on a semi-monthly basis. The intern and the other part-time Employee receive an hourly wage, which is also paid on a semi-monthly basis. The average gross semi-monthly compensation paid to Employees is approximately $223,000. Approximately two (2) business days before each semi-monthly payment, the Debtor pre-funds all wages, salaries, and/or overtime owed to the Employees (collectively, the "**Wage Obligations**") to TriNet HR Corp. (TriNet HR Corp. and any affiliates thereof, "**TriNet**"), which administers the Debtor's payroll. The Debtor estimates, as of the Commencement Date, it owes a de minimis amount in prepetition Wage Obligations to Employees, none of whom (the Debtor believes) are owed in excess of the $12,475 priority set forth in section 507(a)(4) of the Bankruptcy Code.

**Withholding Obligations**

8. The Debtor is required by law to withhold from an Employee's wages amounts related to federal, state, and local income taxes, and social security and Medicare taxes (collectively, the "**Trust Fund Taxes**") and remit the same to the appropriate tax authorities (collectively, the "**Taxing Authorities**"). The Debtor is required to match from its own funds the social security and Medicare taxes, and pay, based on a percentage of gross payroll, additional amounts for state and federal unemployment insurance (together with the Trust Fund Taxes, the "**Payroll Taxes**") and to remit the Payroll Taxes to the Taxing Authorities. The amount remitted by the Debtor each month depends on employee headcount and compensation levels. In the current month, the Debtor expects to remit approximately $170,000 in Payroll Taxes. Approximately two (2) business days before each semi-monthly payment of the Debtor's Wage Obligations, the Debtor pre-funds all Payroll Taxes to TriNet,

which remits all Payroll Taxes directly to the appropriate Taxing Authorities. The Debtor estimates that, as of the Commencement Date, a de minimis amount in prepetition Payroll Taxes is due and payable to the Taxing Authorities for Employee withholdings and the Debtor's share of such taxes.

9. The Debtor would withhold from Employee Wages certain amounts in the event of various obligations (e.g., 401k loan repayments, garnishments, child support, and other similar items) (the "**Withholding Obligations**"). Currently, the Debtor does not have any Withholding Obligations and, thus, there are no prepetition Withholding Obligations that have not yet been remitted to the applicable third party. If the Debtor has such obligations in the future, approximately two (2) business days before each semi-monthly payment of the Debtor's Wage Obligations, the Debtor will pre-fund all Withholding Obligations to TriNet, which will remit all Withholding Obligations to the appropriate third party.

**Health and Welfare Benefits**

10. The Debtor offers several health and welfare benefit plans (the "**Health and Welfare Plans**" and the obligations thereunder or related thereto, the "**Health and Welfare Plan Obligations**") for Employees that work at least thirty (30) hours per week, including, but not limited to, coverage for medical, dental, vision, life, disability, and accidental death and dismemberment insurance. The Health and Welfare Plans are provided through insurance programs and policies obtained directly by TriNet. The Debtor pays TriNet on a semi-monthly basis for the ratable cost of the insurance attributable to the Employees, with the Employees paying a portion of such cost in certain circumstances.

11. As of the Commencement Date, the Debtor estimates total expenditures in 2014 for the Health and Welfare Plans to be approximately $500,000, all of which is funded through TriNet. Because the Health and Welfare Plans are fully insured, the Debtor does not

5

believe it has any prepetition obligations outstanding with respect to the Health and Welfare Plan Obligations other than any outstanding payments to TriNet with respect thereto, which should be relatively de minimis.

**Administration of Payroll and Employee Benefit Plans**

12. In the ordinary course of its business the Debtor uses the services provided by TriNet to administer its payroll and employee plans, benefits, policies, and programs (the "**Payroll and Benefit Administration Obligations**"). Annually, the Debtor incurs approximately $32,000 in Payroll and Benefit Administration Obligations. The Debtor pays its Payroll and Benefit Administration Obligations to TriNet on a semi-monthly basis and estimates that a de minimis amount of Payroll and Benefit Administration Obligations are accrued and unpaid as of the Commencement Date.

**Business Expense Reimbursement**

13. The Debtor customarily reimburses Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtor. These reimbursement obligations include travel, lodging, ground transportation, meals, client entertainment expenses, professional seminars, continuing education classes, professional licenses, and other miscellaneous business expenses (the "**Reimbursement Obligations**"). It is difficult for the Debtor to determine the exact amount of Reimbursement Obligations outstanding at any particular time. As of August 31, 2014, the Debtor estimates that approximately $200,000 has been paid for Reimbursement Obligations for this calendar year. The Debtor estimates that, as of the Commencement Date, prepetition Reimbursement Obligations should not exceed approximately $25,000 based on historical experience.

