Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                   :    Chapter 11 Case No.
:
**SIGA TECHNOLOGIES, INC.,**            :    14-_____ (___)
:
Debtor.                    :
:
------------------------------------------------------------x

**MOTION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a)
AND 363(b) (i) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO PAY
PREPETITION OBLIGATIONS OF CRITICAL VENDORS, (ii) AUTHORIZING AND
DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED
CHECKS AND TRANSFERS, AND (iii) SCHEDULING FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

SIGA Technologies, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represents:

**Background**

1. On the date hereof (the "**Commencement Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code. No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

2. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit of Eric A. Rose Pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York, sworn to on the date hereof, which has been filed with the Court on the date hereof.

### Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4. The Debtor seeks (i) authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to pay some or all of the prepetition obligations of certain of its vendors, suppliers, service providers, and similar entities that are essential to maintaining the going concern value of the Debtor's enterprise (the "**Critical Vendors,**" whose prepetition claims shall be defined as the "**Critical Vendor Claims**"), and (ii) to schedule a final hearing to consider the relief requested herein on a permanent basis.

5. The Debtor also requests that the Court authorize and direct the banks and other financial institutions at which the Debtor maintains disbursement accounts, at the Debtor's direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtor relating to the Critical Vendor Claims. Additionally, the Debtor seeks authority to issue new postpetition

checks, or effect new electronic fund transfers, on account of the Critical Vendor Claims to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Debtor's chapter 11 case.

### The Debtor's Critical Vendors

6. The Debtor operates in a highly specialized and highly regulated business in a highly competitive industry. As a part of the development and commercialization of solutions for unmet medical needs and biothreats, the Debtor relies upon certain vendors, suppliers, and service providers that are critical to its ongoing operations.

7. The Debtor has identified those Critical Vendors without which the Debtor's business would either fail or be significantly impaired. The Critical Vendors are few in number, yet indispensable to the Debtor's ongoing business. These include, but are not limited to, Critical Vendors that test, produce, package, and deliver the Debtor's antiviral drugs, or Critical Vendors that conduct scientific studies for regulatory compliance or progress.

8. While the Debtor hopes and expects to be able to assure a continuing postpetition supply of goods and services by consensual negotiation with the Critical Vendors, it recognizes that its fiduciary duties bind it to consider and plan for those Critical Vendors that may refuse to provide future goods or services unless their prepetition claims are paid.

9. The Critical Vendors are essential to the Debtor's business, and the lack of each of their particular services, even for a short duration, will likely cause harm to the Debtor's valuable business relationships, revenue, and goodwill, as well as meaningfully disrupt the Debtor's ongoing production of antiviral drugs. This harm and disruption will far outweigh the cost of Critical Vendor Claims.

10.     Accordingly, as discussed further below, it is in the best interests of the estate and creditors to pay some or all of the Critical Vendor Claims.

### Estimated Critical Vendor Amount

11.     The Debtor seeks authority to pay, in its sole discretion and business judgment, some or all of the prepetition obligations of Critical Vendors that are essential to its ongoing operations and reorganization efforts. As set forth above, the goods and services provided by the Critical Vendors are an essential component to the Debtor's ability to develop and supply deterrents and defenses against unmet medical needs and biothreats. The Debtor estimates that the aggregate amount owed to Critical Vendors for goods delivered or services provided during the period before the Commencement Date could be approximately $900,000 (the "**Estimated Critical Vendor Amount**").[1]

12.     In determining the Estimated Critical Vendor Amount, the Debtor has carefully reviewed, among other things, (i) which vendors are sole-source or limited-source suppliers or service providers, without which the Debtor could not continue to operate; (ii) which vendors would be prohibitively expensive to replace; and (iii) which vendors are simply at risk of ceasing the provision of truly essential services or supplies. The Debtor then considered the financial condition of each vendor, to the extent such information was known, including each vendor's level of dependence on the Debtor's continued business. The Debtor also reviewed the extent to which the Critical Vendors were parties to executory contracts with the Debtor and accordingly, may be precluded from unilaterally ceasing to comply with the terms of their

