Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                 :

In re                             :         Chapter 11 Case No.
                                 :

**SIGA TECHNOLOGIES, INC.,**         :         14-_____ (___)
                                 :
        Debtor.             :
                                 :
------------------------------------------------------------x

**MOTION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b) (i) AUTHORIZING, BUT NOT
DIRECTING, DEBTOR TO (a) CONTINUE ITS INSURANCE PROGRAMS AND
(b) PAY ALL INSURANCE OBLIGATIONS, (ii) MODIFYING AUTOMATIC STAY
WITH RESPECT TO WORKERS' COMPENSATION CLAIMS, AND
(iii) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR
AND PROCESS RELATED CHECKS AND TRANSFERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**"), respectfully represents:

**Background**

        1.      On the date hereof (the "**Commencement Date**"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage

its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

2. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit of Eric A. Rose Pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York, sworn to on the date hereof, which has been filed with the Court on the date hereof.

### Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4. The Debtor requests (i) authority, but not direction, pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code, to (a) continue its Insurance Programs (as hereinafter defined), and (b) pay all Insurance Obligations (as hereinafter defined), whether arising prepetition or postpetition, and (ii) that the Court modify the automatic stay under section 362 of the Bankruptcy Code, to the extent necessary, to allow the Debtor's employees to proceed with their Workers' Compensation Claims.

5. The Debtor also requests that the Court authorize and direct the banks and other financial institutions at which the Debtor maintains disbursement accounts, at the Debtor's direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all

2

checks drawn or electronic fund transfers requested or to be requested by the Debtor relating to the Insurance Obligations.  The Debtor also seeks authority to issue new postpetition checks, or effect new electronic fund transfers, on account of the Insurance Obligations to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Debtor's chapter 11 case.

### The Debtor's Insurance Programs

6.      In connection with the operation of its business, the Debtor funds a workers' compensation program and maintains various liability, property, product, and other insurance programs (together with the workers' compensation program, the "**Insurance Programs**") through several different insurance carriers (the "**Insurance Carriers**") including, but not limited to, those Insurance Programs and Insurance Carriers listed on **Exhibit "A,"** annexed hereto.  As set forth below, the Insurance Programs include coverage for, among other things, liabilities and losses related to workers' compensation, employment practices, breach of officers' and directors' duties, transportation of goods and supplies, products, and various other property-related and commercial liabilities.[1]

*Workers' Compensation Programs*

7.      Under the laws of the states in which the Debtor operates, the Debtor is required to provide its employees with workers' compensation coverage for claims arising from or related to their employment with the Debtor (the "**Workers' Compensation Claims**").

---

[1] In addition to the Insurance Programs listed on **Exhibit "A**," the Debtor funds insurance programs with respect to employee health, dental, vision, disability, and life insurance benefits.  These policies are addressed in a separate motion filed in this case pertaining to the Debtor's employee wages and benefits programs.

3

8. Workers' compensation coverage for the Debtor's employees is provided through TriNet HR Corporation (together with any affiliates thereof, "**TriNet**"), a professional employer organization. TriNet procures a workers' compensation policy from Chartis Insurance, Inc. (the "**Workers' Compensation Program**"), pays the insurance premiums thereunder for the benefit of all the employers who rely on its workers' compensation-related services (including the Debtor), and administers and processes any of the Workers' Compensation Claims asserted by the Debtor's employees. On a semi-monthly basis, the Debtor pays to TriNet a fee to cover the workers' compensation coverage provided by and through TriNet for the benefit of the Debtor's employees (the "**Workers' Compensation Payments**").

9. The Debtor estimates that its annual Workers' Compensation Payments for 2014 will aggregate approximately $45,000. As of the Commencement Date, no Workers' Compensation Claims are outstanding and the Debtor does not believe it owes any prepetition amounts to TriNet on account of the Workers' Compensation Program or Workers' Compensation Payments.

*Employment Practices Liability Insurance*

10. TriNet also procures an employment practices liability insurance policy from Beazley plc (the "**EPL Policy**"). TriNet pays the insurance premiums under the EPL Policy for the benefit of all employers who rely on its employment practices liability insurance (including the Debtor), and administers and processes any claims against the EPL Policy. On a semi-monthly basis, the Debtor pays to TriNet a fee to cover its coverage under the EPL Policy (the "**EPL Payments**").

