HEARING DATE AND TIME: October 15, 2014 at 10:30 a.m. (Eastern Time)
OBJECTION DEADLINE: October 8, 2014 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                     :    Chapter 11 Case No.
:
SIGA TECHNOLOGIES, INC.,                  :    14-12623 (SHL)
:
Debtor.                 :
:
------------------------------------------------------------x

### NOTICE OF HEARING ON MOTION OF DEBTOR
### FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 1107(a)
### AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO PAY REIMBURSABLE
### PREPETITION OBLIGATIONS TO CERTAIN SERVICE PROVIDERS

PLEASE TAKE NOTICE that a hearing on the annexed Motion, dated October 1, 2014 (the "**Motion**"), of SIGA Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), for an order pursuant to sections 105(a) and 1107(a) of title 11, United States Code (the "**Bankruptcy Code**") authorizing, but not directing, the Debtor to pay reimbursable prepetition obligations to certain service providers, all as more fully set forth in the Motion, will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), on **October 15**, **2014 at 10:30 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

WEIL:\95096942\9\74193.0003

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Garrett A. Fail, Esq.); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue, Suite 1700, New York, New York 10065 (Attn: William J. Haynes II, Esq.); and (iii) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Richard C. Morrissey, Esq.), so as to be received no later than **October 8, 2014 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
October 1, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorney for Debtor
and Debtor in Possession

HEARING DATE AND TIME: October 15, 2014 at 10:30 a.m. (Eastern Time)
OBJECTION DEADLINE: October 8, 2014 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
SIGA TECHNOLOGIES, INC., : 14-12623 (SHL)
: 
Debtor. : 
: 
------------------------------------------------------------x

**MOTION OF DEBTOR FOR ENTRY OF ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 1107(a) AUTHORIZING,
BUT NOT DIRECTING, DEBTOR TO PAY REIMBURSABLE
PREPETITION OBLIGATIONS TO CERTAIN SERVICE PROVIDERS**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**"), respectfully represents:

**Background**

1. On September 16, 2014 (the "**Commencement Date**"), the Debtor

commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage

its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

WEIL:\95096942\9\74193.0003

Code.  No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

2. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2, sworn to on September 16, 2014 (ECF No. 3).

### Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4. The Debtor seeks authority, pursuant to sections 105(a) and 1107(a) of the Bankruptcy Code, to pay some or all of the prepetition obligations owing to certain of its service providers that are fully reimbursable (the "**Reimbursable Claims**")[1] by the Biomedical Advanced Research and Development Authority ("**BARDA**") pursuant to the BARDA Contracts (as hereinafter defined).

### The Reimbursable Claims

5. In 2011, SIGA entered into an agreement with BARDA (the "**BARDA Contract**") to, inter alia, deliver 2 million courses of the smallpox antiviral Tecovirimat to the

---

[1] Certain of the Reimbursable Claims may be paid pursuant to other motions that have been or may be filed by the Debtor, including the Debtor's motion seeking authorization to pay prepetition claims of certain critical suppliers, vendors, and service providers.  To the extent an entity receives payment on account of its prepetition claim pursuant to an order approving any such motions, the relief requested herein shall not apply to such entity.

2

U.S. Strategic National Stockpile (the "**Strategic Stockpile**"),[2] under the Project BioShield Act of 2004.

6. As of the Commencement Date, SIGA had delivered approximately 1.3 million courses of Tecovirimat to the Strategic Stockpile and had received $198.3 million for its procurement-related performance. Including the approximately 710,000 courses of Tecovirimat projected for delivery, SIGA is eligible to receive an additional $211.5 million under the BARDA Contract for future performance. The BARDA Contract is the Debtor's most significant contract and almost all of the Debtor's cash inflows are derived from the BARDA Contract.

7. In order to fulfill its obligations under the BARDA Contract, the Debtor relies on various service providers to conduct scientific studies for regulatory compliance or progress; to test the Debtor's product for, among other things, safety and efficacy; and, to support production activities, such as the provision of physical security for the Debtor's supply chain.

