**HEARING DATE AND TIME: October 15, 2014 at 10:30 a.m. (Eastern Time)**
**OBJECTION DEADLINE: October 8, 2014 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
SIGA TECHNOLOGIES, INC.,            :        14-12623 (SHL)
                                    :
            Debtor.                 :
                                    :
----------------------------------------------------------------x

### NOTICE OF HEARING ON APPLICATION OF DEBTOR PURSUANT TO 28 U.S.C § 156(c), 11 U.S.C. § 105(a), AND S.D.N.Y. LBR 5075-1 FOR AUTHORITY TO RETAIN AND APPOINT PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTOR

PLEASE TAKE NOTICE that a hearing on the annexed application, dated

October 1, 2014 (the "**Application**"), of SIGA Technologies, Inc., as debtor and debtor in

possession (the "**Debtor**"), pursuant to section 156(c) of title 28, United States Code, section

105(a) of title 11, United States Code (the "**Bankruptcy Code**"), and section 5075-1 of the

Local Bankruptcy Rules for the Southern District of New York for authority to retain and

appoint Prime Clerk LLC as claims and noticing agent for the Debtor, all as more fully set forth

in the Application, will be held before the Honorable Sean H. Lane, United States Bankruptcy

Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New

York, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), on

**October 15**, **2014 at 10:30 a.m.** (**Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the

"**Objections**") to the Application must be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,

and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's

case filing system, electronically in accordance with General Order M-399 (which can be found

at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-

searchable portable document format (PDF) (with a hard copy delivered directly to Chambers),

in accordance with the customary practices of the Bankruptcy Court and General Order M-399,

to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys

for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153

(Attn:  Garrett A. Fail, Esq.); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue,

Suite 1700, New York, New York  10065 (Attn:  William J. Haynes II Esq.); (iii) the Office of

the United States Trustee for the Southern District of New York, U.S. Federal Office Building,

201 Varick Street, Suite 1006, New York, New York 10014 (Attn:  Richard C. Morrissey, Esq.);

and (iv) the proposed claims and noticing agent, Prime Clerk LLC, 830 3rd Avenue, 9th Floor,

New York, New York 10025 (Attn: Shai Waisman), so as to be received no later than **October**

**8**, **2014 at 4:00 p.m.** (**Eastern Time**) (the "**Objection Deadline**").

WEIL:\95095738\7\74193.0003

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and

served with respect to the Application, the Debtor may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Application, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
      October 1, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorney for Debtor
and Debtor in Possession

WEIL:\95095738\7\74193.0003

**HEARING DATE AND TIME: October 15, 2014 at 10:30 a.m. (Eastern Time)**
**OBJECTION DEADLINE: October 8, 2014 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
SIGA TECHNOLOGIES, INC.,                  :        14-12636 (SHL)
                                          :
                        Debtor.           :
                                          :
-------------------------------------------------------------x

**APPLICATION OF DEBTOR PURSUANT TO 28 U.S.C § 156(c),**
**11 U.S.C. § 105(a), AND S.D.N.Y. LBR 5075-1 FOR AUTHORITY TO RETAIN**
**AND APPOINT PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

　　　　　SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**" or "**SIGA**"),  respectfully represents:

<u>**Background**</u>

　　　　　1.　　　On September 16, 2014 (the "**Commencement Date**"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and manage

its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

2.    Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit of Eric A. Rose Pursuant to Rule 1007-2 of the Local Rules, sworn to on September 16, 2014 (ECF No. 3).

**Jurisdiction**

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

4.    The Debtor submits this Application for authority to retain and appoint Prime Clerk LLC ("**Prime Clerk**") as its claims and noticing agent (the "**Claims and Noticing Agent**"), which will assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtor's chapter 11 case effective *nunc pro tunc* to the Commencement Date, pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code and Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").  In support of the Application, the Debtor submits the Declaration of Michael J. Frishberg, Co-President and Chief Operating Officer of Prime Clerk (the "**Frishberg Declaration**"), annexed hereto as **Exhibit "A**."

