**K&L GATES LLP**
Roger R. Crane
John A. Bicks
Eunice Rim Hudson
599 Lexington Avenue
New York, New York 10022
Tel: (212) 536-3906
Fax: (212) 536-3901

Charles A. Dale III (*admitted pro hac vice*)
Mackenzie L. Shea (*admitted pro hac vice*)
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 261-3100
Fax: (617) 261-3175

*Counsel to PharmAthene, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SIGA TECHNOLOGIES, INC., | Case No. 14-12623 (SHL) |
| Debtor. | |

**OBJECTION OF PHARMATHENE, INC. TO STIPULATION AND INTERIM ORDER REGARDING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION**

PharmAthene, Inc. ("***PharmAthene***") files this objection (the "***Objection***") to the *Stipulation and Interim Order Regarding Use of Cash Collateral and Adequate Protection* [Docket No. 25] (the "***Cash Collateral Stipulation***") filed by SIGA Technologies, Inc. (the "***Debtor***"). In support of the Objection, PharmAthene states as follows:

## INTRODUCTION

1.     The Debtor has not satisfied its burden to establish either the necessity or propriety of the adequate protection proposed for its primary lender General Electric Capital

Corporation ("**Lender**").  Rather unusually, the Debtor ignored proper procedure under applicable bankruptcy rules by failing to file a motion setting forth the factual and legal bases for its use of the Lender's collateral and the protection proposed to be granted.  This procedural failure could have resulted in the entry of a cash collateral order lacking a basic provision found in virtually every cash collateral order — the opportunity for creditors to investigate and challenge a secured creditor's liens and claims.  Only upon the objection of PharmAthene and the United States Trustee for the Southern District of New York (the "*U.S. Trustee*"), which was favorably received by the Court, was an investigation and challenge period added to the Cash Collateral Stipulation ultimately entered following the first day hearings on September 17.

2. The opportunity to investigate the Lender's liens and claims will be meaningless, however, unless the Debtor and Lender produce relevant supporting documents, including a complete set of executed loan documents (the "*Loan Documents*").  Despite several requests by PharmAthene, as of the date of this Objection, the Debtor has not yet produced the Loan Documents, leaving it unable to fully assess the nature and extent of the Lender's security interests.  Apart from the Lender's alleged secured claim, all other pre-petition claims against the Debtor are unsecured and would be classified in the same class under any plan of reorganization.  For that reason, understanding the nature and extent of the Lender's security interest is of paramount importance.  If the Lender's alleged security interest is not valid or perfected, then the Debtor will only have one class of creditors eligible to vote on any plan of reorganization, raising the possibility that the Debtor may be unable to confirm a plan without PharmAthene's consent.

3. Moreover, if the Loan Documents and other facts reveal that the Lender is unsecured or undersecured, the extraordinary protections proposed for the Lender may not be

2

warranted. Even if the Lender is oversecured as alleged by the Debtor, the protections offered to the Lender under the Cash Collateral Stipulation are grossly excessive and inappropriate.

4.      Accordingly, PharmAthene respectfully requests that final approval of the Cash Collateral Stipulation be postponed until (a) the Debtor has produced a complete set of Loan Documents so that the nature and extent of the Lender's security interest and the necessity and propriety of the Debtor's proposed adequate protection package can be evaluated and (b) the Debtor has followed the proper procedures for seeking authority to use cash collateral.

## **OBJECTION**

**A.    The Debtor Has Not Established the Need for or the Propriety of Adequate Protection and the Lender Has Not Established the Validity and Extent of Its Liens**

5.      In the absence of an appropriate motion, no factual or legal basis has been offered that supports the findings and other relief requested by the Debtor and Lender in the Cash Collateral Stipulation. Among other things, the Debtor has not carried its burden to establish that the Lender's interests warrant the extraordinary protections set forth in Paragraph 2 of the Cash Collateral Stipulation. Likewise, the Lender has not satisfied its burden to prove the validity, priority, and extent of its interest in the Debtor's assets, all as required by section 363(p) of the Bankruptcy Code. 11 U.S.C. § 363(p).

