**K&L GATES LLP**
Roger R. Crane
John A. Bicks
Eunice Rim Hudson
599 Lexington Avenue
New York, New York 10022
Tel: (212) 536-3906
Fax: (212) 536-3901

Charles A. Dale III (*admitted pro hac vice*)
Mackenzie L. Shea (*admitted pro hac vice*)
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel:  (617) 261-3100
Fax: (617) 261-3175

*Counsel to PharmAthene, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SIGA TECHNOLOGIES, INC., | Case No. 14-12623 (SHL) |
| Debtor. | |

**OBJECTION OF PHARMATHENE, INC. TO CRITICAL VENDORS MOTION**

PharmAthene, Inc. ("***PharmAthene***") files this objection (the "***Objection***") to the *Motion of Debtor for Entry of Order Pursuant to 11 U.S.C. §§ 105 and 363(b) (i) Authorizing, But Not Directing, Debtor to Pay Prepetition Obligations of Critical Vendors, (ii) Authorizing and Directing Financial Institutions to Honor and Process Related Checks and Transfers, and (iii) Scheduling Final Hearing* [Docket No. 9] (the "***Critical Vendors Motion***") filed by SIGA Technologies, Inc. (the "***Debtor***"). In support of the Objection, PharmAthene states as follows:

LA-564234 v2

# OBJECTION

1.  The Debtor's Critical Vendors Motion seeks authority to pay approximately $900,000 in claims to "critical" vendors (the "*Critical Vendor Claims*") — which amounts to over one-fourth of the Debtor's approximately $3.3 million in outstanding accounts payable — in full, in cash outside of a plan of reorganization. Despite seeking to pay such a large percentage of its pre-petition creditors in full, the Debtor provides only a cursory description of the types of vendors and amounts to be paid, and makes only conclusory statements about the importance of these vendors. The Debtor offers no cap and no oversight on the payment of the Critical Vendor Claims. While the Critical Vendors Motion provided for a $75,000 cap on payment of Critical Vendor Claims under the interim order, no cap is proposed for the final order. And only minimal oversight by creditors and the United States Trustee for the Southern District of New York (the "*U.S. Trustee*") is proposed, with the Debtor offering an after-the-fact summary of what has been paid and to whom, but not giving any party the opportunity to object to or recover any payment that turns out to have been improper. With no evidentiary basis to conclude that any vendor is indeed critical and no protection for its other creditors, approval of the Critical Vendors Motion is not appropriate.

2.  In support of the relief requested, the Debtor relies on sections 105(a) and 363(b)(1) of the Bankruptcy Code and the "doctrine of necessity." Neither section 105(a) nor the "doctrine of necessity," however, allows a bankruptcy court to authorize full payment of any unsecured debt, unless all unsecured creditors in the class are paid in full. *See In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004). Even if the selective payment of certain prepetition

unsecured claims is permissible under the Code,[1] it is "an extraordinary remedy," *In re O&S Trucking, Inc.*, No. 12-61003, 2012 WL 2803738, *2 (Bankr. W.D. Mo. June 29, 2012), requiring, at minimum, a showing that such payments are necessary for an effective reorganization. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835-36 (Bankr. S.D.N.Y. 1996) (noting "mere convenience, without necessity, is insufficient."); *accord In re Fin. News Network Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr. S.D.N.Y. 1989).

3.  In *Kmart*, the Seventh Circuit did not decide whether payment of certain "critical vendors" was permissible under section 363(b)(1) but, even if it were, the movant would have to show that: (a) such "critical vendors" would cease doing business with the debtors if not paid for pre-petition deliveries; (b) preferential payments are the <u>only</u> way to facilitate a reorganization; and (c) a prospect of benefit to the other creditors. *See id.* at 874. Although courts in this district have granted relief similar to that sought by the Debtor in the Critical Vendors Motion, the particular circumstances of the "critical creditors" have been determinative. *See In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Mar. 9, 2006) [Docket No. 2755] (allowing debtor to pay pre-petition debt of "financially-distressed sole source suppliers and vendors without enforceable contracts"); *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) [Docket No. 722] (approving payment of single source essential suppliers without

---

[1] The Debtor cites three decisions in support of the proposition that postpetition payment of prepetition obligations owed to certain creditors is permissible. None of the cases cited, including *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay)*, 80 B.R. 279 (S.D.N.Y. 1987) considered whether such preferential treatment is permissible under the Bankruptcy Code. *See Kmart*, 359 B.R. at 871 ("Although courts in the days before bankruptcy law was codified wielded power to reorder priorities and pay particular creditors in the name of "necessity" . . . today it is the Code rather than the norms of nineteenth century railroad reorganizations that must prevail.").

enforceable contracts subject to cap on payments, trade terms, and ability to recover payments as postpetition transfers if supplier fails to perform).

4. Further obfuscating the extent of the relief sought in the Critical Vendors Motion is the relief more recently sought by the Debtor in the *Motion of Debtor for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 1107(a) Authorizing, But Not Directing, Debtor to Pay Reimbursable Prepetition Obligations to Certain Service Providers* [Docket No. 51] (the "**Reimbursable Obligations Motion**"). In the Reimbursable Obligations Motion, the Debtor seeks to pay approximately $630,000 in prepetition obligations that are reimbursable by a government agency (the "**Reimbursable Obligations**"). Reimbursable Obligations Motion, ¶ 10. Importantly, the Debtor admits that there is overlap between the amounts to be paid under the Reimbursable Obligations Motion and the amounts to be paid under the Critical Vendors Motion, and states that any such amounts will be paid under the Critical Vendors Motion and not the Reimbursable Obligations Motion. *Id.*, n. 1. But the Critical Vendors Motion makes no mention of these Reimbursable Obligations. A more appropriate solution would be for Reimbursable Obligations to be paid under the Reimbursable Obligations Motion, not the Critical Vendors Motion, and for the order approving the Critical Vendors Motion to state that the total amount of Critical Vendor Claims that may be paid will be reduced, dollar-for-dollar, by the amount of Reimbursable Obligations that are paid under the Reimbursable Obligations Motion.

5. For the Critical Vendors Motion to be approved, the Debtor must be required to prove or explain why one-quarter of its pre-petition trade payables should be paid in full outside of a plan of reorganization. The Debtor must also be subjected to a hard cap on the amount of Critical Vendor Claims to be paid, and the Debtor must provide creditors, the U.S. Trustee, and the Court with meaningful oversight concerning the payment of Critical Vendor Claims. Finally,

the Debtor must also clarify what claims will be paid under the Critical Vendors Motion and what claims will be paid under the Reimbursable Obligations Motions. Only if these conditions are satisfied is approval of the Critical Vendors Motion appropriate.

6. PharmAthene does not seek to prevent the Debtor from paying creditors that are truly essential to the continued and successful operation of the Debtor's business. Rather, PharmAthene seeks to ensure that only vendors that are, in fact, "critical" to the Debtor's operations are paid outside of a chapter 11 plan.

Dated: October 8, 2014  **K&L GATES LLP**
New York, NY

*/s/ Charles A. Dale III*
Roger R. Crane
John A. Bicks
Eunice Rim Hudson
599 Lexington Avenue
New York, New York 10022
Tel: (212) 536-3906
Fax: (212) 536-3901

Charles A. Dale III
Mackenzie L. Shea
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

*Counsel to PharmAthene, Inc.*