**HEARING DATE AND TIME: November 5, 2014 at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: October 29, 2014 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                    :
In re                               :      Chapter 11 Case No.
                                    :
SIGA TECHNOLOGIES, INC.,            :      14-12623 (SHL)
                                    :
                   Debtor.          :
                                    :
-----------------------------------------------------------x
```

## NOTICE OF HEARING ON APPLICATION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

PLEASE TAKE NOTICE that a hearing on the annexed Application, dated

October 17, 2014 (the "**Application**"), of SIGA Technologies, Inc., as debtor and debtor in

possession (the "**Debtor**"), for an order pursuant to section 327(a) of title 11, United States Code

(the "**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

authorizing the Debtor to employ and retain Prime Clerk LLC as administrative agent for the

Debtor, *nunc pro tunc* to September 16, 2014, all as more fully set forth in the Application, will

be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004 (the "**Bankruptcy Court**"), on **November 5**, **2014 at 11:00 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue, Suite 1700, New York, New York 10065 (Attn: William J. Haynes II, Esq.); (iii) the attorneys for the statutory creditors' committee, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: Martin J. Bienenstock, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Richard C. Morrissey, Esq.); and (v) the proposed administrative agent, Prime Clerk LLC, 830 3rd Avenue, 9th Floor, New York, New York 10025 (Attn: Shai Waisman), so as to be received no later than **October 29**, **2014, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Application, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
      October 17, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorney for Debtor
and Debtor in Possession

WEIL:\95107371\10\74193.0003

**HEARING DATE AND TIME: November 5, 2014 at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: October 29, 2014 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                            :
In re                                       :      Chapter 11 Case No.
                                            :
SIGA TECHNOLOGIES, INC.,                    :      14-12623 (SHL)
                                            :
                         Debtor.            :
                                            :
----------------------------------------------------------------x
```

**APPLICATION OF DEBTOR FOR ENTRY OF ORDER PURSUANT**
**TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AUTHORIZING**
**EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS ADMINISTRATIVE**
**AGENT FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

          SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**"), respectfully represents:

**Background**

          1.          On September 16, 2014 (the "**Commencement Date**"), the Debtor

commenced with this Court a voluntary case under chapter 11 of title 11, United States Code

(the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and

manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

2.      Information regarding the Debtor's business, capital structure, and the

circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit

of Eric A. Rose pursuant to Local Bankruptcy Rule 1007-2, sworn to on September 16, 2014

(ECF No. 3).

## Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.      By this Application, the Debtor seeks authority, pursuant to section 327 of

the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), to retain and employ Prime Clerk LLC ("**Prime Clerk**") as

administrative agent ("**Administrative Agent**") in the Debtor's chapter 11 case effective *nunc*

*pro tunc* to the Commencement Date in accordance with the Engagement Agreement annexed

hereto as **Exhibit "B"** (the "**Engagement Agreement**").  In addition, the Debtor has filed an

application for Prime Clerk to be retained as claims and noticing agent, *nunc pro tunc* to the

Commencement Date, pursuant to 28 U.S.C. § 156(c) (the "**Section 156(c) Application**").  The

Debtor submits this Application because it believes that the administration of this chapter 11

case will require Prime Clerk to perform duties outside of the scope of that requested in the

Section 156(c) Application.  In support of this Application, the Debtor submits the Declaration

of Michael J. Frishberg, Co-President and Chief Operating Officer of Prime Clerk (the

2

"**Frishberg Declaration**"), annexed hereto as **Exhibit "A**.**"**  A proposed order approving the

retention and employment of Prime Clerk is annexed hereto as **Exhibit "C**.**"**

<u>**Prime Clerk's Qualifications**</u>

5.        Prime Clerk is comprised of leading industry professionals with significant

experience in both the legal and administrative aspects of large, complex chapter 11 cases.

Prime Clerk's professionals have experience in noticing, claims administration, solicitation,

balloting, and facilitating other administrative aspects of chapter 11 cases and experience in

matters of this nature.  Prime Clerk's professionals have acted as debtor's counsel or official

claims and noticing agent in many large bankruptcy cases in this District and in other districts

nationwide.  Prime Clerk's active cases include: *In re Tactical Intermediate Holdings, Inc.*, No.

