HEARING DATE AND TIME: November 5, 2014 at 11:00 a.m. (Eastern Time)
OBJECTION DEADLINE: October 29, 2014 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
|  |  :  |  |
| In re | : | **Chapter 11 Case No.** |
|  | : |  |
| **SIGA TECHNOLOGIES, INC.,** | : | **14-12623 (SHL)** |
|  | : |  |
| **Debtor.** | : |  |
|  | : |  |
-------------------------------------------------------------x

**NOTICE OF HEARING ON APPLICATION OF DEBTOR FOR ENTRY OF
ORDER PURSUANT TO 11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014(a)
AUTHORIZING EMPLOYMENT AND RETENTION OF KRAMER LEVIN
NAFTALIS & FRANKEL LLP AS SPECIAL CORPORATE, SEC, AND LITIGATION
COUNSEL FOR DEBTOR _NUNC PRO TUNC_ TO COMMENCEMENT DATE**

PLEASE TAKE NOTICE that a hearing on the annexed application, dated

October 17, 2014 (the "**Application**"), of SIGA Technologies, Inc., as debtor and debtor in

possession (the "**Debtor**"), for an order pursuant to section 327(e) of title 11, United States Code

(the "**Bankruptcy Code**"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure

authorizing the Debtor to employ and retain Kramer Levin Naftalis & Frankel LLP as special

corporate, SEC, and litigation counsel for the Debtor, _nunc pro tunc_ to September 16, 2014, all

as more fully set forth in the Application, will be held before the Honorable Sean H. Lane,

United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for the

Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York,

New York 10004, on **November 5, 2014 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Stephen Karotkin); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue, Suite 1700, New York, New York  10065 (Attn:  William J. Haynes II, Esq.); (iii) the attorneys for the statutory creditors' committee, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn:   Martin J. Bienenstock, Esq.); (vi) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn:   Richard C. Morrissey, Esq.); and (v) the proposed special corporate, SEC, and litigation counsel for the Debtor, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, New York 10036 (Attn: James A. Grayer, Esq.; Robert T. Schmidt, Esq.; Anupama Yerramalli, Esq.), so as to be received no later than **October 29, 2014, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

WEIL:\95098234\10\74193.0003

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Application, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
      October 17, 2014

                        /s/ Stephen Karotkin
                        Harvey R. Miller
                        Stephen Karotkin
                        Garrett Fail

                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtor
                        and Debtor in Possession

