HEARING DATE AND TIME: November 5, 2014 at 11:00 a.m. (Eastern Time)
OBJECTION DEADLINE: October 29, 2014 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
SIGA TECHNOLOGIES, INC.,                  :    14-12623 (SHL)
                                          :
                        Debtor.           :
                                          :
----------------------------------------------------------------x
```

## NOTICE OF HEARING ON APPLICATION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS RESTRUCTURING ADVISORS FOR DEBTOR *NUNC PRO TUNC* TO OCTOBER 2, 2014

PLEASE TAKE NOTICE that a hearing on the annexed Application, dated

October 17, 2014 (the "**Application**"), of SIGA Technologies, Inc., as debtor and debtor in

possession (the "**Debtor**"), for an order pursuant to section 327(a) of title 11, United States Code

(the "**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

authorizing the Debtor to employ and retain AlixPartners, LLP as restructuring advisors for the

Debtor, *nunc pro tunc* to October 2, 2014, all as more fully set forth in the Application, will be

held before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004 (the "**Bankruptcy Court**"), on **November 5, 2014 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue, Suite 1700, New York, New York  10065 (Attn:  William J. Haynes II, Esq.); (iii) the attorneys for the statutory creditors' committee, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn:  Martin J. Bienenstock, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn:  Richard C. Morrissey, Esq.); and (v) the proposed restructuring advisors, AlixPartners, LLP, 300 N. LaSalle Street, Suite 1900, Chicago, IL 60654 (Attn: Carrianne Basler, so as to be received no later than **October 29**, **2014, at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

WEIL:\95119800\10\74193.0003

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Application, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
        October 17, 2014

                                    /s/ Stephen Karotkin
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Garrett A. Fail

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtor
                                    and Debtor in Possession

**HEARING DATE AND TIME: November 5, 2014 at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: October 29, 2014 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                              :
In re                                         :        **Chapter 11 Case No.**
                                              :
**SIGA TECHNOLOGIES, INC.,**                   :        **14-12623 (SHL)**
                                              :
                              **Debtor.**      :
                                              :
---------------------------------------------------------------x

**APPLICATION OF DEBTOR FOR ENTRY OF ORDER**
**PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a)**
**AUTHORIZING EMPLOYMENT AND RETENTION OF**
**ALIXPARTNERS, LLP AS RESTRUCTURING ADVISORS**
**FOR DEBTOR *NUNC PRO TUNC* TO OCTOBER 2, 2014**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

            SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**"), respectfully represents:

<u>**Background**</u>

            1.      On September 16, 2014 (the "**Commencement Date**"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and manage

its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in this chapter 11 case.

2.    Information regarding the Debtor's business, capital structure, and the

circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit

of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2, sworn to on September 16, 2014

(ECF No. 3).

### Jurisdiction

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.    By this Application, the Debtor seeks authority, pursuant to section 327(a) of the

Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), to employ and retain AlixPartners, LLP ("**AlixPartners**") as

restructuring advisors for the Debtor, *nunc pro tunc* to October 2, 2014, in accordance with the

terms of the proposed order, annexed hereto as **Exhibit "C"** (the "**Proposed Order**") and the

engagement letter dated October 2, 2014 between AlixPartners and the Debtor (the

"**Engagement Letter**"), annexed hereto as **Exhibit "B."**  In support of this Application, the

Debtor submits the Declaration of Carrianne J.M. Basler, a member of AlixPartners (the "**Basler**

**Declaration**"), which is annexed hereto as **Exhibit "A."**

2

## AlixPartners' Qualifications

5.        In light of the nature of this reorganization, the Debtor requires qualified and experienced restructuring advisors with the resources, capabilities, and experience of AlixPartners to assist it in pursuing the transaction(s) that are crucial to the success of the Debtor's case.  Restructuring advisors, such as AlixPartners, perform critical services that complement the services provided by the other professionals involved in this chapter 11 case.

6.        The Debtor is familiar with the professional standing and reputation of AlixPartners.  The Debtor understands that AlixPartners has a wealth of experience in providing restructuring advisory services and enjoys an excellent reputation for services it has rendered in chapter 11 cases of this nature on behalf of debtors and creditors throughout the United States. On the basis of the Debtor's experience and discussions with AlixPartners, the Debtor understands the following.

7.        AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases.  Since its inception in 1981, AlixPartners, LLP, its predecessor entities, and its affiliate, AP Services, LLC, have provided restructuring or crisis management services in numerous cases.  *See, e.g.*, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 10, 2012); *In re Eastman Kodak Company*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 19, 2012); *In re Nebraska Book Company, Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); *In re American Safety Razor Co., LLC*, Case No. 10-12351 (MFW) (Bankr. D. Del. Aug. 24, 2010); *In re Neff Corp.,* Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. July 16, 2010); *In re U.S. Concrete, Inc.*, Case No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010); *In re The Reader's Digest*

3

*Association Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Oct. 6, 2009); *In re Gen. Growth Prop., Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 13, 2009); *In re Charter Communications, Inc.*, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); *In re Metro Fuel Oil Corp.*, Case No. 12-46913 through 12-46922 (ESS) (Bankr. E.D.N.Y. Sept. 27, 2012); *In re ACG Holdings, Inc.*, Case No. 08-11467 (CSS) (Bankr. D. Del. Aug. 11, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008).

8.      The Debtor has selected AlixPartners as its restructuring advisors because of AlixPartners' experience and reputation for providing restructuring advisory services in chapter 11 cases.

## Scope of Services

9.      The terms and conditions of the Engagement Letter, which governs the relationship between the Debtor and AlixPartners, were negotiated between the Debtor and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Under the Engagement Letter, AlixPartners has provided, and has agreed to provide, the services set forth in the Engagement Letter, as summarized below:

- Assist with the preparation of the statement of financial affairs, schedules, and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.
- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

## Professional Compensation and Expense Reimbursement

10.      AlixPartners' decision to accept this engagement to advise and assist the Debtor is conditioned upon its ability to be retained in accordance with its customary terms and conditions

4

of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it

incurs in accordance with its customary billing practices.

11.     The Debtor is advised that AlixPartners intends to apply for compensation for

professional services rendered and reimbursement of expenses incurred in connection with this

chapter 11 case, subject to this Court's approval, in accordance with the proposed terms of

compensation and reimbursement set forth in the Engagement Letter (all such proposed terms,

the "**Fee and Expense Structure**"), to which the Debtor respectfully refers this Court for a full

recitation, and in compliance with General Order M-412 (Order Establishing Procedures for

Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21,

2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated

January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to

28 C.F.R. § 58) (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any further orders of the Court (the

"**Orders**"), both in connection with the Application and the interim and final fee applications to

be filed by AlixPartners in this chapter 11 case.  Moreover, the Debtor is advised that

AlixPartners intends to make a reasonable effort to comply with the Office of the United States

Trustee for the Southern District of New York's requests for information and additional

disclosures as set forth in the Fee Guidelines.

5

12.     The current standard hourly rates, subject to periodic adjustments, charged by AlixPartners in respect of the professionals anticipated to be assigned to this chapter 11 case are as follows:

| | |
|---|---|
| Managing Directors | $ 875 - 1,010 |
| Directors | $ 665 - 815 |
| Vice Presidents | $ 490 - 590 |
| Associates | $ 335 - 435 |
| Analysts | $ 290 - 320 |
| Paraprofessionals | $ 220 - 240 |

The Debtor is advised that AlixPartners revises its rates annually on January 1.

13.     In addition to compensation for professional services rendered by AlixPartners personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with this chapter 11 case, including transportation costs, lodging, and meals.

14.     To the extent AlixPartners uses employees of its U.S. subsidiary affiliates during this chapter 11 case, AlixPartners will charge standard U.S. hourly rates.  To the extent the engagement requires services of its international divisions or personnel from specialized practices, the standard hourly rates applicable in the international divisions or specialized practices will apply.

15.     AlixPartners will maintain records (in 1/10th of an hour increments) in support of any fees, costs, and expenses incurred in connection with services rendered in this chapter 11 case.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtor.

16.     AlixPartners will not request a success fee in this chapter 11 case.

6

17.    The Debtor is advised that the Fee and Expense Structure is consistent with, and typical of, compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances.  The Debtor believes that the Fee and Expense Structure is reasonable, market-based, and designed to fairly compensate AlixPartners for its work and to cover fixed and routine overhead expenses.

