UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                :
In re                                           :      Chapter 11 Case No.
                                                :
SIGA TECHNOLOGIES, INC.,                        :      14-12623 (SHL)
                                                :
                        Debtor.                 :
                                                :
------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a)
AUTHORIZING EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS
RESTRUCTURING ADVISORS FOR DEBTOR *NUNC PRO TUNC* TO OCTOBER 2, 2014**

Upon the Application, dated October 17, 2014 (the "**Application**"),[1] of SIGA Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), for entry of an order, pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to employ and retain AlixPartners, LLP ("**AlixPartners**") as restructuring advisors in its chapter 11 case, *nunc pro tunc* to October 2, 2014, all as more fully described in the Application; and upon the declaration of Carrianne J.M. Basler, a member of AlixPartners, annexed to the Application as **Exhibit "A"** (the "**Basler Declaration**"); and the Court having been satisfied, based on the representations made in the Application and the Basler Declaration, that AlixPartners is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that AlixPartners represents no interest adverse to the Debtor's estate with respect to the matters upon which it is to be engaged; and the Court having

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application or the Engagement Letter, as appropriate.

jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Debtor is authorized to employ and retain AlixPartners as its restructuring advisors in this chapter 11 case, in accordance with the terms and conditions set forth in the Engagement Letter, annexed hereto as **Exhibit "1"** (the "**Engagement Letter**"), all as contemplated by the Application, *nunc pro tunc* to October 2, 2014; and it is further

ORDERED that the terms of the Engagement Letter are approved in all respects except as explicitly limited or modified herein; and it is further

ORDERED that notwithstanding anything to the contrary in the Engagement Letter, the Application, or the Basler Declaration, to the extent that the Debtor requests AlixPartners to perform any services other than those detailed in the Engagement Letter, the

Debtor shall seek a further order of the Court approving the rendition of such services and any related modifications to the Engagement Letter and such application shall set forth, in addition to the additional services to be performed, the additional fees sought to be paid; and it is further

ORDERED that, except as stated below, AlixPartners shall be compensated in accordance with, and will file, interim and final fee applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any further orders of the Court; and it is further

ORDERED that AlixPartners shall be reimbursed for reasonable and necessary expenses as provided by the Fee Guidelines and as set forth in the Engagement Letter; and it is further

ORDERED that all of AlixPartners' compensation and reimbursements set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 330 of the Bankruptcy Code and AlixPartners shall be compensated and reimbursed pursuant to the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Fee Guidelines, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court; and it is further

ORDERED that AlixPartners shall include in its fee applications, among other things, time records setting forth a summary description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor in one tenth of an hour increments; and it is further

ORDERED that notwithstanding anything to the contrary in the Engagement Letter, the indemnification incorporated therein is modified as follows (the "**Indemnification Provisions**"):

a. All requests of indemnified persons for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final, as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that the Debtor shall have no obligation to indemnify any indemnified person, for any claim or expense that is, (i) judicially determined (the determination having become final) to have arisen from the indemnified persons' own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; (ii) for a contractual dispute in which the Debtor alleges the breach of the indemnified persons' contractual obligations and the Court has not determined that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which the indemnified person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified herein;

b. In the event that any indemnified person seeks reimbursement from the Debtor for reasonable attorneys' fees in connection with a request by such indemnified person for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in AlixPartners' own application (both interim and final) and such invoices and time records shall be subject to applicable fee guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

ORDERED that AlixPartners shall provide ten (10) business days' notice to the Debtor, the United States Trustee for the Southern District of New York, and any statutory committee appointed in this chapter 11 case in connection with any increase of the hourly rates listed in the Basler Declaration; and it is further

ORDERED that AlixPartners shall use its best efforts to avoid duplication of services provided by any of the Debtor's other retained professionals in this chapter 11 case; and it is further

ORDERED that in the event of any inconsistency between the Engagement Letter, the Application, and the Order, the terms of this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:  New York, New York
        November 14, 2014

                                                   */s/ Sean H. Lane*
                                                   United States Bankruptcy Judge