6

**Temporary Employees**

14. From time to time, the Debtor uses the services of independent contractors and temporary employees, including employees provided by temporary agencies who provide necessary services relating to the operation of the Debtor's business. As of the Commencement Date, the Debtor has one (1) temporary employee (the "**Temporary Employee**," and the obligations payable with respect thereto, the "**Temporary Employee Obligations**"). The Temporary Employee was hired through a temp agency, which invoices the Debtor for work done by the Temporary Employee. As of the Commencement Date, the Debtor estimates that it has less than $5,000 in prepetition accrued and unpaid Temporary Employee Obligations.

**Vacation Policy**

15. Eligible Employees accrue vacation time on a semi-monthly basis for prospective use. All obligations with respect to vacation time are hereinafter referred to as the "**Vacation Obligations**." Vacation time is earned based on number of days worked and length of service. Pursuant to the Debtor's vacation policy, eligible Employees are paid their full wage for each earned vacation day, up to the maximum number of days accrued by that Employee under the vacation policy. As of the Commencement Date, the Debtor had approximately $270,000 in prepetition accrued and unused Vacation Obligations to be honored in the ordinary course of the Debtor's business. The Vacation Obligations continue to accrue in the ordinary course of business.

**Sick Leave**

16. The Debtor provides sick leave ("**Sick Leave**") to its Employees. Generally, eligible Employees are entitled to Sick Leave in accordance with applicable company policy. Employees may accrue up to forty (40) hours of Sick Leave, but are not compensated for accrued but unused sick days. As the Debtor does not quantify the dollar

7

amount of Sick Leave, it is not possible to calculate the actual prepetition amount owed with respect to Sick Leave. The Debtor seeks authority to honor all prepetition obligations with respect to Sick Leave (collectively, the "**Sick Leave Obligations**").

**Severance Program**

17.     The Debtor provides severance benefits on a case-by-case basis (the "**Severance Programs**"). Historically, severance has been determined based upon an employee's years of service, contractual status and level of compensation, with payments ranging from two (2) to eight (8) weeks of compensation in most cases.

18.     The Debtor does not have any current obligations outstanding to pay severance under its Severance Programs. The Debtor does, however, intend to honor the Severance Programs after the Commencement Date, as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's operations[2] (collectively, the "**Severance Obligations**").[3]

**Other Employee Programs**

19. In addition to the foregoing, the Debtor has certain other practices, programs, and policies that provide benefits to its Employees, including, but not limited to, a number of incentive plans designed to provide compensation and other benefits to Employees in order to encourage and reward Employee performance for the benefit of the Debtor's business and maternity leave (collectively, the "**Other Employee Programs**"). Eligibility for the Other

---

[2] The Debtor believes that under applicable Second Circuit law, honoring the Severance Programs as to current Employees is in the ordinary course of the Debtor's business.

[3] The Debtor is not by this Motion seeking authority to (i) make payments to former Employees who may be entitled to receive amounts pursuant to the Severance Programs, (ii) honor any change in control agreements of current or former Employees or to pay prepetition claims or obligations such as severance to former Employees arising under individual agreements, or (iii) make any payments inconsistent with section 503(c) of the Bankruptcy Code.

WEIL:\95075902\11\99980.0025

Employee Programs depends on the Employee's classification or level, and the actual amount of the incentive compensation depends on whether the Debtor and the eligible Employee meet certain performance objectives. Subject to the requirements of section 503 of the Bankruptcy Code, the Debtor intends to continue and to honor such practices, programs, and policies after the Commencement Date, as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's operations.

## Basis for the Relief Requested

### Cause Exists to Authorize the Payment of Prepetition Wages, Compensation, and Other Prepetition Employee Obligations

20. Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a debtor's employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Commencement Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Commencement Date, are afforded unsecured priority status of $12,475 per employee. 11 U.S.C. §§ 507(a)(4), (a)(5). Furthermore, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

21. The Debtor believes that the vast majority of the Prepetition Employee Obligations constitute priority claims. The Debtor submits, however, that to the extent any Employee is owed more than $12,475 for Prepetition Employee Obligations, payment of those

14-12623-shl    Doc 8    Filed 09/16/14    Entered 09/16/14 06:45:10    Main Document
Pg 9 of 20

Employee Programs depends on the Employee's classification or level, and the actual amount of the incentive compensation depends on whether the Debtor and the eligible Employee meet certain performance objectives. Subject to the requirements of section 503 of the Bankruptcy Code, the Debtor intends to continue and to honor such practices, programs, and policies after the Commencement Date, as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's operations.