---

[1] The Estimated Critical Vendor Amount does not include any amounts owed for prepetition claims that the Debtor is seeking authority to pay pursuant to other motions filed in this chapter 11 case.

contracts.[2]  The Debtor then estimated the amount it believes it may be required to pay for prepetition obligations to ensure the continued supply of critical goods and services (i.e., the Estimated Critical Vendor Amount).  The Estimated Critical Vendor Amount was determined after taking into account all appropriate circumstances and represents an amount necessary to avoid irreparable harm to the Debtor's business and all other parties in interest.

**Proposed Conditions to Receiving Payment**

13. To minimize the amount of payments required, the Debtor requests authority to identify Critical Vendors in the ordinary course of its business.  Identifying the Critical Vendors now would likely cause all such vendors to demand payment in full.  When determining whether a creditor is a Critical Vendor, the Debtor will consider, among other things (i) whether the goods or services the vendor provides could be replaced without interruption to the Debtor's operations; (ii) whether failure to pay the claim would result in the Debtor paying substantially more for the same goods or services; and (iii) whether failure to pay the claim would interrupt the Debtor's operations or cause a loss of sales and revenue, and the ability of the Debtor to perform its own contractual commitments.

14. The Debtor proposes to pay the Critical Vendor Claim of each Critical Vendor that agrees, to the Debtor's satisfaction, to continue to supply goods or services to the

---

[2] The Debtor may need to identify vendors as Critical Vendors even if the Debtor's relationships with those vendors are contractual.  For example, for the Debtor's contracts that may be terminable at will or sufficiently flexible, the Debtor's failure to pay prepetition amounts may result in immediate termination of those contracts or unfavorable treatment by the counterparty towards the Debtor absent payment.  Additionally, for contracts of a short duration, there is a risk that failure to pay prepetition amounts may result in counterparties refusing to renew those contracts.  Moreover, to the extent the Debtor's relationships with Critical Vendors are contractual, the Debtor will likely assume the contracts with those Critical Vendors later in this case, in which case, the prepetition obligations of those Critical Vendors would be paid in full.  Accordingly, the relief requested herein should only affect the timing of the payment of those Critical Vendor Claims and will not prejudice the rights of other parties in interest.

Debtor on terms similar to those in effect prior to the Commencement Date, or on such other terms individually agreed to between the Debtor and such Critical Vendor that the Debtor deems acceptable.

15. The Debtor further proposes that if a Critical Vendor fails to continue to supply goods and services as foresaid, then the Debtor may, in its discretion, and without further order of the Court, declare that: (i) the payment of the Critical Vendor's Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtor may recover from the Critical Vendor in cash or in goods (including by setoff against postpetition obligations); or (ii) the Critical Vendor shall immediately return the Debtor's payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and the creditor's Critical Vendor Claim shall be reinstated in an amount that will restore the Debtor and the Critical Vendor to their original positions as if the payment of the Critical Vendor Claim had not been made.

16. The Debtor proposes to maintain a matrix summarizing (i) the name of each Critical Vendor paid; (ii) the amount paid to each Critical Vendor on account of its Critical Vendor Claim; and (iii) the type of goods or services provided by that Critical Vendor. This matrix will be provided upon request to the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") and, if applicable, the attorneys retained by the official committee of unsecured creditors appointed in this chapter 11 case (the "**Committee**"); *provided, however*, that the Committee's attorneys shall keep the matrix confidential and shall not disclose any of the information in the matrix to anyone, including, but not limited to, any member of the Committee, without prior written consent of the Debtor.

**Applicable Authority**

17.     The Court has authority pursuant to sections 363(b) and 105(a) of the Bankruptcy Code to authorize the Debtor to pay all or part of the Critical Vendor Claims.