4

11. The Debtor estimates that its annual EPL Payments for 2014 will aggregate approximately $40,000. As of the Commencement Date, the Debtor does not believe it owes any prepetition amounts to TriNet on account of the EPL Policy or EPL Payments.

*Administration and Service Fees to TriNet*

12. In the ordinary course of its business, the Debtor uses TriNet to administer and process not only Workers' Compensation Claims and claims asserted against the EPL Policy, but also the Debtor's payroll as well as employee plans and benefits (the "**Payroll and Benefits Administration Obligations**"). Annually, the Debtor incurs approximately $32,000 in Payroll and Benefits Administration Obligations (the "**TriNet Administrative Fee**"). As of the Commencement Date, the Debtor estimates that a de minimis amount is owed to TriNet on account of the TriNet Administrative Fee.

*Liability and Property Insurance Programs*

13. The Debtor maintains various liability and property related Insurance Programs that provide the Debtor with insurance coverage for liabilities relating to, among other things, the Debtor's products, breach of directors' and officers' duties, transportation and storage of the Debtor's supplies and goods, and various other property-related and commercial liabilities (the "**Liability and Property Insurance Programs**"). These policies are essential to the ongoing operation of the Debtor's business.

14. The Debtor is required to pay annual premiums under the Liability and Property Insurance Programs (the "**Insurance Premiums**"). The Insurance Premiums are based upon a fixed rate established and billed by each Insurance Carrier. The aggregate annual Insurance Premiums for the Liability and Property Insurance Programs is expected to be approximately $920,000. Of this amount, approximately $638,000 (the "**D&O Premium**") is

5

attributable to the Insurance Premium for the policy providing coverage for directors' and officers' liability (the "**D&O Policy**"). In addition to a downpayment, the Debtor makes payments towards the annual D&O Premium in monthly installments, payable at the beginning of each month, of $56,000. The next installment will be due in early October.

15.     With the exception of the payment due under the D&O Policy, the Debtor does not believe that there are any unpaid premiums or other sums outstanding on account of the remaining Liability and Property Insurance Programs.

*Insurance Brokers*

16.     The Debtor benefits from the service of certain insurance brokers (the "**Brokers**") to assist it with the procurement and negotiation of its Insurance Programs. These Brokers are compensated (the "**Brokers' Fees**") from a portion of the Insurance Premiums paid by the Debtor. The Debtor believes that all outstanding Brokers' Fees have been fully paid as of the Commencement Date.

**The Court Should Authorize, But Not Direct, the Debtor to
(i) Continue Its Insurance Programs, and (ii) Pay All Insurance Obligations**

17.     As stated, pursuant to this Motion, the Debtor seeks authority to (i) continue, in its discretion, the Insurance Programs in accordance with the practices and procedures that were in effect before the Commencement Date and (ii) pay, in its discretion, all obligations arising under or in connection with the Insurance Programs, including the TriNet Administrative Fee and the Brokers' Fees (collectively, the "**Insurance Obligations**"), regardless of whether such obligations arose or relate to the period before or after the Commencement Date.

18. The Court has authority pursuant to sections 503(b), 363(b) and 105(a) of the Bankruptcy Code to grant the relief requested herein. Section 503(b)(l) of the Bankruptcy Code provides for the allowance as administrative expenses of "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The Court, therefore, can authorize the Debtor to use estate funds to pay any Insurance Obligations arising or relating to the period after the Commencement Date.

19. In addition, a Court may authorize the Debtor to pay Insurance Obligations arising or relating to the period before the Commencement Date pursuant to section 363(b) of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing payment of certain prepetition obligations under section 363(b)). Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a Court must find that a "good business reason" exists for the use of such assets. *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

20. The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

7

the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District consistently have declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions are attributable to any "'rational business purpose.'" *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

21.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtor to pay or otherwise satisfy any Insurance Obligation because such payments are necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee"). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) ("it is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve

fairness and justice in the reorganization process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

22. In a long line of well-established cases, Courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir.) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

23. This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims [for] goods and services indispensably necessary" to debtors' continued operation); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 — "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