8. Under the BARDA Contract, as well as a related development contract also covering Tecovirimat and also administered by BARDA (collectively, with the BARDA Contract, the "**BARDA Contracts**"), the Debtor obtains reimbursement from BARDA for payments made, or to be made, to certain service providers for services that are rendered pursuant to an approved purchase order.[3] In the ordinary course of business, the Debtor submits

---

[2] The Strategic Stockpile is a national repository of medical assets and countermeasures designed to provide public health agencies with medical supplies to treat and protect those affected by public health emergencies.

[3] Service providers that provide services for which the Debtor receives reimbursement from BARDA are referred to herein as "**Service Providers**."

3

to a contracting officer of BARDA for approval (i) a detailed description of the services to be provided, (ii) the terms upon which the Debtor proposes to pay the Service Provider (the "**Payment Terms**"), and (iii) the terms upon which the Debtor intends to seek reimbursement from BARDA for payments to the Service Provider (the "**Reimbursement Terms**").  The Service Provider does not commence work pursuant to a proposed purchase order until the Debtor has received BARDA's consent.[4]

        9.        The Payment Terms and the Reimbursement Terms are determined on a case-by-case basis and vary depending on the nature of the work to be performed by the Service Provider.  Typically, both the Debtor's obligation to pay the Service Provider and BARDA's obligation to reimburse the Debtor are triggered by the successful completion of certain milestones defined in the purchase order.  The milestones triggering the respective obligations may differ.  The period of time between the date on which the Debtor is obligated to make a payment to the Service Provider and the date on which the Debtor has a right to invoice BARDA for reimbursement of such payment is normally less than thirty (30) days, although in the case of one Service Provider, special circumstances have delayed services and invoicing by many months.  Upon successful completion of an approved purchase order, BARDA is obligated to reimburse the Debtor in an amount that is at least 106% of the amount paid by the Debtor to the Service Provider and the Debtor typically receives reimbursement from BARDA within thirty (30) days from the date on which the Debtor submits an invoice to BARDA.  To date, no circumstances have arisen where BARDA has refused to reimburse the Debtor for amounts that the Debtor has paid to a Service Provider pursuant to an approved purchase order.  Moreover, the

---

[4] In the event that a purchase order is, in the aggregate, less than $100,000, the Debtor only submits a letter of intent to an officer of BARDA and, absent an objection, proceeds on the terms proposed in the letter of intent.

4

Debtor expects to only pay Reimbursable Claims, outstanding as of the Commencement Date, once those claims are eligible to be invoiced for reimbursement by BARDA.

10.  As of the Commencement Date, the Debtor estimates that there are approximately $630,000 of unpaid Reimbursable Claims.  A list of the Service Providers that have Reimbursable Claims is annexed hereto as **Exhibit "A."**  As stated, the Debtor is entitled to full reimbursement from BARDA for each of the Reimbursable Claims upon satisfaction of the milestones that trigger payment by BARDA.

## Applicable Authority

11.  The Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtor to pay the Reimbursable Claims, because such payments are necessary for the Debtor to carry out its fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee").  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) ("it is axiomatic that bankruptcy courts are 'courts of equity,

5

empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

12.     In a long line of well-established cases, Courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir.) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

13.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims [for] goods and services indispensably necessary" to debtor's continued operation); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

6

**Payment of the Reimbursable Claims**
**Is Necessary to the Debtor's Reorganization**

14. The Debtor submits that payment of the Reimbursable Claims is necessary to the Debtor's reorganization under chapter 11. As stated above, the BARDA Contracts are the Debtor's primary source of cash inflows. Each of the Reimbursable Claims sought to be paid herein are to Service Providers engaged by the Debtor in connection with services that are integral to the fulfillment of the Debtor's obligations under the BARDA Contracts.