5.    The Debtor's selection of Prime Clerk to act as the Claims and Noticing Agent has satisfied the Court's Protocol for the Employment of Claims and Noticing Agents under 28

2

U.S.C. § 156(c) (the "**Claims Agent Protocol**"), in that the Debtor has obtained and reviewed

engagement proposals from at least two other Court-approved claims and noticing agents to

ensure selection through a competitive process.  Moreover, the Debtor submits, that based on all

engagement proposals obtained and reviewed, Prime Clerk's rates are competitive and

reasonable given Prime Clerk's quality of services and expertise.  Although the terms of Prime

Clerk's retention are set forth in the Engagement Agreement annexed hereto as **Exhibit** "**B**"

(the "**Engagement Agreement**"), by this Application, Prime Clerk solely is seeking approval of

the terms and provisions as set forth in this Application and the proposed order approving this

Application (the "**Retention Order**"), annexed hereto as **Exhibit** "**C**."

6.      The Debtor anticipates that there will be in excess of 7,650 entities to be

noticed in this chapter 11 case.  Local Rule 5075-1(b) provides that "[i]n a case in which the

number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall

retain, subject to approval of the Court, a claims and noticing agent in accordance with the

[Claims Agent Protocol]."  In view of the number of anticipated creditors and stockholders, the

Debtor submits that the appointment of a claims and noticing agent is required by Local Rule

5075-1(b) and is otherwise in the best interests of both the Debtor's estate and all parties in

interest.

7.      By separate application, the Debtor will seek authorization to retain and

employ Prime Clerk as administrative agent in this chapter 11 case pursuant to section 327(a) of

the Bankruptcy Code because the administration of this chapter 11 case will require Prime Clerk

to perform duties outside the scope of 28 U.S.C. § 156(c).

WEIL:\95095738\7\74193.0003

## Prime Clerk's Qualifications

8.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this nature.  Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide.  Prime Clerk's active cases include: *In re Tactical Intermediate Holdings, Inc.*, Case No. 14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, Case No. 14-11605 (KG) (Bankr. D. Del.); *In re FL 6801 Spirits LLC*, Case No. 14-11691 (SCC) (Bankr. S.D.N.Y.); *In re Universal Cooperatives, Inc.* No. 14-11187 (MFW) (Bankr. D. Del.); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del.); *In re Coldwater Creek Inc.*, No. 14-10867 (BLS) (Bankr. D. Del.); *In re MEE Apparel LLC*, No. 14-16484 (CMG) (Bankr. D.N.J.); *In re Autoseis, Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex.); *In re Legend Parent, Inc.*, No. 14-10701 (REG) (Bankr. S.D.N.Y.); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del.); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y.); *In re Ashley Stewart Holdings, Inc.*, No. 14-14383 (MBK) (Bankr. D.N.J.); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del.); *In re Noble Logistics, Inc.*, No. 14-10442 (CSS) (Bankr. D. Del.); *In re Optim Energy, LLC*, No. 14-10262 (BLS) (Bankr. D. Del.); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, No. 14-10193 (KG) (Bankr. D. Del.); *In re Capsule Int'l Holdings LLC (f/k/a Constar Int'l Holdings LLC)*, No. 13-13281 (CSS) (Bankr. D. Del.); *In re Green Field Energy Servs., Inc.*, No. 13-12783 (KG) (Bankr. D. Del.); *In re Old FENM Inc. (f/k/a Fresh & Easy Neighborhood Mkt. Inc.)*, No. 13-12569 (KJC) (Bankr. D. Del.).

4

9.      By retaining and appointing Prime Clerk as the Claims and Noticing Agent in

this chapter 11 case, the distribution of notices and the processing of claims will be expedited,

and the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") will be relieved of the

administrative burden of processing what may be an overwhelming number of claims.

### Services to Be Provided

10.     This Application pertains only to the work to be performed by Prime Clerk

under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1;

any work to be performed by Prime Clerk outside of this scope is not covered by this Application

or by any order of the Court granting approval hereof.  Specifically, Prime Clerk will perform

the following tasks in its role as Claims and Noticing Agent, as well as all quality control

relating thereto:

(a)     Prepare and serve required notices and documents in this chapter 11 case
in accordance with the Bankruptcy Code and the Bankruptcy Rules in the
form and manner directed by the Debtor and/or the Court, including
(i) notice of the commencement of this chapter 11 case and the initial
meeting of creditors under section 341(a) of the Bankruptcy Code,
(ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv)
notices of objections to claims and objections to transfers of claims,
(v) notices of any hearings on any disclosure statement and confirmation
of any plan of reorganization of the Debtor, including under Bankruptcy
Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all
other notices, orders, pleadings, publications, and other documents as the
Debtor or Court may deem necessary or appropriate for an orderly
administration of this chapter 11 case;