6.      PharmAthene attempted to address its concerns in a constructive and cost-effective way following first day hearings in this case. Specifically, PharmAthene initially requested the Loan Documents from counsel to the Lender on or about September 18. The Lender was slow to respond but on September 25 told PharmAthene to request the Loan Documents from Debtor's counsel. After exchanging phone calls, on September 29, PharmAthene requested, in writing, the Loan Documents from Debtor's counsel. Debtor's

3

counsel advised PharmAthene on October 6 that the Loan Documents would be produced, but as of the filing of this Objection, nothing has been received.

7. The Loan Documents are necessary to verify whether and to what extent the Lender's claim is actually secured. Although the amount owed to the Lender ($2.5 million) is small relative to the Debtor's total obligations, the extent to which the Lender is secured will determine the amount of adequate protection to which it is entitled and will also have implications for the plan confirmation process.

8. Here, the Lender's security interest does not extend to the Debtor's primary asset, the intellectual and other property comprising its smallpox drug known as Tecovirimat or ST-246 (See *Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2*, ¶ 49 [Docket No. 3]). The Debtor's other principal asset is cash totaling approximately $110 million. Id. at ¶ 47. Under the Uniform Commercial Code, a security interest in cash may only be perfected by control. Consequently, the Lender (which is not a depository institution) would need a tripartite control agreement with the Debtor's bank depository to perfect its lien on cash. Absent a perfected lien on cash and the assets comprising Tecovirimat, the Lender may be completely undersecured and, therefore, unsecured.

9. In view of the foregoing, it is not clear at present what, if any, portion of the Debtor's assets, including cash would constitute Lender's collateral. Nevertheless, under Paragraph 2 of the Cash Collateral Stipulation, the Debtor seeks to "adequately" protect the Lender by, among other things, the payment of a $70,000 termination fee, the monthly payment of principal <u>and</u> interest, the payment of Lender's pre and post-petition professional fees, and the establishment of a segregated $4.0 million cash collateral account against which the Lender shall

be "granted" a first priority lien.[1] Even if the Lender is fully secured, the Debtor is granting the Lender more protection than is adequate or necessary under the circumstances. Accordingly, PharmAthene respectfully requests that the Court deny entry of the Cash Collateral Stipulation until the Debtor: (a) produces the Loan Documents; (b) establishes the nature and extent of the Lender's liens on assets having a value equal to or greater than the amount owed; and (c) proves the propriety of adequate protection proposed for the Lender.

B.  **Entry of a Final Order Approving the Cash Collateral Stipulation Would Be Procedurally Improper**

10.  Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") states that, with respect to a request to use cash collateral, "[a] motion for authority to use cash collateral shall be made in accordance with Rule 9014 [of the Bankruptcy Rules] and shall be accompanied by a proposed form of order." Fed. R. Bankr. P. 4001. Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***") sets forth additional requirements for a request to use cash collateral, including requiring that the request set forth "the amount of cash collateral the party seeks permission to use." Local R. Bankr. P. 4001-2(a)(1). The Local Rules further require that a "motion shall specify the rules and statutory provisions upon which it is predicated and the legal authorities that support the requested relief." Local R. Bankr. P. 9013-1.

11.  The Debtor has not filed a motion seeking authority to use cash collateral, thus failing to satisfy Bankruptcy Rule 4001 or the Local Rules of this Court. The Cash Collateral Stipulation does not meet the requirements of Local Rule 9013-1 because it does not set forth any facts or legal authorities that support the requested relief. Further, the Cash Collateral

---

[1] Query why the Lender would be granted a lien against cash if it already has one. If the Lender had a valid and perfected lien on the Debtor's cash as of the Petition Date, a rollover or replacement lien would be more than adequate.

5

Stipulation does not satisfy Local Rule 4001-2(a)(1) because it does not set forth how much of the Debtor's cash on hand and liquid investments (approximately $110 million) constitute the Lender's collateral. Without knowing the amount of cash collateral the Debtor seeks to use and the value of assets against which the Lender maintains a perfected lien, it is impossible to evaluate whether the protections offered to the Lender are too generous and thereby harmful to unsecured creditors.

12. While a stipulation may be appropriate when the matter at issue affects only the parties to the stipulation, that is not the case here. The Cash Collateral Stipulation between the Debtor and Lender will have a permanent impact on all creditors and parties in interest in this case. Thus, the Debtor should be required to follow the procedures set forth in the Bankruptcy Rules and Local Rules for seeking authority to use cash collateral.