14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (KG) (Bankr. D. Del.); *In re FL

6801 Spirits LLC*, No. 14-11691 (SCC) (Bankr. S.D.N.Y.); *In re Universal Cooperatives, Inc.*

No. 14-11187 (MFW) (Bankr. D. Del.); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW)

(Bankr. D. Del.); *In re Coldwater Creek Inc.*, No. 14-10867 (BLS) (Bankr. D. Del.); *In re MEE

Apparel LLC*, No. 14-16484 (CMG) (Bankr. D.N.J.); *In re Autoseis, Inc.*, No. 14-20130 (RSS)

(Bankr. S.D. Tex.); *In re Legend Parent, Inc.*, No. 14-10701 (REG) (Bankr. S.D.N.Y.); *In re

QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del.); *In re Sbarro LLC*, No. 14-10557

(MG) (Bankr. S.D.N.Y.); *In re Ashley Stewart Holdings, Inc.*, No. 14-14383 (MBK) (Bankr.

D.N.J.); *In re MACH Gen,* LLC, No. 14-10461 (MFW) (Bankr. D. Del.); *In re Noble Logistics,

Inc.*, No. 14-10442 (CSS) (Bankr. D. Del.); *In re Optim Energy, LLC*, No. 14-10262 (BLS)

(Bankr. D. Del.); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, No. 14-10193 (KG) (Bankr. D.

Del.); *In re Constar Int'l Holdings LLC*, No. 13-13281 (CSS) (Bankr. D. Del.); *In re Green Field

*Energy Servs., Inc.*, No. 13-12783 (KG) (Bankr. D. Del.); *In re Old FENM Inc. (f/k/a Fresh & Easy Neighborhood Mkt. Inc.)*, No. 13-12569 (KJC) (Bankr. D. Del.).

## Services to Be Provided

6.     Pursuant to the Engagement Agreement, the Debtor seeks to retain Prime Clerk to provide, among other things, the following bankruptcy administration services, if and to the extent requested:

(a)     Assist with, among other things, solicitation, balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders;

(b)     Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

(c)     Assist with the preparation of the Debtor's schedules of assets and liabilities and statement of financial affairs and gather data in conjunction therewith;

(d)     Provide a confidential data room, if requested;

(e)     Manage and coordinate any distributions pursuant to a chapter 11 plan; and

(f)     Provide such other processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, to the extent not included in the Section 156(c) Application, as may be requested from time to time by the Debtor, the Court, or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**").

## Professional Compensation

7.     The fees Prime Clerk will charge in connection with providing services to the Debtor are set forth in the Engagement Agreement. The Debtor respectfully submits that Prime Clerk's rates are competitive and comparable to the rates its competitors charge for similar services. Indeed, the Debtor conducted a review and competitive comparison of other firms before selecting Prime Clerk as Administrative Agent. The Debtor believes Prime Clerk's rates

4

are reasonable given the quality of Prime Clerk's services and its professionals' bankruptcy

expertise.  Additionally, Prime Clerk will seek reimbursement from the Debtor for reasonable

expenses in accordance with the terms of the Engagement Agreement.

8.    The Debtor is advised that Prime Clerk intends to apply to the Court for

allowance of compensation and reimbursement of expenses incurred after the Commencement

Date in connection with the services it provides as Administrative Agent in accordance with

General Order M-412 (Order Establishing Procedures for Monthly Compensation and

Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)),

Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013

(Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation

and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28 C.F.R. § 58)

(collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**"), and any further orders of the Court (the "**Orders**"), both in connection with the

Application and the interim and final fee applications to be filed by Prime Clerk in this chapter

11 case.  Moreover, the Debtor is advised that Prime Clerk intends to make a reasonable effort to

comply with the Office of the United States Trustee for the Southern District of New York's

requests for information and additional disclosures as set forth in the Fee Guidelines.