WEIL:\95098234\10\74193.0003

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
SIGA TECHNOLOGIES, INC.,                  :        14-12623 (SHL)
                                          :
                Debtor.                   :
                                          :
------------------------------------------------------------x
```

**APPLICATION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO**
**11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014(a) AUTHORIZING**
**EMPLOYMENT AND RETENTION OF KRAMER LEVIN NAFTALIS &**
**FRANKEL LLP AS SPECIAL CORPORATE, SEC, AND LITIGATION**
**COUNSEL FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

SIGA Technologies, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represents:

## Background

1.    On September 16, 2014 (the "**Commencement Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and manage

its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in this chapter 11 case.

2.      Information regarding the Debtor's business, capital structure, and the

circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit

of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2, sworn to on September 16, 2014 (the

"**Rose Affidavit**") (ECF No. 3).

## Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.      By this Application, the Debtor seeks authority, pursuant to section 327(e)

of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), to employ and retain Kramer Levin Naftalis & Frankel LLP ("**Kramer**

**Levin**") as special corporate, SEC, and litigation counsel for the Debtor, *nunc pro tunc* to the

Commencement Date.  In support of this Application, the Debtor submits the Declaration of

James A. Grayer, a member of Kramer Levin (the "**Grayer Declaration**"), annexed hereto as

**Exhibit "A"** and the Declaration of William J. Haynes II, Executive Vice President and General

Counsel of the Debtor (the "**Haynes Declaration**"), annexed hereto as **Exhibit "B."**  A proposed

order approving the retention and employment of Kramer Levin is annexed hereto as **Exhibit**

**"C."**

## The Debtor's Retention of Kramer Levin

5.      The Debtor seeks to retain Kramer Levin as its special corporate, SEC,

and litigation counsel because of (i) Kramer Levin's extensive experience and expertise with

2

respect to the Debtor's business and the PharmAthene Action, as defined in the Rose Affidavit, as a result of Kramer Levin's lengthy prepetition service to the Debtor and (ii) Kramer Levin's extensive corporate law and SEC experience.

6.    Kramer Levin first served as corporate counsel to the Debtor as early as 2001.  Kramer Levin has since served as counsel for the Debtor on a variety of matters including corporate governance matters, intellectual property, litigation matters, contract matters, debt financing matters, SEC compliance matters, NASDAQ compliance matters, immigration matters, general corporate advice and employment advice.  As a result of its efforts over the past thirteen (13) years, Kramer Levin is intimately familiar with the Debtor's business.

7.    Kramer Levin's corporate department has extensive experience in a wide range of industries, and regularly handles most types of complex corporate and securities transactions.  Furthermore, Kramer Levin's wide range of practices, which includes significant expertise in the areas of bankruptcy and creditors' rights, real estate, intellectual property, employment, litigation and tax, will permit Kramer Levin to represent fully the Debtor's interests in an efficient and effective manner.

8.    The Debtor submits that both the interruption and the duplicative cost involved in obtaining substitute counsel to replace Kramer Levin would be extremely harmful to the Debtor and its estate.  Accordingly, were the Debtor required to retain corporate, SEC, and litigation counsel other than Kramer Levin, the Debtor, its estate, and all parties in interest would be unduly prejudiced by the time and expense necessary to replace Kramer Levin as the Debtor's corporate, SEC, and litigation counsel.  Replicating Kramer Levin's familiarity and invaluable expertise with respect to the Debtor's business would be detrimental to the Debtor.

WEIL:\95098234\10\74193.0003

9.      As such, Kramer Levin is well qualified and uniquely able to serve as the Debtor's special corporate, SEC, and litigation counsel and the retention of Kramer Levin is in the best interest of the Debtor, its estate, and all parties in interest.

### Scope of Services

10.     The Debtor currently seeks to retain Kramer Levin, subject to the approval of this Court, with respect to its general corporate and SEC matters which Kramer Levin has historically provided to the Debtor.

11.     In addition, the Debtor seeks to retain Kramer Levin with respect to the PharmAthene Action, which is described more fully in the Rose Affidavit.  Kramer Levin has represented SIGA throughout the PharmAthene Action, and the Debtor requests that Kramer Levin continue its representation of the Debtor in connection with any further proceedings with respect to the PharmAthene Action.  Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**") has served as Kramer Levin's co-counsel and local counsel in connection with these proceedings, including the post-trial and appellate proceedings that have taken place to-date. The Debtor has sought in a separate retention application to retain Paul Weiss as special litigation counsel to allow Paul Weiss' continuing assistance in connection with the PharmAthene Action.

12.     Kramer Levin has provided the Debtor with immigration and employment services from time to time.  Currently, Kramer Levin is handling one immigration matter for the Debtor.  Given this historic relationship, should the Debtor require additional immigration or employment advice, Kramer Levin could be called upon to render such services.

13.     While certain aspects of the representation may necessarily involve both Kramer Levin, Weil, Gotshal & Manges LLP ("**Weil**"), and other professionals retained in this chapter 11 case, the Debtor believes that the services Kramer Levin will provide will be

4

complimentary to, rather than duplicative of, the services to be performed by Weil and other retained professionals. Further, the Debtor is mindful of the need to avoid unnecessary duplication of services, and appropriate procedures will be implemented to ensure minimal duplication of effort, if any, as a result of Kramer Levin's role as special corporate, SEC, and litigation counsel.

**Compensation**

14.    Kramer Levin has stated its desire and willingness to act in this chapter 11 case to render the necessary professional services as attorneys for the Debtor and to receive compensation and reimbursement in accordance with its standard billing practices (subject to a voluntary fifteen percent (15%) discount) for services rendered and expenses incurred on behalf of the Debtor, as set forth in the Grayer Declaration and in accordance with the provisions of sections 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court. Kramer Levin's billing practices and rates are summarized below and are consistent with those generally governing the firm's representation of its other clients. The Debtor respectfully submits that Kramer Levin's rates and policies stated in the Grayer Declaration are reasonable.

15.    The Debtor understands and has agreed that Kramer Levin hereafter will apply to the Court for allowances of compensation and reimbursement of expenses in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy

5

Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and any further orders of the Court (the "**Orders**"), both in connection with the Application and the interim and final fee applications to be filed by Kramer Levin in this chapter 11 case.  Moreover, the Debtor is advised that Kramer Levin intends to make a reasonable effort to comply with the Office of the United States Trustee for the Southern District of New York's requests for information and additional disclosures as set forth in the Fee Guidelines.

16.    Kramer Levin's current customary U.S. hourly rates, subject to change from time to time, are $745 to $1,100 for members, counsel, and special counsel, $445 to $790 for associates, and $280 to $335 for paraprofessionals.  Kramer Levin's hourly billing rates, as agreed to by the Debtor, are designed to compensate Kramer Levin fairly for the work of its professionals.  The hourly fees are comparable to those charged by attorneys of similar experience and expertise for engagements of similar scope and complexity to this chapter 11 case.  Additionally, consistent with the past practice and in recognition of its long-standing relationship with the Debtor, the Debtor is advised that Kramer Levin has applied and will continue to apply a voluntary fifteen percent (15%) discount to its applicable standard hourly billing rates for services provided during the chapter 11 case (in addition to the discretionary and voluntary write-off of time and expenses that would otherwise occur in connection with the review of monthly invoices).[1]