## Indemnification Provisions

18.    The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtor to indemnify AlixPartners and its affiliates, partners, directors, officers, owners, employees, and agents from and against all claims, liabilities, losses, expenses, and actual damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, other than such claims, liabilities, losses, expenses, or damages finally determined or agreed by the parties to be directly resulting from the gross negligence or bad faith of AlixPartners. Notwithstanding the foregoing, and subject to this Court's approval, the Debtor and AlixPartners have agreed to limit the indemnity obligations during the pendency of this chapter 11 case as follows:

a.    AlixPartners shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services other than those described in the Engagement Letter, unless such services and indemnification therefor are approved by the Bankruptcy Court;

b.    The Debtor shall have no obligation to indemnify AlixPartners, or provide contribution or reimbursement to AlixPartners, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from AlixPartners' bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtor alleges the breach of AlixPartners' contractual obligations unless the Court determines that indemnification,

7

contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which AlixPartners should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Proposed Order;

c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this chapter 11 case, AlixPartners believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including without limitation, the advancement of defense costs, AlixPartners must file an application therefor in this Court, and the Debtor may not pay any such amounts to AlixPartners before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by AlixPartners for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify AlixPartners.  All parties in interest shall retain the right to object to any demand by AlixPartners for indemnification, contribution, or reimbursement; and

d.    Any limitation of liability or limitation on any amounts to be contributed by the parties to the Engagement Letter under the terms of the Engagement Letter shall be eliminated.

19.    The Debtor and AlixPartners believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for AlixPartners and comparable firms providing restructuring advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this District and others.

20.    The terms and conditions of the indemnification provisions were negotiated by the Debtor and AlixPartners at arm's length and in good faith.  The provisions contained in the

8

Engagement Letter, as proposed to be modified and viewed in conjunction with the other terms

of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtor, its

estate, and creditors in light of the fact that the Debtor requires AlixPartners' services to

successfully reorganize.  The Debtor requests that the Court approve the indemnification

provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order

(setting forth the above limitations).

### No Duplication of Services

21.     The Debtor intends the services of AlixPartners to complement the services of any

other professional retained in this chapter 11 case.  The services that AlixPartners will provide to

the Debtor will be appropriately directed by the Debtor so as to avoid duplicative efforts among

the other professionals retained in this chapter 11 case.  AlixPartners understands that the Debtor

has retained and may retain additional professionals during the term of the engagement and

agrees to work cooperatively with other professionals and the Debtor to integrate any respective

work conducted by the professionals on behalf of the Debtor.

### AlixPartners' Disinterestedness

22.     AlixPartners reviewed its electronic database and, to the best of its knowledge and

except to the extent disclosed in the Basler Declaration, AlixPartners (a) is a "disinterested

person" within the meaning of section 101(14) of the Bankruptcy Code as required by section

327 of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtor's

estate, and (c) has no connection to the Debtor, its creditors, or other parties in interest in this

chapter 11 case.

9

23.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, AlixPartners will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Nunc Pro Tunc Relief is Appropriate

24.     Pursuant to the Debtor's request, AlixPartners has acted as the restructuring advisor since October 2, 2014.  AlixPartners began to perform services on October 2, 2014 with assurances that the Debtor would seek approval of its employment and retention effective *nunc pro tunc* to October 2, 2014.  The Debtor believes that no party in interest will be prejudiced by granting the *nunc pro tunc* employment of AlixPartners, because AlixPartners has provided, and continues to provide, valuable services to the Debtor's estate.

### Notice

25.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, (iii) the attorneys for the statutory committee of unsecured creditors appointed in this chapter 11 case, and (iv) all entities that requested notice in this chapter 11 case under Fed. R. Bankr. P. 2002.  The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

10

WHEREFORE the Debtor respectfully requests entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
          October 17, 2014


                              SIGA Technologies, Inc.



                              /s/ Daniel J. Luckshire
                              NAME:        Daniel J. Luckshire
                              TITLE:       Executive Vice President and Chief
                                           Financial Officer

11

## **EXHIBIT A**

**Basler Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **SIGA TECHNOLOGIES, INC.,** | : | **14-12623 (SHL)** |
| | : | |
| Debtor. | : | |
| | : | |

----------------------------------------------------------------x

**DECLARATION OF CARRIANNE J.M. BASLER**
**IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF**
**ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a)**
**AUTHORIZING EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS**
**RESTRUCTURING ADVISORS FOR DEBTOR *NUNC PRO TUNC* TO OCTOBER 2, 2014**

I, Carrianne J.M. Basler, make this Declaration pursuant to 28 U.S.C. § 1746, and state:

1.      I am a Managing Director of AlixPartners, LLP ("**AlixPartners**"), a consulting and business advisory firm that maintains an office at 2000 Town Center, Suite 2400, Southfield, Michigan 48075.  I submit this Declaration in connection with the Application, dated October 17, 2014 (the "**Application**"),[1] of SIGA Technologies, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), for entry of an order authorizing and approving the appointment of AlixPartners as restructuring advisors, *nunc pro tunc* to October 2, 2014, pursuant to section 327 of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the terms and conditions set forth in the Engagement Letter, annexed as **Exhibit "B"** to the Application (the "**Engagement Letter**").

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

2.       Further, I submit this Declaration as evidence of the qualifications of AlixPartners to serve as restructuring advisors to the Debtor under section 327(a) of chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), and to make certain disclosures required under sections 329 and 504 of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 2016(b).

3.       Unless otherwise stated in this Declaration, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.  To the extent any information disclosed herein requires amendment or modification upon AlixPartners completion of further review, or as additional party in interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

4.       Neither I, AlixPartners, nor any employee of AlixPartners represents any entity other than the Debtor in connection with this chapter 11 case.  In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, AlixPartners, nor any employee of AlixPartners represents any party in interest in this chapter 11 case in matters related to this chapter 11 case.

## AlixPartners' Qualifications

5.       AlixPartners provides restructuring advisory services to debtors in chapter 11 cases and out-of-court restructurings.  AlixPartners is an internationally recognized restructuring and turnaround firm, has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

2

6.      AlixPartners professionals have provided strategic advice to debtors, creditors,

bondholders, investors and other entities in numerous chapter 11 cases.  Since its inception in

1981, AlixPartners, its predecessor entities, and its affiliate, AP Services, LLC, have provided

restructuring or crisis management services in numerous large cases.  *See*, *e.g.*, *In re Residential

Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 10, 2012); *In re Eastman Kodak

Company*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 19, 2012); *In re Nebraska Book

Company, Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); *In re American Safety

Razor Co.*, LLC, Case No. 10-12351 (MFW) (Bankr. D. Del. Aug. 24, 2010); *In re Neff Corp.*,

Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. July 16, 2010); *In re U.S. Concrete, Inc.*, Case No.

10-11407 (PJW) (Bankr. D. Del. May 21, 2010); *In re The Reader's Digest Association Inc.*,

Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Oct. 6, 2009); *In re Gen. Growth Prop., Inc.*, Case

No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 13, 2009); *In re Charter Communications, Inc.*,

Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); *In re Metro Fuel Oil Corp.*, Case

No. 12-46913 through 12-46922 (ESS) (Bankr. E.D.N.Y. Sept. 27, 2012); *In re ACG Holdings,

Inc.*, Case No. 08-11467 (CSS) (Bankr. D. Del. Aug. 11, 2008); *In re Tropicana Entm't, LLC*,

Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008).

7.      AlixPartners has experience, expertise, and specific relevant knowledge regarding

the Debtor that will assist it in providing effective and efficient services in this chapter 11 case.

8.      If the Application is approved, AlixPartners personnel, all with substantial

expertise in the areas discussed above, will continue to provide services to the Debtor.  Such

personnel will work closely with the Debtor's management and other professionals throughout

the reorganization process.  By virtue of the expertise of its restructuring personnel, AlixPartners

3

is well qualified to provide services to and represent the Debtor's interests in this chapter 11 case.

## Services to Be Rendered

9.      It is expected that AlixPartners will assist the Debtor in matters that include, but are not limited to, the following:[2]

- Assist with the preparation of the statement of financial affairs, schedules, and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.
- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

10.     AlixPartners will carry out unique functions and will use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid unnecessary duplication of effort or cost.

## Professional Compensation

11.     According to AlixPartners' books and records, during the 90-days period prior to the Petition Date, AlixPartners did not receive any payments from the Debtor.  AlixPartners did not seek a retainer from Debtor.

12.     Upon the entry of an order approving the relief sought herein, the Debtor will not owe AlixPartners any sums for prepetition services.  To the extent AlixPartners incurred any unbilled fees or reimbursable expenses that relate to the prepetition period, AlixPartners has

---

[2]  The summaries of terms contained in the Engagement Letter are provided for convenience.  The terms set forth in the Engagement Letter control in all respects.

4

agreed not to seek payment of these amounts and waives any claim against the Debtor for such

amounts.  Accordingly, the Debtor does not owe AlixPartners any sums for prepetition services.