14-12623-shl    Doc 137    Filed 11/14/14    Entered 11/14/14 11:58:05    Main Document
Pg 6 of 13

# **EXHIBIT 1**

## **Engagement Letter**

14-12623-shl    Doc 137    Filed 11/14/14    Entered 11/14/14 11:58:05    Main Document
Pg 6 of 13



October 2, 2014

Mr. Daniel J. Luckshire
Executive Vice President and Chief Financial Officer
SIGA Technologies, Inc.
660 Madison Avenue, Suite 1700
New York, New York 10065

Re:    Agreement for Financial Advisory and Consulting Services

Dear Mr. Luckshire:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and SIGA Technologies, Inc. and certain of its affiliates and subsidiaries ("SIGA" or the "Company") for the engagement of AlixPartners to provide financial advisory and consulting services to the Company. AlixPartners understands that the Company filed for protection under Chapter 11 of the United States Bankruptcy Code on September 16, 2014.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions. To the extent there is any inconsistency between this letter and the attached Schedule(s) and General Terms and Conditions, this letter shall govern.

### OBJECTIVES AND TASKS

The responsibilities of AlixPartners will be as follows:

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

### STAFFING

Carrianne J.M. Basler will be the managing director responsible for the overall engagement. She will be assisted by Michael DeGraf, a Director who has a wide range of skills and abilities related to this type of assignment.



Mr. Daniel J. Luckshire
October 2, 2014
Page 2 of 7

| TIMING, FEES AND RETAINER |
|---|

AlixPartners will commence this engagement on or about October 2, 2014 after receipt of a copy of the Agreement executed by the Company.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

The Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention and retainer nunc pro tunc to the date of this Agreement. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

*   *   *

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

*[signature]*

Carrianne J.M. Basler
Managing Director

Acknowledged and Agreed to:
SIGA TECHNOLOGIES, INC.
By: _____
Its: _____Daniel Luckshire / CFO_____
Dated: _____10/2/14_____



## SCHEDULE 1

### FEES AND EXPENSES

1. **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

   | Managing Director | $875 – 1,010 |
   |---|---|
   | Director | $665 - 815 |
   | Vice President | $490 - 590 |
   | Associate | $335 - 435 |
   | Analyst | $290 - 320 |
   | Paraprofessional | $220 - 240 |

   AlixPartners reviews and revises its billing rates on January 1 of each year.

2. **Success Fee:** AlixPartners does not seek a Success Fee in connection with this engagement.

3. **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4. **Break Fee:** AlixPartners does not seek a Break Fee in connection with this engagement.

5. **Retainer:** AlixPartners does not require a retainer in connection with this engagement, but we reserve the right to request a retainer in the future.

6. **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable immediately upon receipt. No discount is provided for prompt payment, and none shall be taken.

## ALIXPARTNERS, LLP
## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Responsibilities of the Parties.

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners shall perform the services in a manner consistent with the professional skill and care prevailing in the industry. AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

In connection with any Chapter 11 filing, the Company shall apply promptly to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

### Section 2. Billing, Retainer and Payments.

**Billing.** Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future and are not contingent upon the outcome of any case or matter. AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally).

**Retainer.** Upon execution of the Agreement, the Company shall promptly pay AlixPartners the agreed-upon advance retainer ("Retainer"). Invoices shall be offset against the Retainer. Payments of invoices will be used to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be applied against our final invoice or returned to the Company at the end of the engagement

If the Company becomes a debtor under the Bankruptcy Code, due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Court approval to apply the Retainer to these amounts.