## Basis for the Relief Requested

### Cause Exists to Authorize the Payment of Prepetition Wages, Compensation, and Other Prepetition Employee Obligations

20. Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a debtor's employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Commencement Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Commencement Date, are afforded unsecured priority status of $12,475 per employee. 11 U.S.C. §§ 507(a)(4), (a)(5). Furthermore, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

21. The Debtor believes that the vast majority of the Prepetition Employee Obligations constitute priority claims. The Debtor submits, however, that to the extent any Employee is owed more than $12,475 for Prepetition Employee Obligations, payment of those

WEIL:\95075902\11\99980.0025

amounts is necessary and appropriate and is authorized under sections 363(b) and 105(a) of the Bankruptcy Code.

22. A Court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a Court must find that a "good business reason" exists for the use of such assets. *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-29 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

23. The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District consistently have declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions are

10

attributable to any "'rational business purpose.'"  *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

24. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtor to pay the Prepetition Employee Obligations because such payments are necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) ("'[I]t is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

25. In a long line of well-established cases, courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g., Miltenberger v. Logansport,*

11

*C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir.) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

26. This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to debtors' continued operation); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

27. The Employees are vital to the continued operation of the Debtor's business and to its successful reorganization. Any delay in paying Prepetition Employee Obligations will adversely impact the Debtor's relationship with its Employees and could irreparably impair the Employees' morale, dedication, confidence, and cooperation. The Employees' support for the Debtor's business and reorganization efforts is critical. At this early stage, the Debtor simply

cannot risk the substantial damage to its business that would inevitably attend any decline in its Employees' morale attributable to the Debtor's failure to pay wages, salaries, benefits, and other similar items.

28. Absent an order granting the relief requested, the Employees also will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtor will be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment alternatives.

29. The Debtor does not currently seek to alter its compensation, vacation, and other benefit policies.  This Motion is intended only to permit (i) the Debtor, in its discretion, to make payments consistent with those policies to the extent that, without the benefit of an order approving this Motion, those payments would be inconsistent with the Bankruptcy Code, and (ii) the Debtor, in its discretion, to continue to honor its practices, programs, and policies for its Employees, as those practices, programs, and policies were in effect as of the Commencement Date or may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's business.

30. The Debtor submits that with respect to that portion of the Prepetition Employee Obligations that constitutes Trust Fund Taxes, the payment of such taxes will not prejudice other creditors of the Debtor's estate, given that the relevant Taxing Authorities would hold a priority claim under section 507(a)(8) of the Bankruptcy Code in respect of such obligations.  Moreover, the monies payable for trust fund taxes generally are not property of a debtor's estate.  *See*, *e.g.*, *Begier v. IRS*, 496 U.S. 53, 59 (1990) (withholding taxes are property held by the debtor in trust for another and, as such, are not property of the Debtor's estate).  The

13

Debtor submits that the Withholding Obligations are also not property of the Debtor's estate under section 541 of the Bankruptcy Code.

31. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority to honor and pay the Prepetition Employee Obligations as and when they come due, and to continue at this time its practices, programs, and policies for its Employees, as those practices, programs, and policies were in effect as of the Commencement Date.

**Applicable Banks Should Be Authorized to
Honor and Pay Checks Issued and Make Other
<u>Transfers to Pay the Prepetition Employee Obligations</u>**

32. The Debtor further requests that the Court authorize the Disbursement Banks to receive, process, honor, and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtor for the Prepetition Employee Obligations and benefits discussed herein. The Debtor also seeks authority to issue new postpetition checks, or effect new fund transfers, for Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse its Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

33. As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor's checks, wire transfers, and direct deposit transfers for Prepetition Employee Obligations may be dishonored or rejected by the Disbursement Banks.

34. The Debtor represents that each of these checks or transfers is or will be drawn on the Debtor's payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Prepetition Employee Obligations. Accordingly, the

14

Debtor believes that prepetition checks and transfers other than those for Prepetition Employee Obligations will not be honored inadvertently.