18.     A Court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a Court must find that a "good business reason" exists for the use of such assets. *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

19.     The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District consistently have declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions

are attributable to any "'rational business purpose.'" *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

20. In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtor to pay any amounts that may be owed to Critical Vendors because such payments are necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee"). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) ("it is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

21. In a long line of well-established cases, Courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S*

*W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir.) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

22.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims [for] goods and services indispensably necessary" to debtor's continued operation); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

**Payment of Prepetition Critical Vendor Claims
Is Necessary to the Debtor's Reorganization**

23.     The Debtor submits that payment of the Critical Vendor Claims is necessary to preserve operations and successfully reorganize. The need for flexibility to pay the Critical Vendor Claims is particularly acute during the initial stages of the case. During this

period, Critical Vendors may attempt to assert their leverage and deny services going forward, suddenly and without notice, in an attempt to cripple operations and coerce payment.  Replacing these Critical Vendors is either not feasible at all or would be too costly or cause undue delay that effectively would hinder the Debtor's ability to continue producing its antiviral drugs.

24. In sum, the need to pay Critical Vendors is self-evident.  The Critical Vendors provide goods and services that are essential to the Debtor's business enterprise, and any inability or delay in obtaining the same will have adverse consequences to the detriment and prejudice of all interested parties.

**The Court Should Authorize and Direct Banks and Other Financial Institutions to Honor and Pay Checks Issued and Make Other Transfers to Pay Critical Vendors**

25. The Debtor requests that the Court authorize and direct the Debtor's banks and other financial institutions at which the Debtor maintains disbursement accounts, at the Debtor's direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtor relating to the payment of Critical Vendor Claims.  The Debtor also seeks authority to issue new postpetition checks, or effect new electronic fund transfers, on account of the Critical Vendor Claims to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Debtor's chapter 11 case.

**Reservation of Rights**

26.     Nothing in this Motion shall be construed as a request for authority to assume any executory contract or unexpired lease under section 365 of the Bankruptcy Code. As such, the Debtor reserves its rights to assume or reject any contract with a Critical Vendor in accordance with the applicable provisions of the Bankruptcy Code.

27.     Furthermore, nothing in this Motion shall be construed as impairing the Debtor's rights to contest the validity or amount of any claim of a Critical Vendor, and the Debtor reserves the right to contest, on nonbankruptcy grounds or otherwise, any amount claimed to be due by any of the Critical Vendors.

**The Debtor Has Satisfied Bankruptcy Rule 6003**

28.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Commencement Date. Fed. R. Bankr. P. 6003. As described herein, the Debtor's business is highly dependent on the goods and services provided by the Critical Vendors and, therefore, it is essential that the delivery of these goods and services not be disrupted. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied. The Debtor estimates that during the first thirty (30) days after the Commencement Date it may need approximately $75,000 to address Critical Vendor Claims.

**Waiver of Bankruptcy Rule 6004(a) and (h)**

29. To implement the foregoing immediately, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day (14) stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

30. Notice of this Motion has been provided to (i) the U.S. Trustee, (ii) the Debtor's secured lender, and (iii) the holders of the twenty (20) largest unsecured claims against the Debtor. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

31. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        September 16, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
: 
In re                                            :    **Chapter 11 Case No.**
                                                 :
SIGA TECHNOLOGIES, INC.,        :    14-_____ (___)
                                                 :
                           Debtor.           :
                                                 :
-----------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) (i) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO PAY PREPETITION OBLIGATIONS OF CRITICAL VENDORS, (ii) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (iii) SCHEDULING FINAL HEARING**

Upon the Motion, dated September 16, 2014 (the "**Motion**"),[1] of SIGA Technologies, Inc., as debtor and debtor in possession (collectively, the "**Debtor**"), pursuant to sections 105(a) and 363(b) of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order (i) authorizing, but not directing, the Debtor to pay prepetition obligations of Critical Vendors, (ii) authorizing and directing financial institutions to honor and process related checks and transfers, and (iii) scheduling a final hearing (the "**Final Hearing**"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), (ii) the Debtor's secured lender, and (iii) the holders of the twenty (20) largest unsecured claims against the Debtor (collectively, the "**Notice Parties**"), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2 and the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis as provided herein; and it is further