9

24.     It is essential for the Debtor to maintain all Insurance Programs on an ongoing and uninterrupted basis.  The Debtor is required legally and contractually to maintain certain Insurance Programs.[2]  The Insurance Programs are typically renewed annually.  The inability to pay any Insurance Obligation could result in one or more of the Insurance Carriers declining to renew an Insurance Program or refusing to enter into new insurance agreements with the Debtor in the future.  If the Insurance Programs lapse without renewal, the Debtor could be exposed to liability to the detriment of all parties in interest.  Accordingly, the continuation of the Insurance Programs and the ability to pay, in the Debtor's discretion, all Insurance Obligations arising under the Insurance Programs is essential to preserve the Debtor's business and the value of the Debtor's estate for all parties in interest.  In addition, in order to comply with the guidelines of the Office of the United States Trustee, the Debtor must maintain the Insurance Programs.  Notably, any outstanding Insurance Obligations relating to the period prior to the Commencement Date appear to be de minimis.

## The Court Should Waive the Automatic Stay as to Workers' Compensation Claims

25.     Section 362(a) of the Bankruptcy Code operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code].

11 U.S.C. § 362(a)(1).  Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for cause.  *Id.* § 362(d)(1).

---

[2] For example, many state laws mandate maintenance of the Workers' Compensation Program.

26. The Debtor seeks authorization, pursuant to section 362(d) of the Bankruptcy Code, to permit its employees to proceed with any Workers' Compensation Claims in the appropriate judicial or administrative forum; *provided* that employees may only pursue their Workers' Compensation Claims in accordance with the Workers' Compensation Program and that recoveries, if any, shall be limited to the proceeds from the Workers' Compensation Program. Cause exists to modify the automatic stay because staying Workers' Compensation Claims could have a detrimental effect on the financial well-being and morale of the Debtor's employees and lead to their departure.

27. The Debtor is not seeking a waiver, termination, or modification of the automatic stay with respect to any claims other than the Workers' Compensation Claims.

**The Court Should Authorize and Direct Banks and Other Financial Institutions to Honor and Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations**

28. The Debtor requests that the Court authorize and direct the Debtor's banks and other financial institutions at which the Debtor maintains disbursement accounts at the Debtor's direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtor relating to the Insurance Obligations. The Debtor also seeks authority to issue new postpetition checks, or effect new electronic fund transfers, on account of such obligations to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Debtor's chapter 11 case.

**Reservation of Rights**

29. Nothing in this Motion shall be construed as a request for authority to assume any executory contract or unexpired lease under section 365 of the Bankruptcy Code. As

11

such, the Debtor reserves its right to assume or reject any Insurance Program in accordance with the applicable provisions of the Bankruptcy Code.

30. Furthermore, nothing in this Motion shall be construed as impairing the Debtor's right to contest the validity or amount of any Insurance Obligation or Workers' Compensation Claim, and the Debtor reserves the right to contest, on nonbankruptcy grounds or otherwise, any claim of any party, including, without limitation, the Insurance Carriers, TriNet, the Brokers, or the Debtor's employees.

### The Debtor Has Satisfied Bankruptcy Rule 6003

31. Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Commencement Date. Fed. R. Bankr. P. 6003. As described herein, the Debtor is legally and contractually required to maintain many of its Insurance Programs. In addition, Insurance Carriers' refusal to renew any Insurance Program as a result of the Debtor's failure to pay any Insurance Obligations could subject the Debtor to substantial liability as well as a potential cessation of operations, to the detriment of all parties in interest. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Waiver of Bankruptcy Rule 6004(a) and (h)

32. To implement the foregoing immediately, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

33. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, and (iii) the holders of the twenty (20) largest unsecured claims against the Debtor. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

34. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
September 16, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

# **EXHIBIT A**

WEIL:\95076370\11\99980.0025

**Liability and Property Insurance Programs**

| Type of Coverage | Policy Term | Insurer | Policy # |
|---|---|---|---|
| Commercial Automobile | 5/1/14–5/1/15 | Continental Insurance Company | 6013706512 |
| Commercial Umbrella | 5/1/14–5/1/15 | Continental Insurance Company | 6013706526 |
| Contingent Loss of Net Profit | 1/5/14–1/5/15 | Kiln Group | B0713MEDTE1400579 |
| Directors and Officers | 6/9/14–6/9/15 | American International Group, Inc. ("**AIG**")[1] | 01-277-14-13 |
| Domestic Commercial Package | 5/1/14–5/1/15 | Transportation Insurance Company | 6013706509 |
| Employers' Liability | 6/27/14–6/27/15 | National Union Fire Insurance Company | 060325168 (CA) 060330950 (OR) 060330034 (NY) |
| Fidelity/Crime | 1/1/14–1/1/15 | Colonial Surety Company | 6R82575FL |
| Foreign Package[2] | 5/1/14–5/1/15 | Continental Insurance Company | PST613716604 |
| Product Liability | 5/1/14–5/1/15 | Noetic Specialty Insurance Company | N14NY380017 |
| World Wide Transit | 5/1/14–5/1/15 | Star Indemnity & Liability Company | MASICBN0106US14 |