15. Absent receipt of payment for the Reimbursable Claims, the Service Providers may seek to cease performing essential research and development, testing or supportive services for the Debtor or otherwise delay the performance of such necessary services. Such conduct could detrimentally affect the Debtor's ability to fulfil its obligations under the BARDA Contracts and thereby jeopardize the Debtor's relationship with BARDA. Granting the relief requested herein will ensure the Debtor's uninterrupted performance under the BARDA Contracts and the preservation of the value inherent therein.

16. Notably, because the Debtor is seeking authority to pay only those Reimbursable Claims that it believes will be fully reimbursed by BARDA, there should be no cost to the Debtor's estate and no potential prejudice to any party in interest. In fact, as stated, the reimbursement by BARDA equals at least 106% of the amount of the Reimbursable Claims, thereby resulting in a net benefit to the Debtor's estate. Under these circumstances, payment of the Reimbursable Claims is entirely reasonable, represents a sound exercise of the Debtor's business judgment, and should result in a clear benefit to the Debtor's estate.

**Reservation of Rights**

17.  Nothing in this Motion shall be construed as a request for authority to assume any executory contract or unexpired lease under section 365 of the Bankruptcy Code. As such, the Debtor reserves its rights to assume or reject any contract with a Service Provider in accordance with the applicable provisions of the Bankruptcy Code.

18.  Furthermore, nothing in this Motion shall be construed as impairing the Debtor's rights to contest the validity or amount of any claim of a Service Provider, and the Debtor reserves the right to contest, on nonbankruptcy grounds or otherwise, any amount claimed to be due by any of the Service Providers.

**Notice**

19.  Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, (iii) the holders of the twenty (20) largest unsecured claims against the Debtor, and (iv) all entities that requested notice in this chapter 11 case under Fed. R. Bankr. P. 2002. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

20. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
October 1, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

9

# **EXHIBIT A**

## **SERVICE PROVIDERS**

| Service Providers |
|---|
| Albemarle Corporation |
| Catalent Pharma Solutions, LLC |
| Covance Labs |
| Cyprotex (Apredica) |
| Formurex Inc. |
| INC Research, LLC |
| Jeffrey Hincks |
| M.L. Corrado Consulting MD |
| Marion Weinreb & Associates, Inc. (MWA) |
| Northland Laboratories, Inc. |
| Patheon Manufacturing Services, LLC (Formerly DSM) |
| Pharsight Corporation |
| Powdersize, Inc. |
| Ricerca Biosciences, LLC |
| Senopsys LLC |
| Sharp, Inc. |
| Southern Research Institute (SRI) |
| SSCI (Aptuit) Solid State Chemical Information |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :

In re                                           :          Chapter 11 Case No.
                                           :
SIGA TECHNOLOGIES, INC.,              :          14-12623 (SHL)
                                           :
                   Debtor.          :
                                           :
------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 1107(a) AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO PAY REIMBURSABLE PREPETITION OBLIGATIONS TO CERTAIN SERVICE PROVIDERS

Upon the Motion, dated October 1, 2014 (the "**Motion**"),[1] of SIGA Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), pursuant to sections 105(a) and 1107(a) of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order authorizing, but not directing, the Debtor to pay Reimbursable Claims, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to sections 105(a) and 1107(a) of the Bankruptcy Code, the Debtor is authorized, but not directed, in the reasonable exercise of its business judgment, to pay some or all of the Reimbursable Claims to the respective Service Providers; and it is further

ORDERED that nothing herein or in the Motion shall constitute an assumption, adoption, or rejection by the Debtor of any executory contract or agreement between the Debtor and any third party, or to require the Debtor to make any of the payments authorized herein; and it is further

ORDERED that nothing herein or in the Motion shall be construed (i) to limit, or in any way affect, the Debtor's ability to dispute any Reimbursable Claim, or (ii) as a waiver by the Debtor of its rights to contest any invoice or other claim of a Service Provider under applicable law; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
      October __, 2014

                                                                                        United States Bankruptcy Judge