(b)     Maintain an official copy of the Debtor's schedules of assets and liabilities
and statement of financial affairs (collectively, the "**Schedules**"), listing
the Debtor's known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other
parties in interest and (ii) a "core" mailing list consisting of all parties
described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that
have filed a notice of appearance pursuant to Bankruptcy Rule 9010;
update and make said lists available upon request by a party in interest or
the Clerk;

5

(d)    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)    For *all* notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)    Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(j)    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)    Relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of Prime Clerk not less than weekly;

(l)    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

6

(m)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(n)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(o)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(p)     If this chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Prime Clerk of entry of the order converting the case;

(q)     Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Prime Clerk as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

(r)     Within seven (7) days of notice to Prime Clerk of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the closing of the chapter 11 case; and

(s)     At the closing of this chapter 11 case, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

11.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

## Professional Compensation

12.     The Debtor respectfully requests that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and

7

section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.      Prior to the Commencement Date, the Debtor provided Prime Clerk a retainer in the amount of $20,000. Prime Clerk seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Agreement.

Additionally, under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Prime Clerk and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's own bad-faith, self-dealing, breach of fiduciary duty (if any) gross negligence, or willful misconduct or as otherwise provided in the Engagement Agreement. Any and all requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement will be made by means of an application to the Court to ensure that such indemnify conforms to the terms of the Engagement Agreement and is reasonable under the circumstances. Further, in the event that Prime Clerk

WEIL:\95095738\7\74193.0003

seeks reimbursement from the Debtor's for attorneys' fees and expenses in connection with the

payment of an indemnity claim pursuant to the Engagement Agreement, Prime Clerk will include

such the invoices and supporting time records in its interim and final fee applications, and

determined by this Court after notice and a hearing. The Debtor believes that such an

indemnification obligation is customary, reasonable and necessary to retain the services of

Claims and Noticing Agent in this chapter 11 case.

**<u>Disinterestedness</u>**

14.    Although the Debtor is not seeking to employ Prime Clerk under section 327

of the Bankruptcy Code pursuant to this Application (as such retention will be sought by

separate application), Prime Clerk nonetheless has reviewed its electronic database to determine

whether it has any relationships with the creditors and parties in interest provided by the Debtor,

and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in

the Frishberg Declaration, Prime Clerk has represented that it neither holds nor represents any

interest materially adverse to the Debtor's estate in connection with any matter on which it

would be employed.

15.    Moreover, in connection with its retention as Claims and Noticing Agent,

Prime Clerk represents in the Frishberg Declaration, among other things, that:

(a)    Prime Clerk is not a creditor of the Debtor;

(b)    Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c)    By accepting employment in this chapter 11 case, Prime Clerk waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

9

(d)    In its capacity as the Claims and Noticing Agent in this chapter 11 case, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)    Prime Clerk will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f)    Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)    In its capacity as Claims and Noticing Agent in this chapter 11 case, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)    Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by Prime Clerk as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

16.    Prime Clerk will supplement its disclosure to the Court if any facts or

circumstances are discovered that would require such additional disclosure.

**Compliance with Claims and Noticing Agent Protocol**

17.    This Application complies with the Claims Agent Protocol and substantially

conforms to the standard application in use in this Court pursuant to 28 U.S.C. § 156(c).

Moreover, the Clerk's office has reviewed and approved this Application.  To the extent that

there is any inconsistency between this Application, the Retention Order, and the Engagement

Agreement, the Retention Order shall govern.

**Notice**

18.    Notice of this Application has been provided to (i) the Office of the United

States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, (iii) the

holders of the twenty (20) largest unsecured claims against the Debtor, and (iv) all entities that

requested notice in this chapter 11 case under Fed. R. Bank. P. 2002.  The Debtor submits that,

in view of the facts and circumstances, such notice is sufficient and no other or further notice

need be provided.

19.     No previous request for the relief sought herein has been made by the Debtor

to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
        October 1, 2014

                              SIGA Technologies, Inc.