13. The danger inherent in the Debtor's failure to follow proper procedure is best illustrated by its attempt to limit the ability of creditors to investigate and challenge the validity and extent of the Lender's liens and claims. Rule 4001-2(f) of the Local Rules states that if in a request to use cash collateral, a "debtor stipulates, acknowledges or otherwise admits to the validity, enforceability, priority, or amount of a claim . . . or of any lien securing the claim," then the either the "proposed order shall include a provision that permits a [creditor's committee] and other parties in interest to undertake an investigation" of the validity of the secured creditors' liens and claims for a period of at least "sixty (60) days from the date of entry of the final order authorizing the use of cash collateral," or "the motion shall explain why the proposed order does not contain such an explanation." Local R. Bankr. P. 4001-2(f). Here, without a motion or notice to anyone that was not in attendance at the first day hearing, the Debtor sought to have the Cash Collateral Stipulation approved by the Court. The Cash Collateral Stipulation contained no

6

challenge period and the Debtor offered no explanation as to why a challenge period was unnecessary, thereby violating Local Rule 4001-2(f). Only upon the objection of PharmAthene and the U.S. Trustee, which was favorably received by the Court, was a challenge period added. At a minimum, the challenge period should be extended through the 60th day following the entry of a final order authorizing cash collateral use.

C.     **The Package of Adequate Protection Proposed for the Lender is Excessive**

14.    If it is true, as the Debtor claims, that the outstanding term loan from the Lender is secured by more than $100 million in cash and liquid investments, then what possible business justification can there be for the Debtor to pay a fixed interest rate of 9.85%, a $70,000 termination fee, ongoing professional fees incurred by the Lender and to segregate $4.0 million of cash when the debt owed to the Lender could more easily be retired. The extraordinary "protections" proposed for the Lender smack of an effort by the Debtor to conjure up a separate creditor class comprised of a single creditor willing to accept the "sweetheart" treatment proposed for it, thereby affording the Debtor a chance to cram down another creditor class. Such chicanery should not be countenanced by this Court.

15.    Even assuming the Debtor carries its burden to establish the need for adequate protection, certain aspects of the adequate protection proposed by the Debtor are inappropriate under the circumstances. Specifically, securing Lender's approximately $2.5 million outstanding balance, which will steadily decrease during the course of this chapter 11 case (because of the proposed monthly payments) with a segregated account containing "no less than $4 million" in cash is unnecessarily generous to the Lender. If the Lender is secured by a perfected lien on cash, then no amount should be segregated for its benefit, because the Lender would be oversecured by more than $100 million. A segregated cash collateral account, should one be approved by the Court, should have an initial balance of no more than $2.5 million, and the

7

minimum-required balance should decrease dollar for dollar as the amount outstanding to Lender decreases. In addition, payment of a $70,000 fee for the termination of the Lender's pre-petition loan commitment and the additional payment of ongoing professional fees is far more than Congress had in mind when it codified the phrase "adequate protection." Before such lavish protections are granted, the Court must find the Lender's interests are in need of protection. Here, no such showing has been made or even attempted.

## RESERVATION OF RIGHTS

16. Because the Cash Collateral Stipulation uses terms defined in the Loan Documents (Cash Collateral Stipulation, n. 1) that have not yet been provided despite several requests, PharmAthene cannot properly evaluate the Cash Collateral Stipulation and thus reserves its rights to further object to the adequate protection provisions and other terms of the Cash Collateral Stipulation pending review of the Loan Documents.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the reasons set forth herein, PharmAthene respectfully requests that the Cash Collateral Stipulation not be approved on a final basis until the Debtor: (a) produces the Loan Documents; (b) establishes the nature and extent of the Lender's lien on its assets and the need for and propriety of the adequate protection package proposed; and (c) follows proper procedure under the Bankruptcy Rules and Local Rules for seeking authority to use cash collateral.

Dated: October 8, 2014
New York, NY

**K&L GATES LLP**

*/s/ Charles A. Dale III*
Roger R. Crane
John A. Bicks
Eunice Rim Hudson
599 Lexington Avenue
New York, New York 10022
Tel: (212) 536-3906
Fax: (212) 536-3901

Charles A. Dale III
Mackenzie L. Shea
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

*Counsel to PharmAthene, Inc.*