9.    Additionally, the Debtor has agreed to indemnify, defend, and hold harmless

Prime Clerk and its members, officers, employees, representatives, and agents under certain

circumstances as specified in the Engagement Agreement (the "**Indemnification Provision**"),

except in circumstances resulting solely from Prime Clerk's bad faith, self-dealing, breach of

5

fiduciary duty (if any), gross negligence, or willful misconduct or as otherwise provided in the

Engagement Agreement.  Any and all requests by Prime Clerk for the payment of

indemnification as set forth in the Engagement Agreement will be made by means of an

application to the Court to ensure that such indemnity conforms to the terms of the Engagement

Agreement and is reasonable under the circumstances.  Further, in the event that Prime Clerk

seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the

payment of an indemnity claim pursuant to the Engagement Agreement, Prime Clerk will include

such invoices and supporting time records in its interim and final fee applications, to be

determined by this Court after notice and a hearing.  The Debtor believes that such an

indemnification obligation is customary, reasonable, and necessary to retain the services of the

Administrative Agent in this chapter 11 case.

### Disinterestedness

10.     The Debtor is advised that Prime Clerk has reviewed its electronic database to

determine whether it has any relationships with the creditors and parties in interest provided by

the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as

disclosed in the Frishberg Declaration, Prime Clerk is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the

Bankruptcy Code, and does not hold or represent any interest materially adverse to the Debtor's

estate in connection with any matter on which it would be employed.

11.     The Debtor is advised that Prime Clerk believes that it does not have any

relationships with creditors or parties in interest that would present a disqualifying conflict of

interest.  Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are

discovered that would require such additional disclosure.

## Notice

12.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, (iii) the attorneys for the statutory committee of unsecured creditors appointed in this chapter 11 case, and (iv) all entities that requested notice in this chapter 11 case under Fed. R. Bankr. P. 2002.  The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

13.     No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
          October 17, 2014

SIGA Technologies, Inc.


/s/ Daniel J. Luckshire
NAME:  Daniel J. Luckshire
TITLE:  Executive Vice President and Chief
              Financial Officer

7

**<u>Exhibit A</u>**

**Frishberg Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
SIGA TECHNOLOGIES, INC.,                    :        14-12623 (SHL)
                                            :
                        Debtor.             :
                                            :
-----------------------------------------------------------x

### DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

I, Michael J. Frishberg, under penalty of perjury, declare as follows:

1.      I am the Co-President and Chief Operating Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose offices are located at 830 3rd Avenue, 9th Floor, New York, New York 10022.  I submit this Declaration in connection with the Application (the "**Application**")[1] of SIGA Technologies, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case ("**SIGA**" or the "**Debtor**"), for authority to employ and retain Prime Clerk as administrative agent (the "**Administrative Agent**") to the Debtor in accordance with the terms and conditions set forth in the Engagement Agreement, annexed to the Application as **Exhibit "B."**

2.      I submit this Declaration as evidence of the qualifications of Prime Clerk to serve as Administrative Agent to the Debtor under section 327(a) of chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), and to make certain disclosures required under

---

[1]Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

sections 329 and 504 of the Bankruptcy Code, and rules 2014(a) and 2016(b) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.        Unless otherwise stated in this Declaration, I have personal knowledge of

the matters set forth herein, and if called and sworn as a witness, I could and would testify

competently thereto.  To the extent any information disclosed herein requires amendment or

modification upon Prime Clerk's completion of further review, or as additional party in interest

information becomes available to it, a supplemental declaration will be submitted to the Court

reflecting such amended or modified information.

4.        Neither I, Prime Clerk, nor any employee of Prime Clerk represents any

entity other than the Debtor in connection with this chapter 11 case.  In addition, except as set

forth herein, to the best of my knowledge, after due inquiry, neither I, Prime Clerk, nor any

employee of Prime Clerk represents any party in interest in this chapter 11 case in matters related

to this chapter 11 case.

**Debtor's Retention of Prime Clerk**

5.        The Debtor has filed the Application to retain Prime Clerk (subject to this

Court's approval) as Administrative Agent.  Specifically, Prime Clerk will perform the

bankruptcy administration services specified in the Application and the Engagement Agreement.