17.    Kramer Levin's hourly billing rates are subject to periodic review and adjustments to reflect, among other things, changes in responsibilities and increased experience.

---

[1] Kramer Levin has also agreed to "freeze" the billing rates that were in effect in 2013, through the end of 2014. The 2013 billing rates were $710 to $1,050 for members and counsel, $425 to $775 for associates, and $270 to $320 for paraprofessionals.

6

Kramer Levin has agreed that it will file a supplemental affidavit with the Court describing any increase in its billing rates and provide not less than ten (10) business days' notice of such increases to the Debtor, the United States Trustee for the Southern District of New York and any official committee appointed in this chapter 11 case.[2]

18.     Kramer Levin's hourly billing rates for professionals are not intended to cover out-of-pocket expenses and certain elements of overhead that are typically billed separately.   Accordingly, Kramer Levin regularly charges its clients for the expenses and disbursements incurred in connection with the client's case, including, *inter alia*, telecommunications, photocopying, postage and package delivery charges, court fees, transcript costs, travel expenses, expenses for working meals and computer-aided research.  The Debtor is advised that Kramer Levin intends to seek reimbursement for expenses incurred in connection with its representation of the Debtor in accordance with Kramer Levin's normal reimbursement policies, subject to any modifications to such policies that Kramer Levin may be required to make to comply with the Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and – to the extent required by the foregoing – the Fee Guidelines.

19.     The Debtor is advised that Kramer Levin intends to maintain detailed, contemporaneous time records and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines (to the extent required by the foregoing), and any additional procedures that may be established by the Court.  In addition,

---

[2] Each September, there is a step-up of associate class to reflect an increase in each associate's class seniority.  This annual step-up is not considered a "rate increase" as the billing rate among the applicable associate class does not change.

WEIL:\95098234\10\74193.0003

Kramer Levin has agreed to accept as compensation such sums as may be allowed by the Court.

Kramer Levin understands that interim and final fee awards are subject to approval by this Court.

## No Adverse Interest

20.      To the best of the Debtor's knowledge, and based upon the Grayer

Declaration, Kramer Levin does not represent or hold any interest adverse to the Debtor or its

estate with respect to the matters on which Kramer Levin is to be employed.  Further, to the best

of the Debtor's knowledge and based on the Grayer Declaration, Kramer Levin does not have

any connection with any creditor or other parties in interest, their respective attorneys or

accountants, or the U.S. Trustee or any of its employees, except as set forth in the Grayer

Declaration.  Kramer Levin will conduct an ongoing review of its files to ensure that no conflicts

or other disqualifying circumstances exist or arise.   If any new facts or circumstances are

discovered, Kramer Levin will supplement its disclosure to the Court.

21.      For the reasons set forth above, the Debtor believes that Kramer Levin is

well qualified to serve as its special corporate, SEC, and litigation counsel.  The retention of

Kramer Levin is necessary and in the best interest of the Debtor and its estate, and should be

approved.

## Notice

22.      Notice of this Motion has been provided to (i) the Office of the United

States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, (iii) the

attorneys for the statutory committee of unsecured creditors appointed in this chapter 11 case,

and (iv) all entities that requested notice in this chapter 11 case under Fed. R. Bankr. P. 2002.

The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no

other or further notice need be provided.

8

23.    No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
          October 17, 2014

SIGA Technologies, Inc.


/s/ Daniel J. Luckshire
NAME:    Daniel J. Luckshire
TITLE:    Executive Vice President and Chief
             Financial Officer

## EXHIBIT A

## DECLARATION OF JAMES A. GRAYER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                         :

In re                                    :           **Chapter 11 Case No.**
                                           :

**SIGA TECHNOLOGIES, INC.,**            :           **14-12623 (SHL)**
                                           :

                          **Debtor.**          :

                                           :
-------------------------------------------------------------x

DECLARATION OF JAMES A. GRAYER IN SUPPORT OF
APPLICATION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014(a) AUTHORIZING
EMPLOYMENT AND RETENTION OF KRAMER LEVIN NAFTALIS &
FRANKEL LLP AS SPECIAL CORPORATE, SEC, AND LITIGATION
COUNSEL FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

          James A. Grayer makes this Declaration under 28 U.S.C. § 1746:

          1.        I am a member of the firm Kramer Levin Naftalis & Frankel LLP

("**Kramer Levin**" or the "**Firm**"), a law firm with principal offices at 1177 Avenue of the

Americas, New York, New York 10036; a regional office in Silicon Valley; and a foreign office

in Paris.  I am admitted to practice before the Courts of New York.  I submit this Declaration in

connection with the application (the "**Application**"),[1] dated October 17, 2014, of SIGA

Technologies, Inc. ("**SIGA**" or the "**Debtor**"), as debtor and debtor in possession in the above-

captioned chapter 11 case, for authority to employ Kramer Levin as its special corporate, SEC,

and litigation counsel in this chapter 11 Case, *nunc pro tunc* to September 16, 2014 (the

"**Commencement Date**"), at its normal hourly rates in effect from time to time (subject to a

voluntary 15% discount) and in accordance with its normal reimbursement policies.

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms
    in the Application.

2.       I submit this Declaration as evidence of the qualifications of Kramer Levin to serve as special corporate, SEC, and litigation counsel to the Debtor in this chapter 11 Case under section 327(e) of chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), and to make certain disclosures required under sections 329 and 504 of the Bankruptcy Code, and rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.       Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Kramer Levin's completion of further review, or as additional party in interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

4.       Neither I, Kramer Levin, nor any member of, counsel to, or associate of the Firm represents any entity other than the Debtor in connection with this chapter 11 case. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, Kramer Levin, nor any member of, counsel to, or associate of the Firm represents any party in interest in this chapter 11 case in matters related to this chapter 11 case.

### Debtor's Retention of Kramer Levin

5.       The Debtor has filed the Application to retain Kramer Levin (subject to this Court's approval) as special corporate, SEC, and litigation counsel to the Debtor. Specifically, the Debtor seeks authorization to retain Kramer Levin to provide all legal services as requested by the Debtor with respect to the Debtor's general corporate and SEC matters which Kramer Levin has historically provided to the Debtor.

6.       Kramer Levin first served as corporate counsel to the Debtor as early as 2001. Kramer Levin has since served as counsel for the Debtor on a variety of matters including

2

corporate governance matters, intellectual property, litigation matters, contract matters, debt financing matters, SEC compliance matters, NASDAQ compliance matters, immigration matters, general corporate advice and employment advice.  As a result of its efforts over the past thirteen years, Kramer Levin is intimately familiar with the complex legal issues that have arisen and are likely to arise in connection with the Debtor's business.