13.    Pursuant to the Fee and Expense Structure set forth in the Engagement Letter and

summarized below, and subject to this Court's approval, AlixPartners intends to apply for

compensation for services provided and reimbursement of actual and necessary costs and

expenses incurred in connection with all services performed on behalf of the debtor in this

chapter 11 case in accordance with General Order M-412 (Order Establishing Procedures for

Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21,

2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated

January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to

28 C.F.R. § 58) (collectively, the "**Fee Guidelines**"), sections 330 and 331 of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any further orders of the Court (the

"**Orders**"), both in connection with the Application and the interim and final fee applications to

be filed by AlixPartners in this chapter 11 case.  Moreover, AlixPartners intends to make a

reasonable effort to comply with the Office of the United States Trustee for the Southern District

of New York's requests for information and additional disclosures as set forth in the Fee

Guidelines.

14.    In consideration of the services to be provided by AlixPartners, the Debtor has, in

addition to the indemnification provision described below, agreed to the Fee and Expense

Structure set forth in the Engagement Letter, as summarized below:

5

<u>Fees</u>:  AlixPartners will be paid by the Debtor for the services of AlixPartners' professionals at their customary hourly billing rates, which currently are:

| | |
|---|---|
| Managing Directors | $ 875 - 1,010 |
| Directors | $ 665 - 815 |
| Vice Presidents | $ 490 - 590 |
| Associates | $ 335 - 435 |
| Analysts | $ 290 - 320 |
| Paraprofessionals | $ 220 - 240 |

AlixPartners revises its rates annually on January 1.

<u>Expense Reimbursement</u>:  The Debtor will reimburse AlixPartners for all reasonable out-of-pocket expenses.

15.    To the extent the engagement requires services of its international divisions or personnel from specialized practices, the standard hourly rates applicable in the international divisions or specialized practices will apply.

16.    The Fee and Expense Structure is consistent with AlixPartners' normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with this chapter 11 case.  The Engagement Letter was negotiated at arm's length and in good faith, and AlixPartners believes the Fee and Expense Structure is both reasonable and consistent with the market for such services.

17.    In light of the foregoing, and given the numerous issues that it may be required to address in the performance of its services, AlixPartners believes that the Fee and Expense Structure is fair, reasonable, and market-based under the standards set forth in section 330 of the Bankruptcy Code.

6

## Indemnification Provisions

18.     The Debtor has agreed to indemnify, hold harmless and defend the AlixPartners Parties (as defined in the Engagement Letter) from and against all claims, liabilities, losses, expenses, and damages arising out of or in connection with AlixPartners' retention by the Debtor, all as more fully described in the indemnification section of the Engagement Letter.

19.     AlixPartners believes that the indemnification terms, as modified by the Proposed Order, are customary and reasonable for advisory engagements, both in and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary in this District.

## AlixPartners' Disinterestedness

20.     In connection with its proposed retention by the Debtor in this chapter 11 case, AlixPartners undertook a lengthy review to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor.  Specifically, AlixPartners obtained from the Debtor, and/or its representatives, the names of all known individuals and entities that may be parties in interest in this chapter 11 case ("**Potential Parties in Interest**") as of the date of filing this Declaration.  A categorized list of the types of entities who were considered Potential Parties in Interest is listed on **Exhibit "1**," annexed hereto.

21.     Based on that search, AlixPartners represents that, to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest for AlixPartners with regard to the Debtor.  The search was performed for connections within the past ten (10) years and results were disclosed as to AlixPartners Holdings, LLP ("**AP**

7

**Holdings**"), AlixPartners' parent company, and each of AP Holdings' U.S. and non-U.S.

subsidiary affiliates.  Unless otherwise noted, references to AlixPartners in the disclosures below

collectively refer to AlixPartners, AP Holdings, and each of their subsidiary affiliates.

AlixPartners wishes to disclose the following:

- Funds managed by subsidiaries of CVC Capital Partners SICAV-FIS S.A. ("**CVC**"), a private equity and investment advisory firm, own a controlling stake in AP Holdings, the parent of AlixPartners.  CVC Credit Partners, L.P. ("**CVC Credit Partners**") is a global debt management business and a majority owned subsidiary of CVC.

    CVC's  private equity funds ("**CVC Funds**") and debt funds ("**CVC Credit Partners' Funds**") are managed independently from each other, with no overlap in membership of the relevant investment committees or boards of entities with responsibility for investment decisions.  CVC has in place an internal information barrier between the CVC Funds and the CVC Credit Partners' Funds.  All CVC Credit Partners investment professionals are dedicated to CVC Credit Partners and are not involved in the private equity business. CVC Credit Partners also has separate IT systems and workspaces.

    No material nonpublic information about the Debtor has been furnished by AlixPartners to CVC or any CVC managed funds or their portfolio companies, including without limitation, CVC Credit Partners (collectively, the "**CVC Entities**") and AlixPartners will continue to abide by its confidentiality obligations to the Debtor.  AlixPartners operates independently of the CVC Entities, and does not share employees or officers with the CVC Entities, except that a managing partner of CVC is on the Board of Directors of AlixPartners, LLP and AP Holdings and on the advisory board to CVC Credit Partners. Certain other CVC executives, who are not connected with CVC Credit Partners, are also on either the Board of Directors of AlixPartners or the Board of Directors of AP Holdings. AlixPartners and the CVC Entities have separate offices in separate buildings and use separate Internet email addresses.  AlixPartners's financial performance is not directly impacted by the success or failure of the CVC Entities.

    As a component of its conflict checking system, AlixPartners has searched the names of CVC, CVC Credit Partners, the CVC Credit Partners' Funds, the CVC Funds, each managing partner of CVC and each portfolio company of the CVC Funds (the "**CVC Conflict Parties**") against the list of Potential Parties in Interest, and AlixPartners has determined to the best of its knowledge it has no connection or relationship with the CVC Conflict Parties that requires disclosure other than as noted herein.  The term "portfolio company" means any business in which a CVC fund has a direct controlling or minority interest.  The term "portfolio company" does not include indirect investments such as businesses owned or investments made by a CVC Funds portfolio company or investments made by the CVC Credit Partners' Funds.  CVC Credit Partners Funds, as

8

well as other CVC Entities, may in the ordinary course from time to time hold, control and/or manage loans to, or investments in the Debtor and parties in interest in this chapter 11 case.  Further, the CVC Entities may have had, currently have or may in the future have business relationships or connections with the Debtor or other Potential Parties in Interest in matters related to or unrelated to the Debtor or its subsidiary or this chapter 11 case.  Furthermore, AlixPartners has provided to CVC the list of Potential Parties in Interest and has performed appropriate checks to determine if there exists any material connection or relationship between the CVC Conflict Parties and the Debtor.  AlixPartners will supplement this disclosure if it obtains information regarding any such connection.  Other than as specifically noted herein, AlixPartners has not undertaken to determine the existence, nature and/or full scope of any business relationships or connections that the CVC Entities may have with the Potential Parties in Interest, the Debtor or its subsidiary or this chapter 11 case.

Certain of the CVC Credit Partners' Funds act as lenders to AP.  Further, AP may have had, currently has or may in the future have other business relationships with, among other entities, portfolio companies or managed funds of CVC in matters unrelated to the Debtor or its subsidiary in this chapter 11 case.  Based on, among other things, the business separation between the CVC Funds and the CVC Credit Partners' Funds, the business separation between the CVC Entities and AlixPartners, and the confidentiality obligations referred to above, AlixPartners believes that it does not hold or represent an interest adverse to the estate with respect to the engagement.

- The Department of the United States Treasury is an interested party in this bankruptcy matter.  AlixPartners has relationships with certain other departments of the United States government, including, without limitation, the Internal Revenue Service ("**IRS**"), who is a creditor, adverse party, and vendor to current and former AlixPartners clients in matters unrelated to the Debtor.   The IRS is the previous employer of current AlixPartners employees.   The Department of Justice ("**DOJ**"), is a current and former client of AlixPartners in matters unrelated to the Debtor.  The DOJ has also been an adverse party and customer to current and former AlixPartners clients in matters unrelated to the Debtor.  In addition, the United States SEC, the United States Department of Labor and the US Attorneys' Office are current or former clients of AlixPartners in matters unrelated to the Debtor.

- Certain of the parties in interest may have extended credit or provided services, or may in the future extend credit or provide services to AlixPartners.

- There is one confidential client of AlixPartners that is a creditor to the Debtor.  The confidential client is a current AlixPartners client in matters unrelated to the Debtor.

- ACE American Insurance Company ("**ACE**"), an insurance provider to the Debtor, is an insurance provider, creditor and vendor to current and former AlixPartners clients in matters unrelated to the Debtor.  ACE is a vendor to AlixPartners.