**Payments.** All payments to be made to AlixPartners shall, subject to any orders of the Bankruptcy Court, be due and payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

### Section 4. Confidentiality.

AlixPartners agrees that, except as set forth herein, it shall hold in confidence, and shall not disclose to any third party, all Company non-public confidential or proprietary information during the performance of its services hereunder (the "Information") without the express written consent of the Company, which consent may be withheld in Company's sole discretion. AlixPartners agrees to use the

| ALIXPARTNERS, LLP |
| :---: |
| GENERAL TERMS AND CONDITIONS |

Company's Information solely for the services, and will disclose the Information only to its employees, representatives or consultants who: (i) are actively and directly involved in the services and consequently need to know such information; (ii) are informed of the obligations of confidentiality in the Agreement and (iii) are bound by confidentiality, non-use, and nondisclosure obligations in all material respects at least as restrictive as those set forth in this Agreement. AlixPartners shall maintain the confidentiality of the Information with the same degree of care it applies to its own confidential information, but in no event less than a reasonable standard of care. "Information" includes non-public confidential and proprietary data, intellectual property, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

In the event that AlixPartners or anyone to whom it transmits the Information becomes legally required by subpoena or the order of a court or governmental body to disclose any such Information, and if allowed by law, AlixPartners shall provide Company with prompt notice and copies of all relevant documents so that Company may seek a protective order or other appropriate remedy to prevent or limit such disclosure. AlixPartners will reasonably cooperate with Company's efforts to obtain any such order or other remedy. In the event that such protective order or other remedy is not obtained AlixPartners shall furnish only that portion of the Information that is legally required to be disclosed. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of five (5) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), and the terms of this Agreement, generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval, except as required by law.

The parties hereto agree that if there is a breach by AlixPartners of any of the covenants contained herein, the damage to Company may be substantial, although difficult to quantify, and money damages will not afford Company an adequate remedy. Therefore, if any such breach occurs or is threatened, in addition to any other remedies as may be provided by law, Company shall have the right to seek specific performance of the covenants contained herein by way of temporary or permanent injunctive relief.

**Section 5. Intellectual Property.**

Upon the Company's payment of all fees and expenses owed under this Agreement, all analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information as defined above. AlixPartners may retain copies of the Work Product and any Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product. The Company acknowledges and agrees that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

**Section 6. Framework of the Engagement.**

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

**Section 7. Indemnification and Other Matters.**

The Company shall indemnify AlixPartners and its affiliates, partners, directors, officers, owners, employees, and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses, and actual damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, other than such claims, liabilities, losses, expenses or damages finally determined or agreed by the parties to be directly resulting from the gross negligence or bad faith of AlixPartners. The AlixPartners Parties may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which these indemnification obligations relate if advised by counsel that representation of both AlixPartners and the Company by the same counsel results in a potential conflict of interest between the parties.

Notwithstanding anything to the contrary, the Company's indemnification and advancement obligations in this Section 7 shall be primary to (and without allocation against) any similar indemnification obligations that AlixPartners may offer to its employees/partners generally (which shall be secondary).

## ALIXPARTNERS, LLP
## GENERAL TERMS AND CONDITIONS

AlixPartners is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

**Section 8. Governing Law and Arbitration.**

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Southfield, Michigan under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to the Bankruptcy Court to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

**Section 9. Termination and Survival.**

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

**Section 10. Non-Solicitation of Employees**

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Section 11. Limit of Liability.**

The AlixPartners Parties shall not be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final determination to be the direct result of the bad faith, self-dealing or intentional misconduct of AlixPartners. The AlixPartners Parties shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. The AlixPartners Parties' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to AlixPartners for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such

| **ALIXPARTNERS, LLP** |
|:---:|
| **GENERAL TERMS AND CONDITIONS** |

allocations or other claims against the AlixPartners Parties pursuant to this Agreement exceed the Liability Cap.

**Section 12. General.**

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement.

**Joint and Several.** If there is more than one party to this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Data Protection.** AlixPartners acknowledges and the Company agrees that in performing the services AlixPartners may from time to time be required to process certain personal data on behalf of the Company. In such cases AlixPartners may act as the Company's data processor and AlixPartners shall endeavor to (a) act only on reasonable instructions from the Company within the scope of the services of this Agreement; (b) have in place appropriate technical and organizational security measures against unauthorized or unlawful processing of personal data and against accidental loss or destruction of, or damage to, personal data; and (c) comply (to the extent applicable to it and/or the process) with relevant laws or regulations.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI  48075
> Attention:  General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.