35. Authorization to pay all amounts for Prepetition Employee Obligations shall not be deemed to constitute postpetition assumption or adoption of any contract, program, or policy pursuant to section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts for Prepetition Employee Obligations shall not affect the Debtor's right to contest the amount or validity of any Prepetition Employee Obligations.

### The Debtor Has Satisfied Bankruptcy Rule 6003

36. Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Commencement Date. Fed. R. Bankr. P. 6003. As described herein, the Debtor's business operations rely heavily on the work of its Employees without whose skills, talents, and abilities the Debtor's business operations would suffer dramatically. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and therefore, Bankruptcy Rule 6003 is satisfied.

### Waiver of Bankruptcy Rules 6004(a) and (h)

37. To implement the foregoing immediately, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day (14) stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

15

**Notice**

38. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, and (iii) the holders of the twenty (20) largest unsecured claims against the Debtor.  The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

39. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
September 16, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

16

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
:
In re                                                             :    Chapter 11 Case No.
:
SIGA TECHNOLOGIES, INC.,              :    14-_____ (___)
:
                Debtor.                 :
:
------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING
(I) PAYMENT OF PREPETITION WAGES, SALARIES, AND
OTHER COMPENSATION AND BENEFITS, (II) MAINTENANCE OF
EMPLOYEE BENEFITS PROGRAMS AND PAYMENT OF RELATED
ADMINISTRATIVE OBLIGATIONS, AND (III) APPLICABLE
BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE,
PROCESS, HONOR, AND PAY ALL CHECKS PRESENTED
FOR PAYMENT AND TO HONOR ALL FUND TRANSFER REQUESTS**

Upon the Motion, dated September 16, 2014 (the "**Motion**"),[1] of SIGA Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), pursuant to sections 105(a) and 363(b) of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order authorizing (i) payment of prepetition wages, salaries, and other compensation and benefits, (ii) maintenance of employee benefits programs and policies and payment of related administrative obligations, and (iii) applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2 and the record of the Hearing and all of the proceedings had before the Court; and further appearing that no payments under section 503(c) are being sought in the Motion or granted herein; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtor is authorized, but not required, to honor and make all payments under or related to the Prepetition Employee Obligations and the Employee Programs, including, but not limited to, Wage Obligations, Payroll Taxes, Withholding Obligations, Health and Welfare Plan Obligations, Payroll and Benefit Administration Obligations, Reimbursement Obligations, Temporary Employee Obligations, Vacation Obligations, Sick Leave Obligations, Severance Obligations, and Other Employee Programs, and all costs, premiums and expenses related to the foregoing; *provided, however*, that such payment, continuance of Employee Programs, payment and honoring of Prepetition Employee Obligations, or entry of this Order,

shall not make such obligations administrative expenses of the Debtor's estate entitled to priority under sections 503 or 507 of the Bankruptcy Code; and it is further

ORDERED that the Debtor is authorized, but not required, to continue to honor its practices, programs, and policies for its Employees, as those practices, programs, and policies were in effect as of the Commencement Date and as such practices, programs, and policies may be modified, amended, or supplemented from time to time in the ordinary course of the Debtor's business; and it is further

ORDERED that the Disbursement Banks are authorized, when requested by the Debtor in the Debtor's sole discretion, to receive, process, honor, and pay any and all checks drawn on the Debtor's payroll or disbursement accounts and any other transfers that are related to Prepetition Employee Obligations and the costs and expenses incident thereto, whether those checks were presented before or after the Commencement Date, provided that sufficient funds are available in the accounts to make the payments; and it is further

ORDERED that the Disbursement Banks are authorized and directed to rely upon the representations of the Debtor as to which checks and transfers to honor with respect to the payment of Prepetition Employee Obligations; and it is further

ORDERED that nothing in the Motion shall be deemed a request by the Debtor for authority to assume, and nothing in this Order shall be deemed authorization or approval to assume, any employee benefit plan, employment agreement or any other contract, program, or agreement pursuant to sections 365 of the Bankruptcy Code, and it is further

ORDERED that nothing in the Motion or this Order shall be construed as impairing the Debtor's right to contest the validity or amount, of any Prepetition Employee Obligation; and it is further

3

ORDERED that the requirements set forth in Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
       September __, 2014

                                                                United States Bankruptcy Judge

4