ORDERED that, pursuant to section 105(a) of the Bankruptcy Code, the Debtor is authorized, but not directed, in the reasonable exercise of its business judgment, to pay some or all of the Critical Vendor Claims, upon such terms and in the manner provided in this Order and the Motion; provided, however, that prior to the Final Hearing the amount paid with respect to Critical Vendor Claims shall not exceed the aggregate amount of $75,000; and it is further

ORDERED that the Debtor shall maintain a matrix summarizing (i) the name of each Critical Vendor paid; (ii) the amount paid to each Critical Vendor for its Critical Vendor Claim; and (iii) the type of goods or services provided by each Critical Vendor.  This matrix shall be provided upon request to the U.S. Trustee and, if applicable, the attorneys retained by

2

the Committee; *provided, however*, that the Committee's attorneys shall keep the matrix confidential and shall not disclose any of the information in the matrix to anyone, including, but not limited to, any member of the Committee, without prior written consent of the Debtor; and it is further

ORDERED that if a Critical Vendor has received payment of its Critical Vendor Claim and later refuses to continue supplying goods or services on the terms as were individually agreed to between the Debtor and such Critical Vendor, the Debtor may, in its discretion, declare that (i) the payment of the Critical Vendor's Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtor may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations); or (ii) the Critical Vendor shall immediately return the payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated in such an amount so as to restore the Debtor and the Critical Vendor to their original positions as if no payment of the Critical Vendor Claim had been made; and it is further

ORDERED that the banks and other financial institutions at which the Debtor maintains its disbursement accounts are authorized and directed at the Debtor's direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtor in respect of the Critical Vendor Claims; and it is further

ORDERED that the Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the Critical Vendor Claims to replace any prepetition checks or electronic fund transfer requests that may be lost or

3

dishonored or rejected as a result of the commencement of the Debtor's chapter 11 case; and it is further

ORDERED that nothing herein or in the Motion shall constitute an assumption, adoption, or rejection by the Debtor of any executory contract or agreement between the Debtor and any third party, or to require the Debtor to make any of the payments authorized herein; and it is further

ORDERED that nothing herein or in the Motion shall be construed (i) to limit, or in any way affect, the Debtor's ability to dispute any Critical Vendor Claim, or (ii) as a waiver by the Debtor of its rights to contest any invoice or other claim of a Critical Vendor under applicable law; and it is further

ORDERED that any payment made pursuant to this Order is not, and shall not be, deemed an admission to the validity of the underlying obligation or waiver of any rights the Debtor may have to subsequently dispute such obligation; and it is further

ORDERED that notwithstanding entry of this Order, the Debtor's rights to enforce the automatic stay provisions of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claims as a condition to doing business with the Debtor postpetition are preserved; and it is further

ORDERED that notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that the requirements set forth in Bankruptcy Rule 6004(a) are waived; and it is further

4

ORDERED that, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be effective and enforceable immediately upon its entry; and it is further

ORDERED that the Debtor shall serve this Order within three (3) business days of its entry on the Notice Parties; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, 2014 at __:__ _.m. (Eastern Time), and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-399, and served upon (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Garrett Fail, Esq.) and (ii) the Notice Parties, in each case so as to be received no later than 4:00 p.m. (Eastern Time) on _____, 2014; and it is further

ORDERED that this Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis at or after the Final Hearing; *provided, however*, that the Court's ultimate disposition of the Motion on the final basis shall not impair or otherwise affect any action taken pursuant to this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
      September __, 2014

 

                                                                                  United States Bankruptcy Judge

WEIL:\95075905\9\99980.0025