---

[1] This insurance policy is multilayered with each layer providing $10 million of coverage. AIG is the insurer for the first $10 million layer of coverage; thereafter, other insurers such as Berkshire Hathaway provide excess coverage in increments of $10 million. In addition to the first layer of coverage, AIG provides $10 million of coverage in excess of $70 million.

[2] Includes coverage for property, international automobile, wrongful detention, expropriation, and nationalization.

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In re                                                        :    Chapter 11 Case No.
                                                             :
SIGA TECHNOLOGIES, INC.,                                     :    14-_____ (___)
                                                             :
                    Debtor.                                  :
                                                             :
-------------------------------------------------------------x
```

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b)
(i) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO (a) CONTINUE ITS
INSURANCE PROGRAMS, AND (b) PAY ALL INSURANCE OBLIGATIONS,
(ii) MODIFYING AUTOMATIC STAY WITH RESPECT TO WORKERS'
COMPENSATION CLAIMS, AND (iii) AUTHORIZING AND DIRECTING FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the Motion, dated September 16, 2014 (the "**Motion**"),[1] of SIGA Technologies, Inc., (the "**Debtor**"), pursuant to sections 105(a), 362(d), 363(b), and 503(b) of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order (i) authorizing, but not directing, the Debtor to (a) continue its Insurance Programs, and (b) pay all Insurance Obligations, (ii) modifying the automatic stay with respect to Workers' Compensation Claims, and (iii) authorizing and directing financial institutions to honor and process related checks and transfers, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2 and the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtor is authorized, but not directed, to maintain its Insurance Programs in accordance with practices and procedures that were in effect before the commencement of the Debtor's chapter 11 case; and it is further

ORDERED that the Debtor is authorized, but not directed, to pay, in its discretion, all Insurance Obligations, regardless of whether accruing or relating to the period before or after the Commencement Date; and it is further

ORDERED that the automatic stay under section 362(a) of the Bankruptcy Code is modified solely to allow the Debtor's employees to proceed with Workers' Compensation Claims in the appropriate judicial or administrative forum; *provided* that employees may only pursue their Workers' Compensation Claims in accordance with the Workers' Compensation Program and recoveries, if any, shall be limited to the proceeds from the Workers' Compensation

2

Program; and it is further

ORDERED that the banks and other financial institutions at which the Debtor maintains its disbursement accounts are authorized and directed at the Debtor's direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtor in respect of the Insurance Obligations; and it is further

ORDERED that the Debtor is authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the Insurance Obligations to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtor's chapter 11 case; and it is further

ORDERED that nothing herein or in the Motion shall constitute an assumption, adoption, or rejection by the Debtor of any executory contract or agreement between the Debtor and any third party, or to require the Debtor to make any of the payments authorized herein; and it is further

ORDERED that nothing herein or in the Motion shall be construed (i) to limit, or in any way affect, the Debtor's ability to dispute any Insurance Obligation or Workers' Compensation Claim, or (ii) as a waiver by any of the Debtor of its right to contest any claim of any party under applicable law; and it is further

ORDERED that any payment made pursuant to this Order is not, and shall not be, deemed an admission to the validity of the underlying obligation or waiver of any rights the Debtor may have to subsequently dispute such obligation; and it is further

ORDERED that notwithstanding entry of this Order, the Debtor's right to enforce

3

the automatic stay provisions of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claim as a condition to doing business with the Debtor postpetition is preserved; and it is further

ORDERED that notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that the requirements set forth in Bankruptcy Rule 6004(a) are waived; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be effective and enforceable immediately upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:  New York, New York
        September __, 2014

                                                    _____
                                                    United States Bankruptcy Judge

4