                              /s/ Daniel J. Luckshire_____
                              NAME:  Daniel J. Luckshire
                              TITLE:  Executive Vice President and Chief
                                      Financial Officer

11

**<u>Exhibit A</u>**

**Frishberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                    :
In re                                               :          **Chapter 11 Case No.**
                                                    :
**SIGA TECHNOLOGIES, INC.,**                        :          **14-12623 (SHL)**
                                                    :
                                      **Debtor.**   :
                                                    :
-----------------------------------------------------------------x

### DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT
### OF DEBTOR'S APPLICATION TO RETAIN AND APPOINT PRIME
### CLERK LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTOR
### PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND S.D.N.Y. LBR 5075-1

I, Michael J. Frishberg, under penalty of perjury, declare as follows:

1.    I am the Co-President and Chief Operating Officer of Prime Clerk LLC

("**Prime Clerk**"), a chapter 11 administrative services firm whose offices are located at 830

Third Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have

personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could

and would testify competently thereto.

2.    This Declaration is made in support of SIGA Technologies, Inc.'s (the

"**Debtor**") *Application for Appointment of Prime Clerk LLC as Claims and Noticing Agent*,

which was filed contemporaneously herewith (the "**Application**").[1]

3.    Prime Clerk is comprised of leading industry professionals with

significant experience in both the legal and administrative aspects of large, complex chapter 11

cases.  Prime Clerk's professionals have experience in noticing, claims administration,

solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and

---
[1]Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

experience in matters of this nature.  Prime Clerk's professionals have acted as debtor's counsel

or official claims and noticing agent in many large bankruptcy cases in this District and in other

districts nationwide.  Prime Clerk's active cases include: *In re Tactical Intermediate Holdings,*

*Inc.*, Case No. 14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, Case No. 14-11605 (KG)

(Bankr. D. Del.); *In re FL 6801 Spirits LLC*, Case No. 14-11691 (SCC) (Bankr. S.D.N.Y.); *In re*

*Universal Cooperatives, Inc.* No. 14-11187 (MFW) (Bankr. D. Del.); *In re GSE Environmental,*

*Inc.*, No. 14-11126 (MFW) (Bankr. D. Del.); *In re Coldwater Creek Inc.*, No. 14-10867 (BLS)

(Bankr. D. Del.); *In re MEE Apparel LLC*, No. 14-16484 (CMG) (Bankr. D.N.J.); *In re Autoseis,*

*Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex.); *In re Legend Parent, Inc.*, No. 14-10701 (REG)

(Bankr. S.D.N.Y.); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del.); *In re Sbarro*

*LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y.); *In re Ashley Stewart Holdings, Inc.*, No. 14-14383

(MBK) (Bankr. D.N.J.); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del.); *In re*

*Noble Logistics, Inc.*, No. 14-10442 (CSS) (Bankr. D. Del.); *In re Optim Energy, LLC*, No. 14-

10262 (BLS) (Bankr. D. Del.); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, No. 14-10193 (KG)

(Bankr. D. Del.); *In re Capsule Int'l Holdings LLC (f/k/a Constar Int'l Holdings LLC)*, No. 13-

13281 (CSS) (Bankr. D. Del.); *In re Green Field Energy Servs., Inc.*, No. 13-12783 (KG)

(Bankr. D. Del.); *In re Old FENM Inc. (f/k/a Fresh & Easy Neighborhood Mkt. Inc.)*, No. 13-

12569 (KJC) (Bankr. D. Del.).

       4.     As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c),

Prime Clerk will perform, at the request of the Office of the Clerk of the Bankruptcy Court

(the "**Clerk**"), the services specified in the Application and the Engagement Agreement, and, at

the Debtor's request, any related administrative, technical and support services as specified in

the Application and the Engagement Agreement.  In performing such services, Prime Clerk will

charge the Debtor the rates set forth in the Engagement Agreement, which is annexed as **Exhibit**

**"B"** to the Application.

5.     Prime Clerk represents, among other things, the following:

(a)     Prime Clerk is not a creditor of the Debtor;

(b)     Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c)     By accepting employment in this chapter 11 case, Prime Clerk waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(d)     In its capacity as the Claims and Noticing Agent in this chapter 11 case, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

(e)     Prime Clerk will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f)     Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     In its capacity as Claims and Noticing Agent in this chapter 11 case, Prime Clerk will not intentionally misrepresent any fact to any person;

(h)     Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Prime Clerk as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

6.     Although the Debtor does not propose to retain Prime Clerk under section

327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by

separate application), I caused to be submitted for review by our conflicts system the names of

all known potential parties-in-interest (the "**Potential Parties in Interest**") in this chapter 11

case. The list of Potential Parties in Interest was provided by the Debtor and included, among

other parties, the Debtor, current and former directors and officers of the Debtor, significant

stockholders, secured creditors, the Debtor's 20 largest unsecured creditors on a consolidated

basis and other parties. The results of the conflict check were compiled and reviewed by Prime

Clerk professionals under my supervision. At this time, and as set forth in further detail herein,

Prime Clerk is not aware of any relationship that would present a disqualifying conflict of

interest. Should Prime Clerk discover any new relevant facts or relationships bearing on the

matters described herein during the period of its retention, Prime Clerk will use reasonable

efforts to file promptly a supplemental declaration.