6.        Prime Clerk is comprised of leading industry professionals with

significant experience in both the legal and administrative aspects of large, complex chapter 11

cases.  Prime Clerk's professionals have experience in noticing, claims administration,

solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and

experience in matters of this size and complexity.  Prime Clerk's professionals have acted as

debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this

2

District and in other districts nationwide.  Prime Clerk's active cases include: *In re Tactical Intermediate Holdings, Inc.* No. 14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (KG) (Bankr. D. Del.); *In re FL 6801 Spirits LLC*, No. 14-11691 (SCC) (Bankr. S.D.N.Y.); *In re Universal Cooperatives, Inc.* No. 14-11187 (MFW) (Bankr. D. Del.); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del.); *In re Coldwater Creek Inc.*, No. 14-10867 (BLS) (Bankr. D. Del.); *In re MEE Apparel LLC*, No. 14-16484 (CMG) (Bankr. D.N.J.); *In re Autoseis, Inc.*, No. 14-20130 (RSS) (Bankr. S.D. Tex.); *In re Legend Parent, Inc.*, No. 14-10701 (REG) (Bankr. S.D.N.Y.); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del.); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y.); *In re Ashley Stewart Holdings, Inc.*, No. 14-14383 (MBK) (Bankr. D.N.J.); *In re MACH Gen,* LLC, No. 14-10461 (MFW) (Bankr. D. Del.); *In re Noble Logistics, Inc.*, No. 14-10442 (CSS) (Bankr. D. Del.); *In re Optim Energy, LLC*, No. 14-10262 (BLS) (Bankr. D. Del.); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, No. 14-10193 (KG) (Bankr. D. Del); *In re Constar Int'l Holdings LLC*, No. 13-13281 (CSS) (Bankr. D. Del.); *In re Green Field Energy Servs., Inc.*, No. 13-12783 (KG) (Bankr. D. Del.); *In re Old FENM Inc. (f/k/a Fresh & Easy Neighborhood Mkt. Inc.)*, No. 13-12569 (KJC) (Bankr. D. Del.).

### **Prime Clerk is Disinterested**

7.      Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Prime Clerk and its professional personnel:

    (a)      are not creditors, equity security holders, or insiders of the Debtor;

    (b)      are not and were not, within two years before the date of the filing of this case, directors, officers, or employees of the Debtor; and

    (c)      do not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

3

8.      I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "**Potential Parties in Interest**") in this chapter 11 case.  The list of Potential Parties in Interest was provided by the Debtor and included, among other parties, the Debtor, current and former directors and officers of the Debtor, significant stockholders, secured creditors, the Debtor's 20 largest unsecured creditors on a consolidated basis and other parties.  A categorized list of the types of entities who were considered Potential Parties in Interest is listed on **Exhibit "1,"** annexed hereto.  The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision.  At this time, and as set forth in further detail herein, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest.  Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to file promptly a supplemental declaration.

9.      To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties.  Prime Clerk may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Prime Clerk serves or has served in a neutral capacity as Claims and Noticing Agent and/or Administrative Agent for another chapter 11 debtor.

10.      Shai Waisman is the Chief Executive Officer of Prime Clerk.  From approximately May 1997 until December 2003, Mr. Waisman was an associate of Weil, Gotshal & Manges LLP ("**Weil**"), the attorneys for the Debtor, and was a Partner at Weil from January 2004 until his departure in 2011.  During his tenure at Weil, Mr. Waisman was neither involved

4

with, nor advised, the Debtor with respect to any aspect of its business or its strategy,

preparation, or filing of this chapter 11 case.

11.     Stephen Karotkin is a partner at Weil, the attorneys for the Debtor.  Mr.

Karotkin's son, Joshua Karotkin, has been an employee of Prime Clerk since April 2014.  Joshua

Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon

Prime Clerk's revenue.  Joshua Karotkin has not and will not be working on or otherwise billing

time to the Debtor's chapter 11 case.

12.     Certain of Prime Clerk's professionals were partners of or formerly

employed by firms that are providing or may provide professional services to parties in interest

in this chapter 11 case.  Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges

LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Togut,

Segal & Segal LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP;

KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman

Carson Consultants LLC.  Except as disclosed herein, these professionals did not work on any

matters involving the Debtor while employed by their previous firms.  Moreover, these

professionals were not employed by their previous firms when this chapter 11 case was filed.