7.      Kramer Levin's corporate department has extensive experience in a wide range of industries, and regularly handles most types of complex corporate and securities transactions.  Furthermore, Kramer Levin's wide range of practices, which includes significant expertise in the areas of bankruptcy and creditors' rights, real estate, intellectual property, employment, litigation and tax, will permit the firm to represent fully the Debtor's interests in an efficient and effective manner.

8.      In addition, the Debtor seeks to retain Kramer Levin with respect to the PharmAthene Action.  Kramer Levin has represented SIGA throughout the PharmAthene Action, and the Debtor has requested that Kramer Levin continue its representation of the Debtor in connection with any further proceedings with respect to the PharmAthene Action.

9.      Kramer Levin has provided the Debtor with immigration and employment services from time to time.  Currently, Kramer Levin is handling one immigration matter for the Debtor.  Given this historic relationship, should the Debtor require additional immigration or employment advice, Kramer Levin could be called upon to render such services.

**Kramer Levin's Disclosure Procedures**

10.     In preparing this Declaration, Kramer Levin used a set of procedures, developed by Kramer Levin to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, regarding the retention of professionals by a debtor under the Bankruptcy Code.  Pursuant to this protocol, Kramer Levin's personnel, under

3

my general supervision, undertook the following actions to identify the parties relevant to this

Declaration and the Application and to ascertain Kramer Levin's connections with such parties:

a.    Kramer Levin obtained from the Debtor and/or its representatives a conflicts checklist (the "**Retention Checklist**") with names of individuals and entities that may be parties in interest in this chapter 11 Case (the "**Potential Parties in Interest**").    A categorized summary of the conflicts checklist is provided on Exhibit "1" annexed hereto.

b.    Kramer Levin's conflicts department compared the Retention Checklist to the names that Kramer Levin has compiled into a master client database from its conflict check database (the "**Client Database**").  The Client Database is comprised of the names of the entities for which any attorney time charges have been billed and includes the name of each current or former client, the name of the parties who are or were related or adverse to such current or former client, and the names of the Kramer Levin personnel who are or were responsible for current or former matters for such client.  It is the policy of Kramer Levin that no new matter may be accepted or opened within Kramer Levin without completing and submitting to those charged with maintaining the conflict check system and adverse party index the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter and related and adverse parties.    Accordingly, the database is regularly updated for every new matter undertaken by Kramer Levin.    The scope of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a matter.

c.    Any matches between the Client Database and the Retention Checklist were identified, together with the names of the respective Kramer Levin personnel responsible for current or former matters for the identified entities.  Kramer Levin attorneys then reviewed these matches and deleted obvious name coincidences and individuals or entities that were adverse to Kramer Levin's clients in both this matter and the matters referenced on the list.  Those connections in which Kramer Levin had represented the client or an affiliate within the last two years were compiled for purposes of this Declaration.

d.    In addition, I caused the Retention Checklist to be circulated by electronic mail to all Kramer Levin attorneys to determine whether any attorney has any relationship with any such party, including any connections with the Office of the United States Trustee for

the Southern District of New York and any bankruptcy judges for the Southern District of New York.

11.    To the best of my knowledge, based on the review procedures described above, Kramer Levin does not have any "connection" to the Potential Parties in Interest in this chapter 11 case except as described below and as listed in **Exhibit "2"** annexed hereto, which are not, to my understanding, disqualifying or problematic under section 327(e) of the Bankruptcy Code.

12.    As a result of Kramer Levin's review of the Retention Checklist and the Client Database, the following connections warrant disclosure:

a.    Thomas E. Constance, a member and Co-Chair of Kramer Levin, is an independent member of the Board of Directors of the Debtor. Kramer Levin believes that Mr. Constance's service as a director of the Debtor has not and will not affect Kramer Levin's representation of the Debtor in this proceeding.  To the extent that an issue arises in connection with Mr. Constance that, in the view of Kramer Levin, could give rise to an actual or potential conflict, such issue will be disclosed to the Court by Kramer Levin, and to the extent necessary handled by the Debtor's other counsel.  Mr. Constance also serves on the board of directors of certain parties listed on Exhibit 2 annexed hereto:  (1) Barington Capital, L.P.; (2) M.D. Sass Foundation; and (3) St. Vincent's Services.

b.    American International Group, Inc. has been identified on the Retention Checklist as an insurance provider to the Debtor.  In matters wholly unrelated to the Debtor, Kramer Levin represents or formerly represented American International Group or certain of its affiliates (collectively, "**AIG**") in connection with certain corporate, litigation, real estate, tax, and insurance matters.  AIG Asset Management (U.S.) LLC also served as a member of the Official Committee of Unsecured Creditors in the bankruptcy proceeding of Residential Capital, LLC and Kramer Levin formerly represented that committee.  Kramer Levin believes that its representation of AIG has not and will not affect its representation of the Debtor in this proceeding.

c.    Citibank, N.A. and one of its related entities (collectively, "**Citigroup**") are identified on the Retention Checklist as a financial institution related to the Debtor.  In matters wholly unrelated to the Debtor, Kramer Levin represents Citigroup with

5

respect to various bankruptcy, corporate, litigation, tax, land use, intellectual property, and ERISA matters. Kramer Levin also utilizes the services of Citibank N.A. as its principal commercial bank. Kramer Levin believes that its representation of Citigroup has not and will not affect its representation of the Debtor in this proceeding.

d.    Chase Bank is identified on the Retention Checklist as a financial institution related to the Debtor. Kramer Levin has represented or currently represents the independent directors of certain funds that are managed or sponsored by JPMorgan. Kramer Levin also represents JPMorgan as an agent or participant in various bank groups or as a trust beneficiary. First Chicago Leasing Corp. (an affiliate of JPMorgan) served on the Official Committee of Unsecured Creditors of AES Eastern Energy, L.P. and Kramer Levin formerly represented that committee. Finally, JPMorgan previously served on the Official Committee of Unsecured Creditors of Capmark Financial Group, Inc. and Kramer Levin formerly represented that committee. Kramer Levin represented JPMorgan Chase Bank, N.A. as administrative agent for secured bank debt and as collateral agent for secured bank and bond debt in the wholly unrelated chapter 11 case of Dewey & LeBoeuf LLP. In addition, Kramer Levin has represented JPMorgan and its subsidiaries and affiliates, including Bear Stearns & Co. Inc. and Bear Stearns Asset Management, in corporate, intellectual property, and bankruptcy matters unrelated to the chapter 11 case. In addition, Kramer Levin has represented or currently represents the independent directors of certain funds that are managed or sponsored by JPMorgan. In connection with the engagement by the independent directors, Kramer Levin is adverse to JPMorgan. Kramer Levin believes that its representation of JPMorgan and its subsidiaries and affiliates has not affected and will not affect its representation of the Debtor in this chapter 11 case.