9

- Airgas USA, LLC ("**Airgas**"), a creditor to the Debtor is a vendor and creditor to various current and former AlixPartners clients in matters unrelated to the Debtor.

- Albemarle Corporation, an executory contract counterparty and creditor to the Debtor, is a co-client to a current AlixPartners engagement in matters unrelated to the Debtor. Albemarle & Bond Jewelers & Pawnbrokers Limited is an AlixPartners vendor. Albemarle Corporation is an adverse plaintiff to a current AlixPartners client in matters unrelated to the Debtor.

- Allied World Assurance Company U.S. Inc. ("**Allied**"), an insurance provider to the Debtor, is an adverse party and material contract party to former AlixPartners clients in matters unrelated to the Debtor. Allied is a vendor to AlixPartners.

- Amazon.com ("**Amazon**"), a creditor to the Debtor, is a former AlixPartners client in matters unrelated to the Debtor. Amazon is an adverse party, vendor and creditor to current and former AlixPartners clients in matters unrelated to the Debtor. Amazon is the previous employer of a current AlixPartners employee.

- American Express, a creditor to the Debtor, is a vendor to AlixPartners as well as a lender, bondholder, creditor and vendor to current and former AlixPartners clients in matters unrelated to the Debtor. American Express is a member of a creditors' committee that was a former AlixPartners client in matters unrelated to the Debtor. American Express is a former AlixPartners client in matters unrelated to the Debtor.

- American International Group, Inc. and affiliated entities ("**AIG**"), insurance providers to the Debtor, are limited partners, litigation counterparties, insurance providers, adverse parties, lenders and bondholders to current and former AlixPartners clients in matters unrelated to the Debtor. AIG is a current and former AlixPartners client in matters unrelated to the Debtor. AIG has provided various types of insurance to AlixPartners in matters unrelated to the Debtor.

- American Stock Transfer & Trust Company, LLC, a creditor to the Debtor, is a co-defendant and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor.

- Analysis Group, Inc. a professional in interest and vendor to the Debtor is the former employer of current AlixPartners professionals, unrelated to the Debtor.

- Aramark Uniform Services ("**Aramark**"), a creditor to the Debtor, is a vendor to a former AlixPartners client and a former AlixPartners client in matters unrelated to the Debtor.

- AT&T, a vendor to the Debtor ("**AT&T**"), is affiliated with entities that are creditors, executory contract counterparties, vendors, lenders and shareholders to current and former AlixPartners clients in matters unrelated to the Debtor. Affiliated entities of

10

WEIL:\95119800\10\74193.0003

AT&T are former AlixPartners clients in matters unrelated to the Debtor.  AT&T is a vendor to AlixPartners.

- Axis Insurance Company, an insurance provider to the Debtor, is affiliated with entities that are material contract parties, lessors, insurers and director-affiliated companies to current and former AlixPartners clients in matters unrelated to the Debtor.  Axis Insurance Company is a co-client to a current AlixPartners client in matters unrelated to the Debtor.

- Baker & Botts, a professional in interest in this bankruptcy matter, is a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor.  Baker & Botts is a current and former AlixPartners client in matters unrelated to the Debtor.

- Bay Tact Corporation, a creditor to the Debtor is a professional in interest to a current AlixPartners client in matters unrelated to the Debtor.

- BDO Seidman, a professional in interest in this bankruptcy matter, is a former AlixPartners client in matters unrelated to the Debtor.  BDO Seidman is a litigation party and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor.  BDO Seidman is the former employer of a current AlixPartners employee.

- Berkley Insurance Company, an insurance provider to the Debtor, is an insurance provider and bondholder to current and former AlixPartners clients in matters unrelated to the Debtor.  Berkley Insurance Europe is a litigation party to a current AlixPartners client in matters unrelated to the Debtor.

- Bingham McCutchen, a professional in interest in this bankruptcy matter, is a former AlixPartners client in matters unrelated to the Debtor.  Bingham McCutchen is a professional in interest, creditor, vendor, and opposing counsel to current and former AlixPartners clients in matters unrelated to the Debtor.

- CenturyLink, a creditor to the Debtor is a vendor to current and former AlixPartners clients in matters unrelated to the Debtor.  CenturyLink is an AlixPartners vendor.

- Catalent Clinical Storage, Catalent Pharma Solutions, and Catalent Pharma Solutions, LLC ("**Catalent**"), a vendor, creditor, and executory contract counterparty to the Debtor, is a co-client to a current AlixPartners client in matters unrelated to the Debtor.  Catalent Pharma is a former AlixPartners client.

- CDW Direct LLC and CDW Corporation ("**CDW**"), vendors to the Debtor, are vendors to AlixPartners in matters unrelated to the Debtor.  CDW is a co-defendant, executory contract party and creditor to current and former AlixPartners clients in matters unrelated to the Debtor.

11

- Charles River, a vendor to the Debtor, is a former AlixPartners client, and Charles River is the former employer of current AlixPartners professionals, all in matters unrelated to the Debtor.

- Chartis Insurance Company ("**Chartis**"), an insurance provider to the Debtor, is an insurance provider to current AlixPartners clients in matters unrelated to the Debtor. Chartis is an insurance provider to AlixPartners.

- Chase, a financial institution to the Debtor, and affiliated entities are lenders, shareholders, vendors, bondholders, cash management bank and creditors to current and former AlixPartners clients in matters unrelated to the Debtor. An affiliate, JPMorgan Chase, is a current and former AlixPartners client in matters unrelated to the Debtor. JPMorgan Chase affiliated entities previously employed several current AlixPartners employees.

- Chartis Specialty Insurance Company ("**Chartis**"), an insurance provider to the Debtor, is an insurance provider to current AlixPartners clients in matters unrelated to the Debtor. Chartis is an insurance provider to AlixPartners.

- Chevron Corporation ("**Chevron**"), an officers affiliated company to the Debtor, and affiliated entities are executory contract counterparties, creditors, adverse parties, and customers to current and former AlixPartners clients in matters unrelated to the Debtor. Chevron is a former AlixPartners client in matters unrelated to the Debtor.

- Citibank, Citibank CBO Services ("**Citi**"), a financial institution to the Debtor, is affiliated with entities that are creditors, lenders, bondholders, shareholders, adverse parties, professionals in interest, and lessors to current and former AlixPartners clients in matters unrelated to the Debtor. Citi affiliated entities are former AlixPartners clients in matters unrelated to the Debtor.

- CNN, a former director affiliated company to the Debtor, is a creditor to a current AlixPartners client in matters unrelated to the Debtor. CNN is a vendor to a former AlixPartners client in matters unrelated to the Debtor.

- Cogent Communications Inc., a creditor to the Debtor is an AlixPartners vendor, unrelated to the Debtor.

- Columbia University and Columbia University College of Physicians and Surgeons, ("**CU**") current and former directors affiliated companies to the Debtor, is the previous employer of a current AlixPartners employee. CU is an AlixPartners vendor. CU is a material contract party and director's affiliated contract counterparty to current AlixPartners clients in matters unrelated to the Debtor.

- Cooley LLP (formerly known as "Cooley Godward Kronish"), a professional and creditor of the Debtor, is a current AlixPartners client in matters unrelated to the Debtor. Cooley

12

was opposing counsel, counsel and creditor of former AlixPartners clients in matters unrelated to the Debtor. In addition, Cooley Godward was a related party to a former AlixPartners client in matters unrelated to the Debtor.

- Colonial Surety Company, an insurance provider to the Debtor, is a former AlixPartners client in matters unrelated to the Debtor.

- Continental Insurance Company, ("**Continental**") an insurance provider to the Debtor, is affiliated with entities that are bondholders, creditors, lenders, and adverse parties to current and former AlixPartners clients in matters unrelated to the Debtor. Continental is a former AlixPartners client in matters unrelated to the Debtor. Continental is the previous employer of a current AlixPartners employee

- Covington & Burling, LLP, a professional in interest and creditor to the Debtor, is a current and former AlixPartners client in matters unrelated to the Debtor. Covington & Burling, LLP is a creditor and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor. Covington & Burling, LLP is a vendor to AlixPartners.

- Dell Marketing, Dell Software ("**Dell**"), a vendor to the Debtor, is a creditor, vendor, material contract party, and litigation party to former AlixPartners' clients in matters unrelated to the Debtor. Dell is an AlixPartners vendor. Dell is client party to a former AlixPartners' client in matters unrelated to the Debtor.

- Deltek, a vendor to the Debtor is a current AlixPartners client in matters unrelated to the Debtor. Deltek is a creditor to various former AlixPartners clients in matters unrelated to the Debtor.