       7.     To the best of my knowledge, and based solely upon information provided

to me by the Debtor, and except as provided herein, neither Prime Clerk nor any of its

professionals, has any materially adverse connection to the Debtor, its creditors or other relevant

parties. Prime Clerk may have relationships with certain of the Debtor's creditors as vendors or

in connection with cases in which Prime Clerk serves or has served in a neutral capacity as

Claims and Noticing Agent and/or Administrative Agent for another chapter 11 debtor.

       8.     Shai Waisman is the Chief Executive Officer of Prime Clerk. From

approximately May 1997 until December 2003, Mr. Waisman was an associate of Weil, Gotshal

& Manges LLP ("**Weil**"), the attorneys for the Debtor, and was a Partner of Weil from January

2004 until his departure in 2011. During his tenure at Weil, Mr. Waisman was neither involved

with, nor advised the Debtor, with respect to any aspect of its business, or its strategy,

preparation or filing of its Chapter 11 case.

9.      Stephen Karotkin is a partner of Weil, the attorneys for the Debtor.  Mr.
Karotkin's son, Joshua Karotkin, has been an employee of Prime Clerk since April 2014.  Joshua
Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon
Prime Clerk's revenue.  Joshua Karotkin has not and will not be working on or otherwise billing
time on the Debtor's Chapter 11 case.

10.      Certain of Prime Clerk's professionals were partners of or formerly
employed by firms that are providing or may provide professional services to parties in interest
in this case.  Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP;
O'Melveny & Myers LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Togut, Segal &
Segal LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP; KPMG
LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson
Consultants LLC.  Except as disclosed herein, these professionals did not work on any matters
involving the Debtor while employed by their previous firms.  Moreover, these professionals
were not employed by their previous firms when this chapter 11 case was filed.

11.      Prime Clerk has and will continue to represent clients in matters unrelated
to this chapter 11 case.  In addition, Prime Clerk has and will continue to have relationships with
the ordinary course of its business with certain vendors, professionals and other parties in
interest that may be involved in the Debtor's chapter 11 case in matters unrelated to this case.
Prime Clerk may also provide professional services to entities or persons that may be creditors or
parties in interest in this chapter 11 case, which services do not directly relate to, or have any
direct connection with, this chapter 11 case or the Debtor.

12.      Prime Clerk and its personnel in their individual capacities regularly
utilize the services of law firms, accounting firms and financial advisors.  Such firms engaged by

Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest. All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to this chapter 11 case.

13.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be the Debtor or its subsidiary, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

14.     From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company one of which may be the Debtor or its subsidiary. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, all Prime Clerk partners and employees are barred from trading in securities with respect to which they possess confidential information.

15.     To the best of my knowledge, neither Prime Clerk nor any of its partners or employees represents any interest materially adverse to the Debtor's estate with respect to any

matter upon which Prime Clerk is to be engaged.  Based on the foregoing, I believe that Prime

Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy

Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge and belief.

Executed on October 1, 2014

/s/ Michael J. Frishberg
Michael J. Frishberg
Co-President and Chief Operating Officer
Prime Clerk LLC

**Exhibit B**

**Engagement Agreement**



## Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of September 15, 2014 between Prime Clerk LLC ("***Prime Clerk***") and SIGA Technologies, Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a)  Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b)  The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c)  The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

    (a)  Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***").  The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

    (b)  The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

    (c)  Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

    (d)  In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk a retainer of $20,000. Prime Clerk shall hold such retainer as security for the Company's payment of fees and expenses hereunder.  Prime Clerk may apply its retainer to all prepetition invoices, which retainer then shall be replenished immediately by the Company to the original retainer amount; thereafter, Prime Clerk may hold such retainer as security for the Company's payment of fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