13.     Prime Clerk has and will continue to represent clients in matters unrelated

to this chapter 11 case.  In addition, Prime Clerk has and will continue to have relationships in

the ordinary course of its business with certain vendors, professionals, and other parties in

interest that may be involved in the Debtor's chapter 11 case in matters unrelated to this case.

Prime Clerk may also provide professional services to entities or persons that may be creditors or

parties in interest in this chapter 11 case, which services do not directly relate to, or have any

direct connection with, this chapter 11 case or the Debtor.

WEIL:\95107371\10\74193.0003

14.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors.  Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.  All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to this chapter 11 case.

15.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be the Debtor or its subsidiary, often without Prime Clerk's or its personnel's knowledge.  Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell or vote any particular security.  The Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the Investment Fund, they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.     From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be the Debtor or its subsidiary.  Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, all Prime Clerk partners and employees are barred from trading in securities with respect to which they possess confidential information.

6

17.      To the best of my knowledge, neither Prime Clerk nor any of its partners or employees represents any interest materially adverse to the Debtor's estate with respect to any matter upon which Prime Clerk is to be engaged.  Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

**Prime Clerk's Retainer, Rates, and Billing Practices**

18.      Prime Clerk is not a creditor.  Prime Clerk received a retainer and an advance against expenses for all services to be performed.  As of the Commencement Date, the remaining amount of the retainer was approximately $20,000.  Prime Clerk intends to apply the retainer to any outstanding amounts relating to the period prior to the Commencement Date that were not processed through Prime Clerk's billing system as of the Commencement Date, and to retain the balance on account for services rendered and expenses incurred subsequent to the Commencement Date.

19.      Prime Clerk intends to charge the Debtor for services rendered in connection with this chapter 11 case as set forth in the Engagement Agreement and intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Commencement Date in connection with the services it provides as Administrative Agent pursuant to the Engagement Agreement and in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)) and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

7

U.S.C. § 330 (Appendix A to 28 C.F.R. § 58) (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, and any further orders of the Court, both in connection with the Application and the interim and final fee applications to be filed by Prime Clerk in this chapter 11 case.  Moreover, Prime Clerk intends to make a reasonable effort to comply with the Office of the United States Trustee for the Southern District of New York's requests for information and additional disclosures as set forth in the Fee Guidelines.

20.    To the extent that Prime Clerk discovers any facts bearing on matters described herein, Prime Clerk will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on October 17, 2014

/s/ Michael J. Frishberg
Michael J. Frishberg
Co-President and Chief Operating Officer
Prime Clerk LLC

8

**<u>Exhibit 1</u>**

**Retention Checklist of Potential Parties in Interest**

- Debtor
- Debtor's Trade Names
- Debtor's Subsidiary
- Top 20 Unsecured Creditors
- Accounts Payable
- Top 5 Secured Creditors
- Current Members of Board of Directors
- Former Members of Board of Directors (past 3 years)
- Current Officers
- Former Officers (past 3 years)
- Affiliations of Current and Former Members of Board of Directors
- Affiliations of Current and Former Officers
- Current Significant Shareholders (5% or more)
- Unions
- Financial Institutions
- Landlords
- Major Competitors
- Bankruptcy Judges for the United States Bankruptcy Court for the S.D.N.Y.
- United States Trustees for the S.D.N.Y.
- Litigation Parties
- Insurance Providers
- Taxing Authorities
- Utility Companies
- Proposed Debtor's Professionals and Ordinary Course Professionals
- Vendors
- Underwriting Investment Bankers for Debtor's Securities
- Regulatory Agencies
- Counsel and Professionals to Certain Ad Hoc Groups of Lenders
- Members of Ad Hoc or Unofficial Creditors' Committee and Professionals
- Noteholders
- Indenture Trustees
- Significant Contract Counterparties
- Joint Operating Agreement Counterparties
- Debtor's Significant Equity Interests (5% or more)