e.    As part of Kramer Levin's creditors' rights practice, Kramer Levin represents agent banks, bank groups, shareholder groups, bondholder groups, and creditors' committees in connection with restructuring, bankruptcy, and corporate matters. The Debtor has numerous creditors and other parties in interest. Kramer Levin may have represented, may currently or in the future represent, or be deemed adverse to, creditors or parties in interest in addition to those specifically disclosed herein in matters unrelated to this chapter 11 case. Kramer Levin believes that its representation of such creditors or other parties in such other matters has not and will not affect its representation of the Debtor in this proceeding.

WEIL:\95098234\10\74193.0003

       f.      As part of its practice, Kramer Levin routinely represents potential and actual buyers and sellers of distressed debt and securities. While one or more clients of the firm may now or later purchase secured or unsecured claims against the Debtor, Kramer Levin has not and will not represent any entity in connection with the purchase or sale of any debt or securities of the Debtor during Kramer Levin's representation of the Debtor herein.

       g.      In addition to its creditors' rights practice, Kramer Levin is a full service law firm with active real estate, intellectual property, corporate, tax, and litigation practices.  Kramer Levin appears in cases, proceedings and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of which now or may in the future represent claimants or parties in interest in this chapter 11 case.  Kramer Levin has not and will not represent any such entities in relation to the Debtor in this chapter 11 case nor have any relationship with any such attorneys, accountants, financial consultants and investment bankers which would be adverse to the Debtor or its estate.

13.     Each of the connections described above are unrelated to the matters upon which Kramer Levin is to be retained.

14.     Each of the entities and individuals described in this Declaration for whom Kramer Levin has performed services accounts for less than 1% of Kramer Levin's revenues for the year 2014, except for the fees collected from JPMorgan, which on a consolidated basis constitute 1.22% of the Firm's revenues in 2014 to date, and the fees collected from AIG, which on a consolidated basis constitute 1.04% of the Firm's revenues in 2014 to date.

15.     To the extent any employee of Kramer Levin has a relationship that, in the view of Kramer Levin, could give rise to an actual or potential conflict, an ethical screen will be put in place to ensure that such employee does not have access to information related to Kramer Levin's representation of the Debtor.

7

## **Compensation of Kramer Levin**

16.     Kramer Levin currently has a receivable in a de minimis amount that is owed for prepetition services.  In the one (1) year prior to the Commencement Date, Kramer Levin received payments aggregating approximately $1,310,306 in connection with its representation of the Debtor as general corporate counsel and litigation counsel.

17.     Kramer Levin intends to charge the Debtor for services rendered on an hourly basis in one-tenth hour (.1) increments, in accordance with its standard hourly rates in effect on the date services are rendered,[2] subject to a voluntary fifteen percent (15%) discount[3] (which discount would be in addition to any discretionary and voluntary write-off of time and expenses that would otherwise occur in connection with the review of monthly invoices). Kramer Levin's current customary U.S. hourly rates, subject to change from time to time, are $745 to $1,100 for members, counsel, and special counsel, $445 to $790 for associates, and $280 to $335 for paraprofessionals.   Kramer Levin's hourly billing rates are subject to periodic adjustments to reflect economic and other conditions.  If at any time Kramer Levin increases the rates[4] for its services in connection with its engagement, Kramer Levin will file a supplemental affidavit with the Court describing such increases and provide notice of such increases to the Company, the U.S. Trustee, and any official committee appointed in this chapter 11 case.

---

[2] Kramer Levin has agreed to "freeze" the billing rates that were in effect in 2013, through the end of 2014.  The 2013 billing rates were $710 to $1,050 for members and counsel, $425 to $775 for associates, and $270 to $320 for paraprofessionals.

[3] Prior to the Commencement Date, in recognition of SIGA's long-standing relationship with the Firm, Kramer Levin provided SIGA with a 15% discount of its standard billing rates.

[4] Each September, there is a step-up of associate class to reflect an increase in each associate's class seniority.  This annual step-up is not considered a "rate increase" as the billing rate among the applicable associate class does not change.

8

18.     Kramer Levin also intends to seek reimbursement for reasonable expenses incurred in connection with its representation of the Debtor in accordance with Kramer Levin's normal reimbursement policies, subject to any modifications to such policies that Kramer Levin may be required to make to comply with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)) ("**General Order M-447**"), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further orders of the Court (the "**Orders**"), both in connection with the Application and the interim and final fee applications to be filed by Kramer Levin in this chapter 11 case.  Moreover, Kramer Levin intends to make a reasonable effort to comply with the Office of the United States Trustee for the Southern District of New York's requests for information and additional disclosures as set forth in the Fee Guidelines.  Kramer Levin's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  Reimbursable expenses include, but are not limited to, travel costs, telecommunications, express or overnight mail, messenger service, photocopying costs, document processing, overtime meals, Lexis, Westlaw and other computer research-related expenses, court fees, transcript costs and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client.

9

19.     Kramer Levin intends to maintain detailed, contemporaneous time records and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-447 and any additional procedures that may be established by the Court in this chapter 11 case.  In addition, Kramer Levin has agreed to accept as compensation such sums as may be allowed by the Court.  Kramer Levin understands that interim and final fee awards are subject to approval by this Court.

20.     No promises have been received by Kramer Levin, or any partner, counsel, or associate of Kramer Levin, as to payment or compensation in connection with this chapter 11 case other than in accordance with the provisions of the Fee Guidelines.

21.     Kramer Levin has not shared or agreed to share any of its compensation from the Debtor with any other person, other than with partners, counsel, associates, or other employees of Kramer Levin as permitted by section 504 of the Bankruptcy Code.

22.     To the best of my knowledge, the proposed employment of Kramer Levin is not prohibited by or improper under Bankruptcy Rule 5002.

## STATEMENT REGARDING U.S. TRUSTEE FEE GUIDELINES

23.     As this Court is aware, the Executive Office of the United States Trustees (the "**EOUST**") recently adopted the new Fee Guidelines (or "**Appendix B Guidelines**").  By their terms, the Appendix B Guidelines "apply to the [U.S. Trustee's] review of applications for compensation filed by attorneys in larger chapter 11 cases," and are intended as an update to the original fee guidelines (the "**Appendix A Guidelines**") adopted by the EOUST in 1996. The Appendix A Guidelines have been a part of this Court's local procedures for years; however, the Appendix B Guidelines have not been adopted expressly by this Court.  In other chapter 11 cases

WEIL:\95098234\10\74193.0003

where it has been retained, Kramer Levin has filed its fee applications in compliance with the Appendix A Guidelines.

24.    Among other things, the Appendix B Guidelines ask attorneys in larger chapter 11 cases to provide additional documentation and make significant new disclosures in connection with their retention under section 327 and compensation under section 330 of the Bankruptcy Code.  As the Appendix B Guidelines themselves acknowledge, "the Guidelines do not supersede local rules, court orders, or other controlling authority," and to date, the Appendix B Guidelines have not been adopted by this Court.

25.    The Debtor and Kramer Levin intend to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Appendix B Guidelines both in connection with this Application and the interim and final fee applications to be filed by Kramer Levin in the course of its Engagement.

## ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES

26.    The following is provided in response to the request for additional information set forth in Paragraph D.1 of the Appendix B Guidelines.