- Drinker Biddle & Reath, a professional in interest in this bankruptcy matter, is a former AlixPartners client in matters unrelated to the Debtor. Drinker Biddle & Reath is a professional in interest, legal counsel, and opposing legal counsel to current and former AlixPartners clients in matters unrelated to the Debtor. AlixPartners was a client of Drinker Biddle & Reath in matters unrelated to the Debtor.

- DRS Technologies, a former director-affiliated company to the Debtor, is the previous employer of a current AlixPartners employee.

- Federal Express and FedEx Custom Critical ("**FedEx**"), a vendor to the Debtor, is an adverse party, vendor and creditor to current and former AlixPartners clients in matters unrelated to the Debtor. FedEx is a vendor to AlixPartners. FedEx is a former AlixPartners client in matters unrelated to the Debtor. An affiliate of FedEx is a former AlixPartners client in matters unrelated to the Debtor.

13

- Fisher Scientific, a vendor to the Debtor is a directors affiliated company and vendor to former AlixPartners clients in matters unrelated to the Debtor. Fisher Scientific is the former employer of a current AlixPartners employer.

- General Electric Capital Corporation, General Electric Healthcare Financial Services, Inc. ("**GE**"), a lender the Debtor, is affiliated with entities that are creditors, customers, lenders, vendors, litigation parties, adverse parties, lessors, and bondholders to current and former AlixPartners clients in matters unrelated to the Debtor. GE and affiliated entities are current and former AlixPartners clients in matters unrelated to the Debtor. GE is the previous employer of current AlixPartners employees.

- GlobeNewswire a creditor to the Debtor, is a creditor to a former AlixPartners client in matters unrelated to the Debtor. GlobeNewswire is an AlixPartners vendor.

- Google, a vendor to the Debtor, is affiliated with an entity that is co-defendant, vendor, creditor, customer, lessee, and adverse party to a current and former AlixPartners clients in matters unrelated to the Debtor. Google is a current AlixPartners client in matters unrelated to the Debtor. Google is a co-client to a current AlixPartners' client in matters unrelated to the Debtor.

- Hilton Garden Inn Corvallis ("**Hilton**"), an accounts payable party to the Debtor, is affiliated with an entity that is the previous employer of a current AlixPartners employee. An affiliated entity is a subsidiary, vendor, creditor, and director-affiliated company to current and former AlixPartners clients in matters unrelated to the Debtor.

- Hyundai Hope on Wheels Medical Advisory Board, a former director-affiliated company to the Debtor, is affiliated with entities that are former AlixPartners clients in matters unrelated to the Debtor. Affiliated entities are co-defendants, creditors, bondholders, material contract parties, vendors, and customers to current and former AlixPartners clients in matters unrelated to the Debtor.

- Illinois National Insurance Company, an insurance provider to the Debtor, is an affiliate of American International Group, who is a current and former AlixPartners client in matters unrelated to the Debtor.

- Integra Telecom, Inc., a creditor and utility company to the Debtor, is a vendor to AlixPartners. Integra Telecom, Inc. is a vendor, creditor, and adverse party to current and former AlixPartners clients in matters unrelated to the Debtor.

- InterCall, a vendor to the Debtor, is a vendor to AlixPartners. InterCall is a creditor and vendor to current and former AlixPartners clients in matters unrelated to the Debtor.

- Iron Mountain, a vendor to the Debtor, is a vendor, creditor and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor. Iron Mountain is vendor to AlixPartners.

14

- Jenner & Block, a creditor to the Debtor and a professional in interest in this bankruptcy matter, is a professional in interest, opposing counsel and client counsel to current and former AlixPartners clients in matters unrelated to the Debtor.  Jenner & Block is a former AlixPartners client in matters unrelated to the Debtor.

- The State of Kentucky, a taxing authority to the Debtor, is a vendor to AlixPartners.

- Kramer Levin Naftalis & Frankel ("**KLNF**"), a professional in interest in this bankruptcy matter, a director-affiliated company and vendor to the Debtor, is a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor.  KLNF is a former AlixPartners client in matters unrelated to the Debtor.

- Latham & Watkins LLP, a professional in interest in this bankruptcy matter and vendor to the Debtor, is client counsel, opposing counsel, creditor, lender, executory contract counterparty, and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor.  Latham & Watkins is a current and former AlixPartners client in matters unrelated to the Debtor.

- Liberty Insurance Underwriters ("**Liberty**"), an insurance provider to the Debtor, is affiliated with entities that are creditors, lenders, vendors, adverse parties, executory contract counterparties, insurers, and lenders to current and former AlixPartners clients in matters unrelated to the Debtor.  An affiliate of Liberty is a former AlixPartners client in matters unrelated to the Debtor.

- Lockton Companies, an insurance provider to the Debtor, is a vendor to AlixPartners.

- The State of Michigan, a taxing authority to the Debtor, is a vendor to AlixPartners.

- MPI Research Inc., a vendor to the Debtor, is a vendor to AlixPartners.  MPI Research Inc. is a creditor and adverse party to former AlixPartners clients in matters unrelated to the Debtor.  MPI Research Inc. is a current and former AlixPartners client in matters unrelated to the Debtor.

- NASDAQ, a vendor to the Debtor, is a professional in interest and creditor to current and former AlixPartners clients in matters unrelated to the Debtor.

- National Union Fire Insurance Company, an insurance provider to the Debtor, is affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders, and bondholders to current and former AlixPartners clients in matters unrelated to the Debtor.

- New York City Department of Finance ("**NYDF**"), a taxing authority in this bankruptcy matter, is a vendor to AlixPartners.  NYDF is a creditor and litigation party to current and former AlixPartners clients in matters unrelated to the Debtor.

15

- The State of New York, a taxing authority in this bankruptcy matter, is affiliated with a branch that is a current AlixPartners client in matters unrelated to the Debtor.

- Northrop Grumman Information Technology, a creditor to the Debtor, is a co-defendant, vendor, customer, and director-affiliated company to current and former AlixPartners clients in matters unrelated to the Debtor.

- NW Natural, a creditor and utility provider to the Debtor, is a former AlixPartners client in matters unrelated to the Debtor.

- Old Republic Insurance Company ("**Old Republic**"), an insurance provider to the Debtor, is a former AlixPartners client in matters unrelated to the Debtor. Old Republic Insurance is an insurance provider, material contract party, and lender to current and former AlixPartners clients in matters unrelated to the Debtor.

- Paul Weiss Rifkind & Garrison, a professional in interest in this bankruptcy matter, is client counsel and opposing counsel to current and former AlixPartners clients in matters unrelated to the Debtor. Paul Weiss Rifkind & Garrison is a current and former AlixPartners client in matters unrelated to the Debtor.

- Pitney Bowes Global Financial Services LLC and Pitney Bowes Inc., creditors and utility providers to the Debtor, are vendors to AlixPartners. In addition, affiliated entities are adverse parties, creditors, lessors, and lenders to current and former AlixPartners clients in matters unrelated to the Debtor.

- PricewaterhouseCoopers, LLP ("**PWC**"), a professional in interest and vendor in this bankruptcy matter, is a professional in interest, opposing counsel, and creditor to current and former AlixPartners clients in matters unrelated to the Debtor. PWC provides tax and related consulting services to AlixPartners. PWC is a former AlixPartners client in matters unrelated to the Debtor. PWC is the previous employer of a number of current AlixPartners employees. AlixPartners provides services to PWC in the ordinary course in matters unrelated to the Debtor.

- Ricoh USA, Inc. ("**Ricoh**"), a creditor to the Debtor, is affiliated with an entity that is a current AlixPartners client in matters unrelated to the Debtor. Ricoh is a vendor to AlixPartners.

- Sharp, a creditor to the Debtor, is a co-defendant and litigation party to former AlixPartners clients in matters unrelated to the Debtor.

- Sheridan Heathcare, Inc., a director-affiliated company to the Debtor, is a portfolio company of Hellman & Friedman ("**H&F**"). H&F is the previous parent company of AlixPartners.

- SIGA Technologies, Inc. is a former AlixPartners client.

16

- State of New Jersey, a taxing authority to the Debtor, is a vendor to AlixPartners.

- Staples, a creditor to the Debtor, is a vendor, lessor, creditor, and material contract counterparty to current and former AlixPartners clients in matters unrelated to the Debtor. Staples is a current AlixPartners client in matters unrelated to the Debtor. Staples is a co-defendant to a current AlixPartners client in matters unrelated to the Debtor. Staples is a vendor to AlixPartners.

- Starr Indemnity & Liability Company, an insurance provider to the Debtor, is affiliated with an entity that is a former AlixPartners client in matters unrelated to the Debtor.

- Stevens & Lee, a director-affiliated company to the Debtor, is a professional in interest to a former AlixPartners client in matters unrelated to the Debtor.