**5.    Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

**6.    Bank Accounts**

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

**7.    Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d)  If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

**8.    No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

(a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

(c)  Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or



acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022<br>Attn: Shai Waisman<br>Tel: (212) 257-5450<br>Email: swaisman@primeclerk.com |
| If to the Company: | SIGA Technologies, Inc.<br>660 Madison Avenue, Suite 1700<br>New York, NY 10065<br>Attn: Daniel J. Luckshire<br>Tel: (212) 672-9100<br>Email: Dluckshire@Siga.Com |
| With a copy to: | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn: Stephen Karotkin, Esq.<br>Tel: (212) 310-8350<br>Email: Stephen.Karotkin@Weil.Com |

**Prıme Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Shai Waisman
Title: Chief Executive Officer

**SIGA Technologies, Inc.**

By: Daniel J. Luckshire
Title: Executive Vice President and Chief Financial Officer

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
| --- | --- |
| Analyst<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $45 |
| Technology Consultant<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $125 |
| Consultant<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. | $135 |
| Senior Consultant<br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | $165 |
| Director<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. | $190 |

### Solicitation, Balloting and Tabulation Rates

| | |
| --- | --- |
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | $190 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | $210 |

### Printing and Noticing Services

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours.  Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.



| | |
|---|---|
| Printing | $0.10 per page[2] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

---

[2] Volume discounts will be applied to large mailings



| On-line claim filing | No charge |
|---|---|

### Call Center Services

| Case-specific voice-mail box | No charge |
|---|---|
| Interactive Voice Response ("IVR") | Set-up fee waived, $0.34 per minute |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

### Disbursement Services

| Check issuance and/or Form 1099 | Available on request |
|---|---|
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk

**<u>Exhibit C</u>**

**Proposed Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                      :
In re                                                 :        **Chapter 11 Case No.**
                                                      :
**SIGA TECHNOLOGIES, INC.,**                          :               **14-12623 (SHL)**
                                                      :
                                       **Debtor.**    :
                                                      :
-----------------------------------------------------------------x

### ORDER AUTHORIZING RETENTION AND
### APPOINTMENT OF PRIME CLERK LLC AS CLAIMS AND
### NOTICING AGENT UNDER 28 U.S.C. § 156(c), 11 U.S.C. § 105(a),
### AND S.D.N.Y. LBR 5075-1 AND GRANTING RELATED RELIEF

Upon the Application,[1] dated October 1, 2014 (the "**Application**") of SIGA

Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), pursuant to 28 U.S.C.

§156(c), section 105(a) of the Bankruptcy Code and Local Rule 5075-1, authorizing the retention

and appointment of Prime Clerk LLC ("**Prime Clerk**") as claims and noticing agent (the

"**Claims and Noticing Agent**") to, among other things, (i) distribute required notices to parties

in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in

the Debtor's chapter 11 case and (iii) provide such other administrative services – as required by

the Debtor – that would fall within the purview of services to be provided by the Clerk's office,

all as more fully described in the Application; and upon the Frishberg Declaration submitted in

support of the Application; and the Debtor having estimated that there are in excess of 50

creditors and 7,600 equity holders in this chapter 11 case, many of which creditors are expected

to file proofs of claim; and it appearing that the receiving, docketing, and maintaining of proofs

of claim would be unduly time consuming and burdensome for the Clerk; and the Court being

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the

authorized under 28 U.S.C. §156(c) to utilize, at the Debtor's expense, outside agents and

facilities to provide notices to parties in title 11 cases and to receive, docket, maintain,

photocopy, and transmit proofs of claim; and the Court being satisfied that Prime Clerk has the

capability and experience to provide such services and that Prime Clerk does not hold an interest

adverse to the Debtor or its estate respecting the matters upon which it is to be engaged; and due

and proper notice of the Application having been provided, and it appearing that no other or

further notice need be provided; and the Court having jurisdiction to consider the Application

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

a hearing having been held to consider the relief requested in the Application (the "**Hearing**");

and upon the record of the Hearing and all of the proceedings had before the Court; and the

Court having found and determined that the relief sought in the Application is in the best

interests of the Debtor, its estate, creditors, and all parties in interest, and the Debtor's selection

of Prime Clerk to act as the claims and noticing agent has satisfied the Court's Protocol for the

Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c), and that the legal and

factual bases set forth in the Application establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

      ORDERED that the Application is granted as provided herein; and it is further

      ORDERED that the Debtor is authorized to retain Prime Clerk as Claims and

Noticing Agent effective *nunc pro tunc* to the Commencement Date under the terms of the

Application.