## Exhibit B

**Engagement Agreement**



## Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of September 15, 2014 between Prime Clerk LLC ("***Prime Clerk***") and SIGA Technologies, Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>**Services**</u>

   (a)  Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

   (b)  The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c)  The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. <u>**Rates, Expenses and Payment**</u>

   (a)  Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***").  The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b)  The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c)  Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

   (d)  In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk a retainer of $20,000. Prime Clerk shall hold such retainer as security for the Company's payment of fees and expenses hereunder.  Prime Clerk may apply its retainer to all prepetition invoices, which retainer then shall be replenished immediately by the Company to the original retainer amount; thereafter, Prime Clerk may hold such retainer as security for the Company's payment of fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5.   **Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

6.   **Bank Accounts**

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

7.   **Term and Termination**

(a)   This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b)   If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c)   If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d)   If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.   **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

    (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

    (a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c)  Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or



acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Prime Clerk:      Prime Clerk LLC
                        830 3rd Avenue, 9th Floor
                        New York, NY 10022
                        Attn: Shai Waisman
                        Tel: (212) 257-5450
                        Email: swaisman@primeclerk.com

If to the Company:      SIGA Technologies, Inc.
                        660 Madison Avenue, Suite 1700
                        New York, NY 10065
                        Attn: Daniel J. Luckshire
                        Tel: (212) 672-9100
                        Email: Dluckshire@Siga.Com

With a copy to:         Weil, Gotshal & Manges LLP
                        767 Fifth Avenue
                        New York, NY 10153
                        Attn: Stephen Karotkin, Esq.
                        Tel: (212) 310-8350
                        Email: Stephen.Karotkin@Weil.Com

6

**Prime Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Shai Waisman
Title: Chief Executive Officer

**SIGA Technologies, Inc.**

By: Daniel J. Luckshire
Title: Executive Vice President and Chief Financial Officer

# Rates

## Claim and Noticing Rates[1]

| Title | Hourly Rate |
|---|---|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $45 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $125 |
| **Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. | $135 |
| **Senior Consultant**<br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | $165 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. | $190 |

## Solicitation, Balloting and Tabulation Rates

| | |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | $190 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | $210 |

## Printing and Noticing Services

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.



| | |
|---|---|
| Printing | $0.10 per page[2] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

---

[2] Volume discounts will be applied to large mailings



| On-line claim filing | No charge |
|---|---|

## Call Center Services

| Case-specific voice-mail box | No charge |
|---|---|
| Interactive Voice Response ("IVR") | Set-up fee waived, $0.34 per minute |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

## Disbursement Services

| Check issuance and/or Form 1099 | Available on request |
|---|---|
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk

**<u>Exhibit C</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                    :
In re                                               :          **Chapter 11 Case No.**
                                                    :
**SIGA TECHNOLOGIES, INC.,**                        :          **14-12623 (SHL)**
                                                    :
                                     **Debtor.**    :
                                                    :
------------------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF PRIME CLERK LLC AS ADMINISTRATIVE AGENT FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

Upon the Application, dated October 17, 2014 (the "**Application**")[1] of SIGA

Technologies, Inc. (the "**Debtor**"), pursuant to section 327(a) of title 11, United States Code (the

"**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), for entry of an order authorizing the employment and retention of Prime

Clerk LLC ("**Prime Clerk**") as administrative agent ("**Administrative Agent**"), *nunc pro tunc* to

the Commencement Date, all as more fully described in the Application; and upon the

Declaration of Michael J. Frishberg, annexed to the Application as **Exhibit "A"** (the "**Frishberg**

**Declaration**"); and the Court being satisfied, based on the representations made in the

Application and the Frishberg Declaration, that Prime Clerk has the capability and experience to

provide the services described in the Application and that Prime Clerk is "disinterested" as such

term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Prime

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Clerk represents no interest adverse to the Debtor's estate with respect to the matters upon which

it is to be engaged; and the Court having jurisdiction to consider the Application and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order

M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Application having been provided, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Application (the

"**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court;

and the Court having found and determined that the relief sought in the Application is in the best

interests of the Debtor, its estate, creditors, and all parties in interest and that the legal and factual

bases set forth in the Application establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved as provided herein; and it is further