> **Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?
>
> **Response**:    Kramer Levin has agreed to provide a voluntary fifteen percent (15%) discount (which discount would be in addition to any discretionary and voluntary write-off of time and expenses that would otherwise occur in connection with the review of monthly invoices).  In addition, Kramer Levin has agreed to "freeze" the billing rates that were in effect in 2013, through the end of 2014.
>
> **Question**:    Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?
>
> **Response**:    No.
>
> **Question**:    If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement,

including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Response**:    Prior to the Commencement Date, in recognition of its long-standing relationship with SIGA, Kramer Levin provided SIGA with a voluntary fifteen percent (15%) discount of its standard billing rates.  In addition, Kramer Levin agreed to "freeze" the billing rates that were in effect in 2013, through the end of 2014.  During this chapter 11 case, Kramer Levin has agreed to continue to provide the voluntary fifteen percent (15%) discount and the aforementioned billing rates (which would be in addition to any discretionary and voluntary write-off of time and expenses that would otherwise occur in connection with the review of monthly invoices).

**Question**:    Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response**:    The Debtor has approved a prospective staffing plan.  Kramer Levin will prepare a budget for the balance of the proposed interim fee application period (November 1, 2014 to January 31, 2015).

27.    To the extent that Kramer Levin discovers any facts bearing on matters described herein, Kramer Levin will supplement the information contained in this Declaration.

28.    In conclusion, insofar as I have been able to ascertain and subject to the disclosures herein contained, neither Kramer Levin nor any member, counsel or associate thereof, represents any interest adverse to the Debtor herein, or its estate, in the matters upon which Kramer Levin is to be engaged.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 17th day of October 2014

/s/ James A. Grayer
James A. Grayer

12

**EXHIBIT 1 TO THE DECLARATION**

**RETENTION CHECKLIST**

- Debtor
- Debtor's Trade Names
- Debtor's Subsidiary
- Accounts Payable
- Top 20 Unsecured Creditors
- Top 5 Secured Creditors
- Current Members of Board of Directors
- Former Members of Board of Directors (past 3 years)
- Current Officers
- Former Officers (past 3 years)
- Affiliations of Current and Former Members of Board of Directors
- Affiliations of Current and Former Officers
- Current Significant Shareholders (5% or more)
- Unions
- Financial Institutions
- Landlords
- Major Competitors
- Bankruptcy Judges for the United States Bankruptcy Court for the S.D.N.Y.
- United States Trustees for the S.D.N.Y.
- Litigation Parties
- Insurance Providers
- Taxing Authorities
- Utility Companies
- Proposed Debtor's Professionals and Ordinary Course Professionals
- Vendors
- Underwriting Investment Bankers for Debtor's Securities
- Regulatory Agencies
- Counsel and Professionals to Certain Ad Hoc Groups of Lenders
- Members of Ad Hoc or Unofficial Creditors' Committee and Professionals
- Noteholders
- Indenture Trustees
- Significant Contract Counterparties
- Joint Operating Agreement Counterparties
- Debtor's Significant Equity Interests (5% or more)

WEIL:\95098234\10\74193.0003

**EXHIBIT 2 TO THE DECLARATION**

**PARTIES IN INTEREST THAT KRAMER LEVIN NAFTALIS & FRANKEL LLP
CURRENTLY REPRESENTS AND/OR HAS FORMERLY REPRESENTED[1]**

| Interested Party | Relationship to Debtor | Description of Relationship |
|---|---|---|
| Ace American Insurance Company | Insurance Provider | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Adams & Adams | Creditor | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Allied World Assurance Company (U.S.) Inc. | Insurance Provider | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Amazon.com | Creditor | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| American International Group, Inc. (AIG) | Insurance Provider | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| AT&T | Utilities | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Barington Capital, L.P. | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case; Thomas E. Constance, a member and Co-Chair of Kramer Levin, is a member of the board of directors of this entity. |

---

[1]    Kramer Levin believes that its representation of the parties listed herein has not and does not affect its representation of the Debtor.

| Interested Party | Relationship to Debtor | Description of Relationship |
|---|---|---|
| Bond Street Holdings, Inc. | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case |
| Chartis Insurance, Inc. | Insurance Provider | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Chase | Financial Institutions (Banks) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Citibank | Financial Institutions (Banks) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Comcast | Utilities | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Cooley LLP | Unsecured Creditor; Proposed Professional of the Debtor | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Columbia University | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Department of Health Evidence & Policy at the Mount Sinai School of Medicine | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Drinker Biddle | Vendor | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Freeport-McMoRan Inc. | Entity Affiliated with Former Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| GE Capital c/o Ricoh USA Program ("General Electric") | Utilities | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |

2

| Interested Party | Relationship to Debtor | Description of Relationship |
|---|---|---|
| General Electric Capital Corporation | Secured Lender | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Google | Vendor | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Hope & Heroes Fund | Entity Affiliated with Former Director(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Jet Capital Investors, LP | Significant Stockholder | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| MacAndrews & Forbes Holding Inc. | Significant Stockholder; Entity Affiliated with Current Director(s)/Officer(s); Vendor; Landlord | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Manhattan Theatre Club | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| M.D. Sass Foundation | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case; Thomas E. Constance, a member and Co-Chair of Kramer Levin, is a member of the board of directors of this entity. |
| Mount Sinai School of Medicine | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| REV Holdings LLC | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| Scientific Games Corporation | Entity Affiliated with Former Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |

3

| Interested Party | Relationship to Debtor | Description of Relationship |
|---|---|---|
| Steven Fasman | Vendor; Proposed Professional of the Debtor | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |
| St. Vincent's Services | Entity Affiliated with Current Director(s)/Officer(s) | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case; Thomas E. Constance, a member and Co-Chair of Kramer Levin, is a member of the board of directors of this entity. |
| Time Warner Cable | Utilities | Kramer Levin represents or has represented the interested party or related affiliate(s) in matters unrelated to the Debtor's chapter 11 case. |

4

## **EXHIBIT B**

**HAYNES DECLARATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
SIGA TECHNOLOGIES, INC.,                  :        14-12623 (SHL)
                                          :
                        Debtor.           :
                                          :
----------------------------------------------------------------x

DECLARATION OF WILLIAM J. HAYNES II IN SUPPORT
OF APPLICATION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO
11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014(a) AUTHORIZING
EMPLOYMENT AND RETENTION OF KRAMER LEVIN NAFTALIS &
FRANKEL LLP AS SPECIAL CORPORATE, SEC, AND LITIGATION
COUNSEL FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

William J. Haynes II makes this declaration under 28 U.S.C. § 1746:

1.      I am the Executive Vice President and General Counsel of SIGA

Technologies, Inc. ("**SIGA**"), the debtor and debtor in possession in the above-captioned chapter

11 case (the "**Debtor**").  In my current role at SIGA, I am responsible for supervising outside

counsel and monitoring and controlling legal costs.  I was directly involved in the decision to

retain Kramer Levin Naftalis & Frankel LLP ("**Kramer Levin**") to serve as the Debtor's special

corporate, SEC, and litigation counsel in this chapter 11 case and actively participated in

negotiating the terms of Kramer Levin's employment on behalf of the Debtor.

2.      I submit this Declaration in support of SIGA's application, dated October

17, 2014 (the "**Application**"),[1] for authority to employ and retain Kramer Levin as its special

corporate, SEC, and litigation counsel in this chapter 11 case, *nunc pro tunc* to September 16,

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Application.

2014 (the "**Commencement Date**"), filed concurrently herewith.  Unless otherwise stated in this

Declaration, I have personal knowledge of the facts set forth herein.

3.    I understand that this Declaration is provided pursuant to Paragraph D.2 of

the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11

Cases, effective November 1, 2013 (the "**Fee Guidelines**").  I am informed by counsel that the

Fee Guidelines request that any application for employment of an attorney under 11 U.S.C. §§

327 or 1103 in certain larger cases be accompanied by a verified statement from the client that

addresses the following:

a.    The identity and position of the person making the verification. The person ordinarily should be the general counsel of the debtor or another officer responsible for supervising outside counsel and monitoring and controlling legal costs.

b.    The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

c.    The number of firms the client interviewed.

d.    If the billing rates are not comparable to the applicant's billing rates for other non-bankruptcy engagements and to the billing rates of other comparably skilled professionals, the circumstances warranting the retention of that firm.

e.    The procedures the client has established to supervise the applicant's fees and expenses and to manage costs.  If the procedures for the budgeting, review and approval of fees and expenses differ from those the client regularly employs in nonbankruptcy cases to supervise outside counsel, explain how and why.  In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

WEIL:\95098234\10\74193.0003

4.      I have been further informed by counsel that the Fee Guidelines have not been adopted by the Court but have been asked to submit this declaration by Kramer Levin as an accommodation.

### Steps Taken to Ensure Comparable Terms of Engagement

5.      The Debtor has employed Kramer Levin as corporate counsel since 2001. Historically, Kramer Levin provided SIGA with a voluntary fifteen percent (15%) discount of its standard billing rates.  In connection with this chapter 11 case, Kramer Levin has agreed to continue to provide the Debtor with a fifteen percent (15%) discount to its standard hourly rates, which discount would be in addition to discretionary and voluntary write-offs of time that would otherwise occur in connection with the review of Kramer Levin's monthly invoices.[2]  Kramer Levin has advised me that it will inform the Debtor in advance of any adjustment to its existing rate structure.

6.      More generally, Kramer Levin has confirmed to me that, while Kramer Levin's billing rates vary from attorney to attorney based on such factors as the individual attorney's rank (*e.g.*, partner, counsel, associate), years of experience and the demand for services in the attorney's particular area of expertise, their billing rates do not vary as a function of whether the services performed relate to a bankruptcy engagement or a non-bankruptcy engagement.

7.      I have also been informed by Kramer Levin that its standard hourly rates are set annually by reference to various annual market surveys, rates at comparable firms and market data.  Based on this and other sources, including reviews of contemporaneous time

---

[2] Kramer Levin has also agreed to "freeze" the billing rates that were in effect in 2013, through the end of 2014.

WEIL:\95098234\10\74193.0003

records and fee applications filed in other cases, Kramer Levin endeavors to set the hourly rates for its attorneys and paraprofessionals at levels equal to (or even below) those of its principal competitor firms.

## Number of Firms Interviewed

8.    Kramer Levin has acted as SIGA's general corporate counsel since 2001. Over the years, Kramer Levin became intimately familiar with SIGA's general business operations because it has provided corporate, SEC, litigation, employment and immigration services to SIGA.    No other law firm was interviewed before the Debtor decided to engage Kramer Levin as special corporate, SEC, and litigation counsel.    Based on the Debtor's prior experience with Kramer Levin, as well as Kramer Levin's reputation in the corporate and litigation field, the Debtor concluded that it was not necessary to interview other law firms.

## Procedures Established to Supervise Fees and Expenses and Manage Costs

9.    I understand that Kramer Levin's fees and expenses will be subject to periodic review on a monthly, interim, and final basis during the pendency of this chapter 11 case by the Court, the United States Trustee, the Debtor and any official committee.

10.    As general counsel of the Debtor, in the normal course of business, I supervise and manage legal fees and expenses incurred by the Debtor's outside counsel.    I must review all outside counsel invoices and authorize all legal fees and expenses prior to the payment of such fees to outside counsel.    In doing so, I assure that all requested fees and expenses are reasonable and correspond with necessary or beneficial services rendered on behalf of the Debtor and its estate.    The aforementioned review and approval process does not differ when the Debtor employs outside counsel for bankruptcy cases.    During this chapter 11 case, I will continue to monitor Kramer Levin's invoices to ensure that the fees and expenses requested by Kramer

5

Levin are reasonable in nature and reflect necessary or beneficial services rendered on behalf of the Debtor and its estate.  Moreover, Kramer Levin informed me that it will provide the Debtor with the opportunity to review all invoices and request adjustments to such invoices to the extent that the Debtor determines that such adjustments are necessary and appropriate, which requests will be carefully considered by Kramer Levin.  I understand that the Debtor, if necessary, can object to any disputed fee statement.  I further understand that Kramer Levin reserves all rights to contest any objection by the Debtor and the Debtor can seek to retain conflict counsel to prosecute any fee objection to the extent the dispute cannot be resolved amicably by the parties.

11.    Additionally, on behalf of the Debtor, I have reviewed and approved a prospective staffing plan for the duration of the case.  I will continue to review the invoices that the Debtor submits and, together with Kramer Levin, amend the staffing plan periodically, as necessary.

## Other Matters

12.    I understand that Kramer Levin's hourly rates are subject to periodic adjustments.  Kramer Levin has advised me that they will inform the Debtor in advance of any such adjustments to their existing rate structure.  In that event, I have been specifically advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "periodic, incremental increases in a lawyer's regular hourly billing rates are generally permissible if such practice is communicated clearly to and accepted by the client at the commencement of the client-lawyer relationship and any periodic increases are reasonable under the circumstances."  I have also been specifically advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer continue the representation."  To the extent Kramer Levin seeks to make any such adjustment to its rate structure, the Debtor

6

expressly reserves the right to reject any such modification to the extent the Debtor deems it unreasonable.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 17th day of October 2014

/s/ William J. Haynes II
William J. Haynes II
Executive Vice President and General Counsel

7

**<u>EXHIBIT C</u>**

**PROPOSED ORDER**

WEIL:\95098234\10\74193.0003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
SIGA TECHNOLOGIES, INC.,                :        14-12623 (SHL)
                                        :
                    Debtor.             :
                                        :
------------------------------------------------------------x
```

ORDER PURSUANT TO 11 U.S.C. § 327(e) AND
FED. R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT
AND RETENTION OF KRAMER LEVIN NAFTALIS & FRANKEL
LLP AS SPECIAL CORPORATE, SEC, AND LITIGATION COUNSEL
FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

Upon the Application, dated October 17, 2014 (the "**Application**"),[1] of SIGA

Technologies, Inc. (the "**Debtor**"), pursuant to section 327(e) of title 11, United States Code (the

"**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), for entry of an order authorizing the employment and retention of Kramer

Levin Naftalis & Frankel LLP ("**Kramer Levin**") as special corporate, SEC, and litigation

counsel for the Debtor, *nunc pro tunc* to September 16, 2014 (the "**Commencement Date**"), all

as more fully described in the Application; and upon the Declaration of James A. Grayer,

annexed to the Application as **Exhibit "A"** (the "**Grayer Declaration**"); and the Court being

satisfied, based on the representations made in the Application and the Grayer Declaration, that

Kramer Levin represents no interest adverse to the Debtor's estate with respect to the matters

upon which it is to be employed; and the Court having jurisdiction to consider the Application

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtor, its estate, creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Debtor is authorized to employ and retain Kramer Levin as special corporate, SEC, and litigation counsel in this chapter 11 case, *nunc pro tunc* to the Commencement Date; and it is further

ORDERED that Kramer Levin is authorized to represent and advise the Debtor on all matters relating to the Debtor's general corporate, SEC, and litigation matters, as set forth in the Application; and it is further

ORDERED that Kramer Levin shall be compensated in accordance with, and will file, interim and final fee applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any further order of the Court; and it is further

2

ORDERED that Kramer Levin shall be reimbursed for reasonable and necessary expenses as provided by the Fee Guidelines; and it is further

ORDERED that Kramer Levin shall provide ten (10) business days' notice to the Debtor, the U.S. Trustee, and any statutory committee appointed in this chapter 11 case in connection with any increase of the hourly rates listed in the Grayer Declaration, which notice must be filed with the Court.  The U.S. Trustee retains all rights to object to, and the Court retains the right to review, any such rate increase on all grounds including the reasonableness standard provided for in section 330 of the Bankruptcy Code; and it is further

ORDERED that Kramer Levin shall use its best efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this chapter 11 case; and it is further

ORDERED that to the extent the Application or the Grayer Declaration is inconsistent with this Order, the terms of this Order shall govern; and it is further

ORDERED that Kramer Levin shall not withdraw as the Debtor's counsel prior to the effective date of any chapter 11 plan confirmed in this chapter 11 case without prior approval of this Court in accordance with Local Rule 2090-1(e); and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

3

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:  November __, 2014
        New York, New York

_____
United States Bankruptcy Judge