- Time Warner, a utility provider to the Debtor, and affiliated entities, are litigation parties, vendors, adverse parties, customers, creditors, and director affiliated companies to current and former AlixPartners clients in matters unrelated to the Debtor. Time Warner is a former AlixPartners client in matters unrelated to the Debtor. Time Warner is a vendor to AlixPartners.

- T-Mobile, a vendor to the Debtor, is a vendor, material contract party, and customer to current and former AlixPartners clients in matters unrelated to the Debtor. T-Mobile is a vendor to AlixPartners

- Verizon Wireless, a utility provider and creditor to the Debtor, is a former AlixPartners client in matters unrelated to the Debtor. Other Verizon-affiliated entities are creditors, executory contract counterparties, co-clients, and vendors to current and former AlixPartners clients in matters unrelated to the Debtor. Verizon is a vendor to AlixPartners.

- Weil, Gotshal & Manges LLP, a professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtor. Weil, Gotshal & Manges LLP is a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtor.

- Western Union, a director-affiliated company to the Debtor, is a co-client to a current AlixPartners client in matters unrelated to the Debtor. Western Union is a material contract party and client related affiliate to former AlixPartners clients in matters unrelated to the Debtor.

22.     AlixPartners and its subsidiary affiliates are claims agents, advisors, and crisis managers providing services and advice in many areas, including restructuring and distressed debt. As part of its diverse practice, AlixPartners appears in numerous cases, proceedings and

17

transactions involving many different attorneys, accountants, investment bankers, and financial

consultants, some of whom may represent claimants and parties in interest in this chapter 11

case. Further, AlixPartners has in the past, and may in the future, be represented by several

attorneys and law firms, some of whom may be involved in this chapter 11 case. In addition,

AlixPartners has been in the past, and likely will be in the future, engaged in matters unrelated to

the Debtor or this chapter 11 case in which it works with or against other professionals involved

in this chapter 11 case. Moreover, AlixPartners might have referred work to other professionals

to be retained in this chapter 11 case. Likewise, certain such professionals to be retained in this

chapter 11 case might have referred work to AlixPartners. To the best of my knowledge,

information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of

these business relationships constitute interests adverse to the Debtor.

23.    From time to time, AlixPartners has provided services, and likely will continue to

provide services, to certain creditors of the Debtor and various other parties adverse to the

Debtor in matters wholly unrelated to this chapter 11 case. As described herein, however,

AlixPartners has undertaken a detailed search to determine, and to disclose, whether it is

providing or has provided, services to any significant creditor, equity security holder, insider, or

other party in interest in such unrelated matters.

24.    To the best of my knowledge, information and belief, insofar as I have been able

to ascertain after reasonable inquiry, except as otherwise disclosed herein, neither I nor any of

AlixPartners' professional employees or representatives:  (a) have any connection with the

Debtor, their creditors, or any other Potential Parties in Interest in this chapter 11 case; or (b) are

related or connected to any United States Bankruptcy Judge for the Southern District of New

18

York, any of the District Judges for the Southern District of New York who handle bankruptcy cases, the U.S. Trustee, or any employee in the Office of the U.S. Trustee, except as otherwise set forth herein.

25.     To the best of my knowledge, neither AlixPartners or any of its professionals is a direct holder of any of the Debtor's securities.  It is possible that certain of AlixPartners' employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing, may own investment interests in mutual funds or other investment vehicles (including various types of private funds) that own the Debtor's or other parties in interests' debt or equity securities, or other financial instruments, including bank loans or other obligations.  Typically, the holders of such investment interests are passive investors and have no role in management of the investment vehicle and no control over investment decisions related to such investment funds or financial instruments.  AlixPartners' policy prohibits its employees from personally trading in the Debtor's securities.

26.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, AlixPartners has not been retained to assist any entity or person other than the Debtor on matters relating to, or in direct connection with, this chapter 11 case.  AlixPartners will continue to provide professional services to entities that may be creditors or equity security holders of the Debtor or other parties in interest in this chapter 11 case, provided that such services do not relate to, or have any direct connection with, this chapter 11 case or the Debtor.

27.     Despite the efforts described above to identify and disclose the connections that AlixPartners and its affiliates have with parties in interest in this chapter 11 case, because the

19

Debtor is a large enterprise with numerous stakeholders and other relationships, AlixPartners is unable to state with certainty that every client relationship or other connection has been disclosed.

28.    In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with any other party in interest, including the Debtor, any creditor, or any attorney for such party in interest in this chapter 11 case (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estate in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or, (c) for payment of compensation in connection with this chapter 11 case other than in accordance with the applicable provisions of the Bankruptcy Code.

29.    Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of AlixPartners, I, nor any employee of AlixPartners who will work on the engagement holds or represents any interest adverse to the Debtor or its estate, and AlixPartners is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that AlixPartners and its professionals and employees who will work on the engagement:

  (a)  are not creditors, equity security holders, or insiders of the Debtor;

  (b)  were not, within two years before the date of filing of the Debtor's chapter 11 petition, a director, officer, or employee of the Debtor; and

  (c)  do not have an interest materially adverse to the interest of the Debtor's estate or any class of creditors or equity security holders,

WEIL:\95119800\10\74193.0003

by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

30.    If AlixPartners discovers additional information that requires disclosure, AlixPartners will promptly file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.  AlixPartners reserves the right to supplement this Declaration in the event that AlixPartners discovers any facts bearing on matters described in this Declaration regarding AlixPartners' employment by the Debtor.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  October 17, 2014

/s/ Carrianne J.M. Basler
Carrianne J.M. Basler
Managing Director
AlixPartners, LLP

21

## Exhibit 1

### Retention Checklist of Potential Parties in Interest

- Debtor
- Debtor's Trade Names
- Debtor's Subsidiary
- Top 20 Unsecured Creditors
- Accounts Payable
- Top 5 Secured Creditors
- Current Members of Board of Directors
- Former Members of Board of Directors (past 3 years)
- Current Officers
- Former Officers (past 3 years)
- Affiliations of Current and Former Members of Board of Directors
- Affiliations of Current and Former Officers
- Current Significant Shareholders (5% or more)
- Unions
- Financial Institutions
- Landlords
- Major Competitors
- Bankruptcy Judges for the United States Bankruptcy Court for the S.D.N.Y.
- United States Trustees for the S.D.N.Y.
- Litigation Parties
- Insurance Providers
- Taxing Authorities
- Utility Companies
- Proposed Debtor's Professionals and Ordinary Course Professionals
- Vendors
- Underwriting Investment Bankers for Debtor's Securities
- Regulatory Agencies
- Counsel and Professionals to Certain Ad Hoc Groups of Lenders
- Members of Ad Hoc or Unofficial Creditors' Committee and Professionals
- Noteholders
- Indenture Trustees
- Significant Contract Counterparties
- Joint Operating Agreement Counterparties
- Debtor's Significant Equity Interests (5% or more)

## EXHIBIT B

**Engagement Letter**


*When it really matters.*

October 2, 2014

Mr. Daniel J. Luckshire
Executive Vice President and Chief Financial Officer
SIGA Technologies, Inc.
660 Madison Avenue, Suite 1700
New York, New York 10065

Re:     Agreement for Financial Advisory and Consulting Services

Dear Mr. Luckshire:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and SIGA Technologies, Inc. and certain of its affiliates and subsidiaries ("SIGA" or the "Company") for the engagement of AlixPartners to provide financial advisory and consulting services to the Company.  AlixPartners understands that the Company filed for protection under Chapter 11 of the United States Bankruptcy Code on September 16, 2014.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions. To the extent there is any inconsistency between this letter and the attached Schedule(s) and General Terms and Conditions, this letter shall govern.

| OBJECTIVES AND TASKS |
|---|

The responsibilities of AlixPartners will be as follows:

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

| STAFFING |
|---|

Carrianne J.M. Basler will be the managing director responsible for the overall engagement.  She will be assisted by Michael DeGraf, a Director who has a wide range of skills and abilities related to this type of assignment.



Mr. Daniel J. Luckshire
October 2, 2014
Page 2 of 7

| TIMING, FEES AND RETAINER |
| --- |

AlixPartners will commence this engagement on or about October 2, 2014 after receipt of a copy of the Agreement executed by the Company.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

The Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention and retainer nunc pro tunc to the date of this Agreement. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

\*    \*    \*

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Carrianne J.M. Basler
Managing Director

Acknowledged and Agreed to:
SIGA TECHNOLOGIES, INC.
By: _____
Its: _____Daniel J. Luckshire / CFO_____
Dated: _____10/2/14_____



## SCHEDULE 1

### FEES AND EXPENSES

1. **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| Managing Director | $875 – 1,010 |
|---|---|
| Director | $665 - 815 |
| Vice President | $490 - 590 |
| Associate | $335 - 435 |
| Analyst | $290 - 320 |
| Paraprofessional | $220 - 240 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2. **Success Fee:** AlixPartners does not seek a Success Fee in connection with this engagement.

3. **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a Break Fee in connection with this engagement.

5. **Retainer:** AlixPartners does not require a retainer in connection with this engagement, but we reserve the right to request a retainer in the future.

6. **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt. No discount is provided for prompt payment, and none shall be taken.

## ALIXPARTNERS, LLP
## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Responsibilities of the Parties.

The Company will undertake responsibilities as set forth below:

1.  Provide reliable and accurate detailed information, materials, documentation and

2.  Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners shall perform the services in a manner consistent with the professional skill and care prevailing in the industry. AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

### Section 2. Billing, Retainer and Payments.

**Billing.** Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future and are not contingent upon the outcome of any case or matter. AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally).

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer ("Retainer"). Invoices shall be offset against the Retainer. Payments of invoices will be used to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be applied against our final invoice or returned to the Company at the end of the engagement

If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Court approval to apply the Retainer to these amounts.

**Payments.** All payments to be made to AlixPartners shall, subject to any orders of the Bankruptcy Court, be due and payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

### Section 4. Confidentiality.

AlixPartners agrees that, except as set forth herein, it shall hold in confidence, and shall not disclose to any third party, all Company non-public confidential or proprietary information during the performance of its services hereunder (the "Information") without the express written consent of the Company, which consent may be withheld in Company's sole discretion. AlixPartners agrees to use the

## ALIXPARTNERS, LLP
## GENERAL TERMS AND CONDITIONS

Company's Information solely for the services, and will disclose the Information only to its employees, representatives or consultants who: (i) are actively and directly involved in the services and consequently need to know such information; (ii) are informed of the obligations of confidentiality in the Agreement and (iii) are bound by confidentiality, non-use, and nondisclosure obligations in all material respects at least as restrictive as those set forth in this Agreement. AlixPartners shall maintain the confidentiality of the Information with the same degree of care it applies to its own confidential information, but in no event less than a reasonable standard of care. "Information" includes non-public confidential and proprietary data, intellectual property, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

In the event that AlixPartners or anyone to whom it transmits the Information becomes legally required by subpoena or the order of a court or governmental body to disclose any such Information, and if allowed by law, AlixPartners shall provide Company with prompt notice and copies of all relevant documents so that Company may seek a protective order or other appropriate remedy to prevent or limit such disclosure. AlixPartners will reasonably cooperate with Company's efforts to obtain any such order or other remedy. In the event that such protective order or other remedy is not obtained AlixPartners shall furnish only that portion of the Information that is legally required to be disclosed. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of five (5) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), and the terms of this Agreement, generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval, except as required by law.

The parties hereto agree that if there is a breach by AlixPartners of any of the covenants contained herein, the damage to Company may be substantial, although difficult to quantify, and money damages will not afford Company an adequate remedy. Therefore, if any such breach occurs or is threatened, in addition to any other remedies as may be provided by law, Company shall have the right to seek specific performance of the covenants contained herein by way of temporary or permanent injunctive relief.

### Section 5. Intellectual Property.

Upon the Company's payment of all fees and expenses owed under this Agreement, all analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information as defined above. AlixPartners may retain copies of the Work Product and any Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product. The Company acknowledges and agrees that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify AlixPartners and its affiliates, partners, directors, officers, owners, employees, and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses, and actual damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, other than such claims, liabilities, losses, expenses or damages finally determined or agreed by the parties to be directly resulting from the gross negligence or bad faith of AlixPartners. The AlixPartners Parties may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which these indemnification obligations relate if advised by counsel that representation of both AlixPartners and the Company by the same counsel results in a potential conflict of interest between the parties.

Notwithstanding anything to the contrary, the Company's indemnification and advancement obligations in this Section 7 shall be primary to (and without allocation against) any similar indemnification obligations that AlixPartners may offer to its employees/partners generally (which shall be secondary).

## ALIXPARTNERS, LLP
### GENERAL TERMS AND CONDITIONS

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

### Section 8.  Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be ·selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to the Bankruptcy Court to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9.  Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10.  Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this

Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

### Section 11.  Limit of Liability.

The AlixPartners Parties shall not be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final determination to be the direct result of the bad faith, self-dealing or intentional misconduct of AlixPartners. The AlixPartners Parties shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. The AlixPartners Parties' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to AlixPartners for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such

---

### ALIXPARTNERS, LLP
### GENERAL TERMS AND CONDITIONS

---

allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

**Section 12.  General.**

**Severability.**  If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.**  This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement.

**Joint and Several.**  If there is more than one party to this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.**  The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Data Protection.**  AlixPartners acknowledges and the Company agrees that in performing the services AlixPartners may from time to time be required to process certain personal data on behalf of the Company. In such cases AlixPartners may act as the Company's data processor and AlixPartners shall endeavor to (a) act only on reasonable instructions from the Company within the scope of the services of this Agreement; (b) have in place appropriate technical and organizational security measures against unauthorized or unlawful processing of personal data and against accidental loss or destruction of, or damage to, personal data; and (c) comply (to the extent applicable to it and/or the process) with relevant laws or regulations.

**Notices.**  All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention:  General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party.  All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

---

## **EXHIBIT C**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                              :           **Chapter 11 Case No.**
:
**SIGA TECHNOLOGIES, INC.,**      :           **14-12623 (SHL)**
:
                      **Debtor.**     :
:
------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS RESTRUCTURING ADVISORS FOR DEBTOR *NUNC PRO TUNC* TO OCTOBER 2, 2014

Upon the Application, dated October 17, 2014 (the "**Application**"),[1] of SIGA

Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), for entry of an order,

pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

authorizing the Debtor to employ and retain AlixPartners, LLP ("**AlixPartners**") as restructuring

advisors in its chapter 11 case, *nunc pro tunc* to October 2, 2014, all as more fully described in

the Application; and upon the declaration of Carrianne J.M. Basler, a member of AlixPartners,

annexed to the Application as **Exhibit "A"** (the "**Basler Declaration**"); and the Court having

been satisfied, based on the representations made in the Application and the Basler Declaration,

that AlixPartners is "disinterested" as such term is defined in section 101(14) of the Bankruptcy

Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section

327(a) of the Bankruptcy Code, and that AlixPartners represents no interest adverse to the

Debtor's estate with respect to the matters upon which it is to be engaged; and the Court having

---

[1]  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Application or the Engagement Letter, as appropriate.

jurisdiction to consider the Application and the relief requested therein in accordance with

28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431 (Preska, C.J.);

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided,

and it appearing that no other or further notice need be provided; and a hearing having been held

to consider the relief requested in the Application (the "**Hearing**"); and upon the record of the

Hearing and all of the proceedings had before the Court; and the Court having found and

determined that the relief sought in the Application is in the best interests of the Debtor, its

estate, creditors, and all parties in interest, and that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that pursuant to section 327(a) of the Bankruptcy Code and

Bankruptcy Rule 2014(a), the Debtor is authorized to employ and retain AlixPartners as its

restructuring advisors in this chapter 11 case, in accordance with the terms and conditions set

forth in the Engagement Letter, annexed hereto as **Exhibit "1"** (the "**Engagement Letter**"), all

as contemplated by the Application, *nunc pro tunc* to October 2, 2014; and it is further

ORDERED that the terms of the Engagement Letter are approved in all respects

except as explicitly limited or modified herein; and it is further

ORDERED that notwithstanding anything to the contrary in the Engagement

Letter, the Application, or the Basler Declaration, to the extent that the Debtor requests

AlixPartners to perform any services other than those detailed in the Engagement Letter, the

2

Debtor shall seek a further order of the Court approving the rendition of such services and any

related modifications to the Engagement Letter and such application shall set forth, in addition to

the additional services to be performed, the additional fees sought to be paid; and it is further

ORDERED that, except as stated below, AlixPartners shall be compensated in

accordance with, and will file, interim and final fee applications for allowance of its

compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any further orders of the Court;

and it is further

ORDERED that AlixPartners shall be reimbursed for reasonable and necessary

expenses as provided by the Fee Guidelines and as set forth in the Engagement Letter; and it is

further

ORDERED that all of AlixPartners' compensation and reimbursements set forth

in the Engagement Letter, including, without limitation, the Fee and Expense Structure, is

approved pursuant to section 330 of the Bankruptcy Code and AlixPartners shall be compensated

and reimbursed pursuant to the Bankruptcy Code in accordance with the terms of the

Engagement Letter, subject to the procedures set forth in the Fee Guidelines, the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court; and

it is further

ORDERED that AlixPartners shall include in its fee applications, among other

things, time records setting forth a summary description of the services rendered by each

professional, and the amount of time spent on each date by each such individual in rendering

services on behalf of the Debtor in one tenth of an hour increments; and it is further

3

ORDERED that notwithstanding anything to the contrary in the Engagement Letter, the

indemnification incorporated therein is modified as follows (the "**Indemnification Provisions**"):

a.  All requests of indemnified persons for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final, as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that the Debtor shall have no obligation to indemnify any indemnified person, for any claim or expense that is, (i) judicially determined (the determination having become final) to have arisen from the indemnified persons' own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; (ii) for a contractual dispute in which the Debtor alleges the breach of the indemnified persons' contractual obligations and the Court has not determined that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which the indemnified person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified herein;

b.  In the event that any indemnified person seeks reimbursement from the Debtor for reasonable attorneys' fees in connection with a request by such indemnified person for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in AlixPartners' own application (both interim and final) and such invoices and time records shall be subject to applicable fee guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

ORDERED that AlixPartners shall provide ten (10) business days' notice to the

Debtor, the United States Trustee for the Southern District of New York, and any statutory

committee appointed in this chapter 11 case in connection with any increase of the hourly rates

listed in the Basler Declaration; and it is further

4

ORDERED that AlixPartners shall use its best efforts to avoid duplication of

services provided by any of the Debtor's other retained professionals in this chapter 11 case; and

it is further

ORDERED that in the event of any inconsistency between the Engagement

Letter, the Application, and the Order, the terms of this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
       November __, 2014


                                                _____
                                                United States Bankruptcy Judge

WEIL:\95119800\10\74193.0003

# EXHIBIT 1

**Engagement Letter**



October 2, 2014

Mr. Daniel J. Luckshire
Executive Vice President and Chief Financial Officer
SIGA Technologies, Inc.
660 Madison Avenue, Suite 1700
New York, New York 10065

Re:    Agreement for Financial Advisory and Consulting Services

Dear Mr. Luckshire:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and SIGA Technologies, Inc. and certain of its affiliates and subsidiaries ("SIGA" or the "Company") for the engagement of AlixPartners to provide financial advisory and consulting services to the Company. AlixPartners understands that the Company filed for protection under Chapter 11 of the United States Bankruptcy Code on September 16, 2014.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions. To the extent there is any inconsistency between this letter and the attached Schedule(s) and General Terms and Conditions, this letter shall govern.

---

### OBJECTIVES AND TASKS

The responsibilities of AlixPartners will be as follows:

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

---

### STAFFING

Carrianne J.M. Basler will be the managing director responsible for the overall engagement. She will be assisted by Michael DeGraf, a Director who has a wide range of skills and abilities related to this type of assignment.



Mr. Daniel J. Luckshire
October 2, 2014
Page 2 of 7

| TIMING, FEES AND RETAINER |
| --- |

AlixPartners will commence this engagement on or about October 2, 2014 after receipt of a copy of the Agreement executed by the Company.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

The Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention and retainer nunc pro tunc to the date of this Agreement. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

\* \* \*

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Carrianne J.M. Basler
Managing Director

Acknowledged and Agreed to:

SIGA TECHNOLOGIES, INC.

By: _____

Its: Daniel J. Luckshire / CFO

Dated: 10/2/14



## SCHEDULE 1

### FEES AND EXPENSES

1. **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| Managing Director | $875 – 1,010 |
|---|---|
| Director | $665 - 815 |
| Vice President | $490 - 590 |
| Associate | $335 - 435 |
| Analyst | $290 - 320 |
| Paraprofessional | $220 - 240 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2. **Success Fee:** AlixPartners does not seek a Success Fee in connection with this engagement.

3. **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a Break Fee in connection with this engagement.

5. **Retainer:** AlixPartners does not require a retainer in connection with this engagement, but we reserve the right to request a retainer in the future.

6. **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt. No discount is provided for prompt payment, and none shall be taken.

## ALIXPARTNERS, LLP
## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Responsibilities of the Parties.

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners shall perform the services in a manner consistent with the professional skill and care prevailing in the industry. AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

### Section 2. Billing, Retainer and Payments.

**Billing.** Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future and are not contingent upon the outcome of any case or matter. AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally).

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer ("Retainer"). Invoices shall be offset against the Retainer. Payments of invoices will be used to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be applied against our final invoice or returned to the Company at the end of the engagement

If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Court approval to apply the Retainer to these amounts.

**Payments.** All payments to be made to AlixPartners shall, subject to any orders of the Bankruptcy Court, be due and payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

### Section 4. Confidentiality.

AlixPartners agrees that, except as set forth herein, it shall hold in confidence, and shall not disclose to any third party, all Company non-public confidential or proprietary information during the performance of its services hereunder (the "Information") without the express written consent of the Company, which consent may be withheld in Company's sole discretion. AlixPartners agrees to use the

| ALIXPARTNERS, LLP |
| GENERAL TERMS AND CONDITIONS |

Company's Information solely for the services, and will disclose the Information only to its employees, representatives or consultants who: (i) are actively and directly involved in the services and consequently need to know such information; (ii) are informed of the obligations of confidentiality in the Agreement and (iii) are bound by confidentiality, non-use, and nondisclosure obligations in all material respects at least as restrictive as those set forth in this Agreement. AlixPartners shall maintain the confidentiality of the Information with the same degree of care it applies to its own confidential information, but in no event less than a reasonable standard of care. "Information" includes non-public confidential and proprietary data, intellectual property, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

In the event that AlixPartners or anyone to whom it transmits the Information becomes legally required by subpoena or the order of a court or governmental body to disclose any such Information, and if allowed by law, AlixPartners shall provide Company with prompt notice and copies of all relevant documents so that Company may seek a protective order or other appropriate remedy to prevent or limit such disclosure. AlixPartners will reasonably cooperate with Company's efforts to obtain any such order or other remedy. In the event that such protective order or other remedy is not obtained AlixPartners shall furnish only that portion of the Information that is legally required to be disclosed. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of five (5) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), and the terms of this Agreement, generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval, except as required by law.

The parties hereto agree that if there is a breach by AlixPartners of any of the covenants contained herein, the damage to Company may be substantial, although difficult to quantify, and money damages will not afford Company an adequate remedy. Therefore, if any such breach occurs or is threatened, in addition to any other remedies as may be provided by law, Company shall have the right to seek specific performance of the covenants contained herein by way of temporary or permanent injunctive relief.

**Section 5. Intellectual Property.**

Upon the Company's payment of all fees and expenses owed under this Agreement, all analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information as defined above. AlixPartners may retain copies of the Work Product and any Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product. The Company acknowledges and agrees that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

**Section 6. Framework of the Engagement.**

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

**Section 7. Indemnification and Other Matters.**

The Company shall indemnify AlixPartners and its affiliates, partners, directors, officers, owners, employees, and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses, and actual damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, other than such claims, liabilities, losses, expenses or damages finally determined or agreed by the parties to be directly resulting from the gross negligence or bad faith of AlixPartners. The AlixPartners Parties may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which these indemnification obligations relate if advised by counsel that representation of both AlixPartners and the Company by the same counsel results in a potential conflict of interest between the parties.

Notwithstanding anything to the contrary, the Company's indemnification and advancement obligations in this Section 7 shall be primary to (and without allocation against) any similar indemnification obligations that AlixPartners may offer to its employees/partners generally (which shall be secondary).

## ALIXPARTNERS, LLP
### GENERAL TERMS AND CONDITIONS

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

### Section 8. Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to the Bankruptcy Court to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/ contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

### Section 11. Limit of Liability.

The AlixPartners Parties shall not be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final determination to be the direct result of the bad faith, self-dealing or intentional misconduct of AlixPartners. The AlixPartners Parties shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. The AlixPartners Parties' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to AlixPartners for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such

## ALIXPARTNERS, LLP
## GENERAL TERMS AND CONDITIONS

allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

### Section 12.  General.

**Severability.**  If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.**  This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement.

**Joint and Several.**  If there is more than one party to this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.**  The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Data Protection.**   AlixPartners acknowledges and the Company agrees that in performing the services AlixPartners may from time to time be required to process certain personal data on behalf of the Company.  In such cases AlixPartners may act as the Company's data processor and AlixPartners shall endeavor to (a) act only on reasonable instructions from the Company within the scope of the services of this Agreement; (b) have in place appropriate technical and organizational security measures against unauthorized or unlawful processing of personal data and against accidental loss or destruction of, or damage to, personal data; and (c) comply (to the extent applicable to it and/or the process) with relevant laws or regulations.

**Notices.**  All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI  48075
> Attention:  General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party.   All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.