WEIL:\95095738\7\74193.0003

Engagement Agreement, and Prime Clerk is authorized and directed to perform noticing services

and to receive, maintain, record, and otherwise administer the proofs of claim filed in this

chapter 11 case, and all related tasks, all as described in the Application; and it is further

ORDERED that Prime Clerk (i) shall serve as the custodian of Court records,

(ii) shall be designated as the authorized repository for all proofs of claim filed in this chapter 11

case, and (iii) is authorized and directed to maintain an official claims register for the Debtor and

to provide the Clerk with a certified duplicate thereof upon the request of the Clerk; and it is

further

ORDERED that Prime Clerk is authorized and directed to obtain a post office box

or address for the receipt of proofs of claim; and it is further

ORDERED that Prime Clerk is authorized to take such other action to comply

with all duties set forth in the Application; and it is further

ORDERED that the Debtor is authorized to compensate Prime Clerk in

accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed

invoices setting forth the services provided by Prime Clerk and the rates charged for each, and to

reimburse Prime Clerk for all reasonable and necessary expenses it may incur, upon the

presentation of appropriate documentation, without the need for Prime Clerk to file fee

applications or otherwise seek Court approval for the compensation of its services and

reimbursement of its expenses; and it is further

ORDERED that Prime Clerk shall maintain records of all services showing dates,

categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on

the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any

official committee monitoring the expenses of the Debtor, and any party in interest who

3

specifically requests service of the monthly invoices; and it is further

ORDERED that the parties shall meet and confer in an attempt to resolve any

dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided,*

*however*, that the parties may seek resolution of the matter from the Court if resolution is not

achieved; and it is further

ORDERED that, pursuant to section 503(b)(1)(A), of the Bankruptcy Code, the

fees and expenses of Prime Clerk under this Order shall be an administrative expense of the

Debtor's estate; and it is further

ORDERED that Prime Clerk may apply its retainer to all prepetition invoices,

which retainer shall be replenished to the original retainer amount, and thereafter, Prime Clerk

may hold its retainer under the Engagement Agreement during the chapter 11 case as security for

the payment of fees and expenses incurred under the Engagement Agreement; and it is further

ORDERED that the Debtor shall indemnify Prime Clerk under the terms of the

Engagement Agreement, as modified pursuant to this Order; and it is further

ORDERED that all requests by Prime Clerk for the payment of indemnification as

set forth in the Engagement Agreement shall be made by means of an application to the Court

and shall be subject to review by the Court to ensure that payment of such indemnity conforms to

the terms of the Engagement Agreement and is reasonable under the circumstances of the

litigation or settlement in respect of which indemnity is sought; *provided, however*, that in no

event shall Prime Clerk be indemnified in the case of its own bad-faith, self-dealing, breach of

fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event that Prime Clerk seeks reimbursement from the

Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim

4

pursuant to the Engagement Agreement, the invoices and supporting time records for the

attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim

and final, but determined by this Court after notice and a hearing; and it is further

ORDERED that, in the event Prime Clerk is unable to provide the services set out

in this Order, Prime Clerk shall immediately notify the Clerk and the Debtor's attorney and,

upon approval of the Court, have all original proofs of claim and computer information turned

over to another claims and noticing agent with the advice and consent of the Clerk and the

Debtor's attorney; and it is further

ORDERED that, the Debtor may submit a separate retention application, pursuant

to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be

performed by Prime Clerk but is not specifically authorized by this Order; and it is further

ORDERED that, the Debtor and Prime Clerk are authorized to take all actions

necessary to effectuate the relief granted pursuant to this Order in accordance with the

Application; and it is further

ORDERED that, notwithstanding any term in the Engagement Agreement to the

contrary, the Court retains jurisdiction with respect to all matters arising from or related to the

implementation of this Order; and it is further

ORDERED that, notwithstanding any provision in the Bankruptcy Rules to the

contrary, this Order shall be immediately effective and enforceable upon its entry; and it is

further

ORDERED that Prime Clerk shall not cease providing claims processing services

during the chapter 11 case for any reason, including nonpayment, without an order of the Court;

and it is further

ORDERED in the event of any inconsistency between the Engagement

Agreement, the Application, and the Order, the Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: October ___, 2014
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

6