ORDERED that the Debtor is authorized to employ and retain Prime Clerk as

Administrative Agent effective *nunc pro tunc* to the Commencement Date under the terms of the

engagement agreement annexed hereto as **Exhibit "1"** (the "**Engagement Agreement**"),

including, without limitation, the Indemnification Provision, all as contemplated by the

Application, and Prime Clerk is authorized to perform the bankruptcy administration services

described in the Application and set forth in the Engagement Agreement; and it is further

ORDERED that Prime Clerk is authorized to take such other action to comply with

all duties set forth in the Application; and it is further

2

ORDERED that Prime Clerk shall apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Commencement Date in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any orders entered in this chapter 11 case regarding professional compensation and reimbursement of expenses; and it is further

ORDERED that all requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the proceeding in respect of which indemnity is sought; *provided*, *however*, that in no event shall Prime Clerk be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in no event shall Prime Clerk be indemnified if the Debtor or a representative of the estate asserts a claim for, and a Court determines by final order that such claim arose out of, Prime Clerk's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event that Prime Clerk seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, but determined by this Court after notice and a hearing; and it is further

ORDERED that Prime Clerk shall provide ten (10) business days' notice to the Debtor, the United States Trustee for the Southern District of New York, and any statutory

3

committee appointed in this chapter 11 case in connection with any increase of the rates listed in the Engagement Agreement; and it is further

ORDERED that the Debtor and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

ORDERED that notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that in the event of any inconsistency between the Engagement Agreement, the Application, and the Order, the Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: November __, 2014
     New York, New York

                                            _____
                                            UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Engagement Agreement**



## Prime Clerk LLC Engagement Agreement

This Agreement is entered into as of September 15, 2014 between Prime Clerk LLC ("***Prime Clerk***") and SIGA Technologies, Inc. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Services</u>

    (a) Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. <u>Rates, Expenses and Payment</u>

    (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***").  The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

    (c) Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

    (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk a retainer of $20,000.  Prime Clerk shall hold such retainer as security for the Company's payment of fees and expenses hereunder.  Prime Clerk may apply its retainer to all prepetition invoices, which retainer then shall be replenished immediately by the Company to the original retainer amount; thereafter, Prime Clerk may hold such retainer as security for the Company's payment of fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4. **Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5.  **Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

6.  **Bank Accounts**

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d)  If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.  **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

    (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

    (b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

    (c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

    (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

    (a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

    (b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

    (c)  Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or



acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. Integration; Severability; Modifications; Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Prime Clerk:     Prime Clerk LLC
                       830 3rd Avenue, 9th Floor
                       New York, NY 10022
                       Attn: Shai Waisman
                       Tel: (212) 257-5450
                       Email: swaisman@primeclerk.com

If to the Company:     SIGA Technologies, Inc.
                       660 Madison Avenue, Suite 1700
                       New York, NY 10065
                       Attn: Daniel J. Luckshire
                       Tel: (212) 672-9100
                       Email: Dluckshire@Siga.Com

With a copy to:        Weil, Gotshal & Manges LLP
                       767 Fifth Avenue
                       New York, NY 10153
                       Attn: Stephen Karotkin, Esq.
                       Tel: (212) 310-8350
                       Email: Stephen.Karotkin@Weil.Com

**Prime Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Shai Waisman
Title: Chief Executive Officer


**SIGA Technologies, Inc.**

By: Daniel J. Luckshire
Title: Executive Vice President and Chief Financial Officer

8

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
| --- | --- |
| Analyst<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $45 |
| Technology Consultant<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $125 |
| Consultant<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. | $135 |
| Senior Consultant<br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | $165 |
| Director<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. | $190 |

### Solicitation, Balloting and Tabulation Rates

| | |
| --- | --- |
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | $190 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | $210 |

### Printing and Noticing Services

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.



| | |
|---|---|
| Printing | $0.10 per page[2] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

### On-line Claim Filing Services

---

[2] Volume discounts will be applied to large mailings



| | |
|---|---|
| On-line claim filing | No charge |

## Call Center Services

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | Set-up fee waived, $0.34 per minute |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

## Disbursement Services

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk