**HEARING DATE AND TIME: December 9, 2014 at 11:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: December 2, 2014 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
SIGA TECHNOLOGIES, INC.,                :        14-12623 (SHL)
                                        :
                        Debtor.         :
                                        :
------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF DEBTOR**
**FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 363(b)**
**AND 105(a) AUTHORIZING EMPLOYMENT AND RETENTION**
**OF ANALYSIS GROUP, INC. AS LITIGATION CONSULTANT**
**FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE**

PLEASE TAKE NOTICE that a hearing on the annexed Motion, dated November

14, 2014 (the "**Motion**"), of SIGA Technologies, Inc., as debtor and debtor in possession (the

"**Debtor**"), for an order pursuant to sections 363(b) and 105(a) of title 11, United States Code

(the "**Bankruptcy Code**"), authorizing the Debtor to employ and retain Analysis Group, Inc. as

litigation consultant for the Debtor, *nunc pro tunc* to September 16, 2014, all as more fully set

forth in the Motion, will be held before the Honorable Sean H. Lane, United States Bankruptcy

Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New

York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004, on

**December 9, 2014 at 11:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Stephen Karotkin); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue, Suite 1700, New York, New York  10065 (Attn:  William J. Haynes II, Esq.); (iii) the attorneys for the statutory creditors' committee, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn:  Martin J. Bienenstock, Esq.); (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn:  Richard C. Morrissey, Esq.); and (v) the proposed litigation consultant for the Debtor, Analysis Group, Inc., 111 Huntington Ave, Tenth Floor, Boston, MA 02199 (Attn: Legal Counsel), so as to be received no later than **December 2, 2014 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

WEIL:\95123964\6\74193.0003

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
      November 14, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

WEIL:\95123964\6\74193.0003

Harvey R. Miller
Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
SIGA TECHNOLOGIES, INC.,                  :          14-12623 (SHL)
                                          :
                        Debtor.           :
                                          :
------------------------------------------------------------x

### MOTION OF DEBTOR FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AUTHORIZING EMPLOYMENT AND RETENTION OF ANALYSIS GROUP, INC. AS LITIGATION CONSULTANT FOR DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case ("**SIGA**" or the "**Debtor**"), respectfully represents:

### Background

1.       On September 16, 2014 (the "**Commencement Date**"), the Debtor

commenced with this Court a voluntary case under chapter 11 of title 11, United States Code

(the "**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and

manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

2.      Information regarding the Debtor's business, capital structure, and the

circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit

of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2, sworn to on September 16, 2014

(ECF No. 3).

### Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.      By this Motion, the Debtor seeks authority, pursuant to sections 363(b)

and 105(a) of the Bankruptcy Code, to employ and retain Analysis Group, Inc. ("**Analysis

Group**") as the Debtor's litigation consultant in connection with the PharmAthene Action (as

hereinafter defined), *nunc pro tunc* to the Commencement Date, in accordance with the terms

and conditions of the engagement letter, dated February 11, 2009 (the "**Engagement Letter**"),

a copy of which is annexed hereto as **Exhibit "A."**  A proposed order approving the retention

and employment of Analysis Group is annexed hereto as **Exhibit "B"** (the "**Proposed

Order**").

### The PharmAthene Action

5.      In December 2006, PharmAthene, Inc. ("**PharmAthene**") commenced an

action against SIGA alleging breach of contract and other claims (the "**PharmAthene

Action**"), in the Delaware Court of Chancery, styled *PharmAthene, Inc. v. SIGA Technologies,

Inc.*, Civ. Action No. 2627-VCP.  In its amended complaint, PharmAthene requested that the

Court of Chancery (i) order SIGA to enter into a license agreement with PharmAthene with

respect to Tecovirimat (a novel, small-molecule drug that is being delivered by SIGA to the

2

U.S. Strategic National Stockpile), (ii) declare that SIGA is obligated to execute such license agreement, and (iii) award damages resulting from SIGA's alleged breach of such obligation. PharmAthene also alleged that SIGA breached an obligation to negotiate such license agreement in good faith and sought damages for promissory estoppel and for unjust enrichment based on supposed information, capital, and assistance that PharmAthene allegedly provided to SIGA during the negotiation process. The Court of Chancery tried the PharmAthene Action in January 2011.

6.      In September 2011, the Court of Chancery issued its post-trial opinion. Although the Court found that there was no binding license agreement and denied PharmAthene's requests for specific performance and expectation damages measured by the present value of estimated future profits (finding such an exercise to be too speculative), it held that SIGA breached its duty to negotiate in good faith and was liable under the doctrine of promissory estoppel. The Court consequently awarded to PharmAthene what the Court described as an equitable payment stream or equitable lien and one-third of its reasonable attorneys' fees and expert witness expenses. In May 2012, the Court of Chancery entered its final order and judgment implementing its post-trial opinion.

7.      In June 2012, SIGA appealed the final order and judgment and certain earlier rulings of the Court of Chancery to the Supreme Court of Delaware. Shortly thereafter, PharmAthene filed a cross-appeal from the Court of Chancery's rulings regarding a binding license agreement, specific performance, and expectation damages.

8.      On May 24, 2013, the Supreme Court issued its decision, which affirmed the Court of Chancery's judgment in part, reversed it in part, and remanded the matter to the Court of Chancery. Specifically, the Supreme Court (i) affirmed the determination that SIGA

WEIL:\95123964\6\74193.0003

breached its contractual obligation to negotiate in good faith, (ii) reversed the promissory

estoppel holding, and (iii) reversed the equitable damages award.  It also held that, under

Delaware law, it is permissible for a trial court to award expectation damages for breach of a

contractual duty to negotiate in good faith if such damages are proven with reasonable

certainty and are not speculative or conjectural, and remanded to the Court of Chancery for

consideration of a remedy consistent with that holding.  The Delaware Supreme Court also

reversed the award of attorneys' fees and expert witness fees because it was predicated in part

on a now reversed finding of liability on PharmAthene's promissory estoppel claim.  The

Delaware Supreme Court held that the Court of Chancery could reevaluate on remand an

alternative award, if any, of attorneys' fees and expert testimony expenses consistent with the

Delaware Supreme Court's opinion.

9.      On August 8, 2014, the Court of Chancery issued its memorandum

opinion and order.  *PharmAthene, Inc. v. SIGA Techs, Inc.*, Civ. Action No. 2627-VCP, 2014

WL 3974167 (Del. Ch. Aug. 8, 2014) (the "**Remand Opinion**"); *Pharmathene, Inc. v. Siga

Techs., Inc.*, Civ. Action No. 2627-VCP, 2014 WL 3893449 (Del. Ch. Aug. 9, 2014) (the

"**Remand Order**").  In its Remand Opinion, the Court of Chancery reversed its earlier

conclusions and held that PharmAthene had carried its burden of demonstrating its entitlement

to lump sum expectation damages for its lost profits related to Tecovirimat by a preponderance

of the evidence.  It also stated that in order to calculate PharmAthene's lost profits, several

modifications to the valuation model presented at trial (which the Court of Chancery had

rejected as too speculative, among other things, in its post-trial opinion) were required, which

modifications the Court of Chancery set forth in the Remand Opinion.  The Court of Chancery

ruled that PharmAthene is entitled to the value of the revised calculations plus pre- and

4

postjudgment interest at the legal rate, compounded quarterly, with prejudgment interest to accrue from December 20, 2006.  The Court of Chancery also denied and dismissed with prejudice PharmAthene's claims that it is entitled to specific performance or an equitable payment stream, on the grounds that PharmAthene is limited to a contractual remedy and has an adequate remedy at law.  Finally, the Court of Chancery ruled that PharmAthene was entitled to (i) forty percent of the reasonable attorneys' fees and expenses it incurred through post-trial argument, (ii) one-third of the reasonable attorneys' fees and expenses it incurred in the remand proceedings, (iii) sixty percent of expert witness fees it incurred in the pretrial and trial phases, and (iv) and one-tenth of the expert witness fees it incurred in the remand proceedings.

10.    The Debtor intends to appeal the ruling and judgment of the Court of Chancery once a final order is entered and believes it has meritorious grounds for an appeal that either will eliminate any claim for expectation damages that PharmAthene may have or substantially reduce the amount of such damages.

11.    As a consequence of the commencement of the Debtor's chapter 11 case, the continuation of the PharmAthene Action and any enforcement action in connection therewith had been automatically stayed pursuant to section 362(a) of the Bankruptc Code (the "**Automatic Stay**").

12.    On October 8, 2014, the Bankruptcy Court approved a stipulation entered into by the Debtor and PharmAthene for a limited modification of the Automatic Stay on the terms and conditions set forth therein (ECF No. 64).

### Analysis Group's Qualifications

13.    The Debtor seeks to retain Analysis Group as its litigation consultant to provide expert opinions with respect to various issues raised in the PharmAthene Action

WEIL:\95123964\6\74193.0003

because of (i) Analysis Group's extensive experience and expertise with respect to the

PharmAthene Action prior to the Commencement Date and (ii) Analysis Group's general

extensive litigation analysis experience.

14.    Founded in 1981, Analysis Group provides economic, financial, and

business strategy consulting to its clients and specializes in the interpretation of economic and

financial data and the development of economic and financial models.  Nationally, Analysis

Group consists of more than 500 professionals who specialize in, among other things, the fields

of economics, accounting, finance, statistics, and strategy consulting.

15.    Analysis Group first served as litigation consultant to the Debtor as early

as 2009.  Analysis Group has since provided the Debtor with consulting and testifying services

in connection with the PharmAthene Action with respect to a variety of matters.  As a result of

its efforts over the past five years, Analysis Group is intimately familiar with the PharmAthene

Action.

16.    The Debtor, in its sound business judgment, has determined that it is in its

best interest to employ and retain Analysis Group as its litigation consultant to continue to

provide expert services in connection with the PharmAthene Action.  Analysis Group is well

qualified and uniquely able to provide the services sought by the Debtor in connection with the

PharmAthene Action, and the retention of Analysis Group will assist the Debtor in its appeal of

the ruling and judgment of the Court of Chancery.

WEIL:\95123964\6\74193.0003

## **Scope of Services**

17.    Pursuant to the terms and conditions set forth in the Engagement Letter,[1] the Debtor seeks to retain Analysis Group to provide independent, unbiased expert opinions with respect to various issues raised in the PharmAthene Action.

18.    The Debtor and Analysis Group intend that all services that Analysis Group will provide to the Debtor will be (a) directed by the Debtor so as to avoid duplicative efforts among the other professionals retained by the Debtor, and (b) performed in accordance with applicable standards of the profession.

19.    The Engagement Letter also contains indemnification language with respect to Analysis Group's services (the "**Indemnification Provision**"), including an agreement by the Debtor to fully indemnify and hold Analysis Group harmless from any and all claims against Analysis Group arising from or related to Analysis Group's engagement except for claims arising from Analysis Group's gross negligence or willful misconduct. Accordingly, as part of this Motion, the Debtor requests that this Court approve the Indemification Provision as set forth in the Engagement Letter, and as modified by the Proposed Order.  The terms of the Engagement Letter, including the Indemnification Provision, were fully negotiated at arm's length, and the Debtor respectfully submits that the Indemnification Provision is reasonable.

---

[1] The summary of the Engagement Letter contained in this Motion is provided for purposes of convenience only.  In the event of any inconsistency between the summary contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.

WEIL:\95123964\6\74193.0003

## Compensation

20.    The standard hourly rates, subject to periodic adjustments, charged by

professionals anticipated to be assigned to this case are set forth below:[2]

| Title | Hourly Rate ($) |
|---|---|
| Keith Ugone | 600 |
| Vice Presidents | 445–515 |
| Managers | 350–405 |
| Associates | 300–340 |
| Research Analysts | 200–280 |

21.    The Debtor requests authority to pay, in the ordinary course of business,

all reasonable amounts invoiced by Analysis Group for fees and expenses incurred in

accordance with the terms and conditions of the Engagement Letter, as follows:

(a)    The Debtor shall compensate Analysis Group for time expended in connection with the PharmAthene Action and reimburse Analysis Group for its reasonable out-of-pocket exenses;

(b)    Analysis Group professionals shall bill for services rendered on an hourly basis;

(c)    Analysis Group shall submit monthly invoices to the Debtor;

(d)    The invoices shall include a summary description of the tasks performed and the hours worked by each person working on the engagement; and

(e)    An invoice is payable by the Debtor upon receipt and is considered past due after thirty (30) days.

22.    Because Analysis Group is not being employed as a professional under

section 327 of the Bankruptcy Code, it will not submit quarterly or final fee applications

pursuant to sections 330 and 331 of the Bankruptcy Code, or otherwise.

---

[2] The rates reflected in the Engagement Letter are from 2009 and no longer reflect Analysis Group's customary U.S. hourly rates which are set forth in the above chart.

**Disinterestedness**

23.    Because the Debtor is not seeking to retain Analysis Group under section 327 of the Bankruptcy Code, it is not necessary for Analysis Group to be "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(a) of the Bankruptcy Code.  Nevertheless, Analysis Group has advised the Debtor that it does not represent or hold any interest adverse to the Debtor or its estate with respect to the matters on which Analysis Group is to be employed.  Further, Analysis Group has advised the Debtor that none of the employees of Analysis Group providing services to the Debtor has any material connection with any creditor or other parties in interest, their respective attorneys or accountants, or the U.S. Trustee or any of its employees.

24.    Analysis Group is owed approximately $25,000 for services provided and expenses incurred prior to the Commencement Date.  Analysis Group did not hold a retainer as of the Commencement Date.

**Basis for Relief**

25.    The Debtor seeks to retain and employ Analysis Group pursuant to section 363(b) of the Bankruptcy Code because Analysis Group is not a professional that must be retained by the Debtor under section 327 of the Bankruptcy Code.

26.    Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a Court must find that a "good business reason" exists for the use of such assets.  *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

9

27.    The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this District consistently have declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions are attributable to any "'rational business purpose.'"  *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

28.    Moreover, the Court may exercise its equitable powers under section 105(a) of the Bankruptcy Code to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

29.    The retention of Analysis Group is a sound exercise of the Debtor's business judgment.  As stated, Analysis Group has extensive experience as a litigation consultant and is intimately familiar with the PharmAthene Action.  Because this litigation continues to be pursued, the Debtor requires the ongoing services and expertise of Analysis Group in order to properly protect its rights and interests.  In light of the foregoing, the Debtor

believes that the retention of Analysis Group is appropriate and in the best interests of the

Debtor, its estate, and its stakeholders.

## **Notice**

30.    Notice of this Motion has been provided to Analysis Group and parties in

interest in accordance with the Order Pursuant to 11 U.S.C. §§ 105(a) and (d) and Bankruptcy

Rules 2002(m) and 9007 Implementing Certain Notice and Case Management Procedures (ECF

No. 138).  The Debtor submits that, in view of the facts and circumstances, such notice is

sufficient and no other or further notice need be provided.

31.    No previous request for the relief sought herein has been made by the

Debtor to this or any other Court.

WHEREFORE the Debtor respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated:  New York, New York
            November 14, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

11

## <u>EXHIBIT A</u>

**ENGAGEMENT LETTER**

**ANALYSIS GROUP**
ECONOMIC, FINANCIAL and STRATEGY CONSULTANTS

Main 1 214 523 1400   Fax 1 214 523 1401   www.analysisgroup.com

2911 Turtle Creek Boulevard   Suite 600   Dallas, TX   75219

February 11, 2009

Harold P. Weinberger, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Re: *PharmAthene, Inc. v. SIGA Technologies, Inc.*
C.A. No. 2627-VCP

Dear Mr. Weinberger:

This letter is intended to formalize the retention by Kramer Levin Naftalis & Frankel LLP on behalf of SIGA Technologies, Inc. (the "Client") of Keith R. Ugone of Analysis Group, Inc. ("AG") as an expert in connection with the above referenced litigation. We have been retained to provide independent, unbiased expert opinions with respect to various issues raised in this litigation.

In consideration of the consultation and testimony, the Client agrees to compensate AG for time actually expended in connection with these matters and reimbursement of reasonable out-of-pocket expenses. Our Dallas office hourly billing rates by professional staff are as follows:

| Analysis Group Staff: | |
|---|---|
| Keith R. Ugone, Managing Principal | $550 |
| Vice Presidents / Principals | $390 - $475 |
| Managers | $335 - $375 |
| Associates | $285 - $315 |
| Sr. Analysts | $215 - $240 |
| Analysts | $190 - $215 |

Under no circumstances is any amount of payment due for work performed contingent on the outcome of the above litigation.

Unless you require otherwise in writing, AG will bill you monthly and the bills shall include a summary description of the tasks performed and hours worked by each person working on the engagement as well as a statement of the total amount of out-of-pocket expenses and disbursements incurred (including but not limited to travel, communications, purchase of data, report production, and other similar costs). Our invoices are payable upon receipt and are considered past due after 30 days. We require that all outstanding bills be paid before delivery of any reports or before any testimony is given.

We understand that we are being retained in order to assist in connection with this proceeding. In that capacity, we understand that it may be necessary for AG to have access to materials that are privileged under attorney-client privilege, attorney work product, or otherwise confidential. All materials that we generate, or which we receive copies of during the course of our engagement, shall be held in confidence, and will not be disclosed to third parties other than those assisting in this engagement or as required in discovery.

Should any effort be made (a) either by subpoena or otherwise to gain access to information, materials, documents, work product or information of any kind in our possession that has been

Harold P. Weinberger
February 11, 2009
Page 2 of 2

generated, obtained or learned as a result of the work performed by us under the engagement, or (b) to otherwise stop, interrupt or interfere with the performance of our work in connection with the engagement, whether by judicial action or other means, in such event, to the extent feasible and permissible by law under the circumstances, we shall promptly notify you and follow lawful directions from you with respect to the response to any such effort.

We are not aware at this time of any conflict of interests that would preclude AG from providing services to you in this engagement. We shall monitor for conflicts during the course of the engagement.

The terms of this Agreement may not be waived except by express written consent. The interpretation and application of the terms of this Agreement shall be governed and construed in accordance with the laws of the State of New York excluding (to the greatest extent a court of such state would permit) any rule of law that would cause application of the laws of any jurisdiction other than the law of the state so specified. If the terms outlined in this letter are acceptable, please sign the letter in the space provided below and return the original to me in the enclosed prepaid envelope, keeping a copy for your file.

To the extent that we are asked to reach conclusions or form opinions, we are obligated to give our best independent judgment without regard to the impact that such conclusions or opinions may have upon the above referenced matter. Those opinions and conclusions may well change from time to time. Any such opinions or conclusions and any such changes, whatever the cause, shall not be the basis of any claim, and all such claims are hereby irrevocably waived by you.

You hereby agree to fully indemnify AG and to hold AG harmless from any and all claims against AG arising from or related to this engagement except for claims arising from AG's gross negligence or willful misconduct. In any event, under no circumstance will the total liability for all claims of any kind arising out of this engagement, whether in contract, tort or otherwise, ever exceed the total fees paid to AG and AG shall not ever, no matter what the circumstance, be liable for any indirect, consequential or punitive damages.

We are looking forward to working with you.

Sincerely,

_Keith R. Ugone, Managing Principal_
Analysis Group, Inc.

11 Feb '09
Date

Accepted by:

_Harold P. Weinberger_
Kramer Levin Naftalis & Frankel LLP

Feb 19, 2009
Date

## EXHIBIT B

## PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :        **Chapter 11 Case No.**
                                                                    :
**SIGA TECHNOLOGIES, INC.,**                                        :        **14-12623 (SHL)**
                                                                    :
                                                 **Debtor.**        :
                                                                    :
-------------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) GRANTING MOTION FOR AUTHORIZATION TO EMPLOY AND RETAIN ANALYSIS GROUP, INC. AS LITIGATION CONSULTANT FOR THE DEBTOR *NUNC PRO TUNC* TO COMMENCEMENT DATE

Upon the Motion, dated November 14, 2014 (the "**Motion**"),[1] of SIGA

Technologies, Inc. (the "**Debtor**"), pursuant to sections 363(b) and 105(a) of title 11, United

States Code (the "**Bankruptcy Code**"), for entry of an order authorizing the employment and

retention of Analysis Group, Inc. ("**Analysis Group**") as litigation consultant for the Debtor,

*nunc pro tunc* to September 16, 2014 (the "**Commencement Date**"), pursuant to the terms and

conditions set forth in the engagement letter annexed hereto as **Exhibit "1"** (the "**Engagement**

**Letter**"), all as more fully described in the Motion; and the Court having jurisdiction to consider

the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and

Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided, and it appearing that no

other or further notice need be provided; and a hearing having been held to consider the relief

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms
       in the Motion.

requested in the Motion (the "**Hearing**"); and upon the record of the Hearing and all of the

proceedings had before the Court; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in

interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that pursuant to sections 363(b) and 105(a) of the Bankruptcy Code,

the Debtor is authorized to employ and retain Analysis Group as litigation consultant in

accordance with the terms and conditions set forth in the Engagement Letter, including, without

limitation, the Indemnification Provision, all as contemplated by the Motion, *nunc pro tunc* to the

Commencement Date; and it is further

ORDERED that notwithstanding anything to the contrary in the Engagement

Letter or the Motion, to the extent that the Debtor requests Analysis Group to perform any

services other than those detailed in the Engagement Letter, the Debtor shall seek a further order

of the Court approving the rendition of such services and any related modifications to the

Engagement Letter and such application shall set forth, in addition to the additional services to be

performed, any additional fees sought to be paid; and it is further

ORDERED that Analysis Group is not required to submit fee applications pursuant

to sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that the Debtor shall be permitted to indemnify Analysis Group

pursuant to the Indemnification Provision; *provided, however,* that in no event shall Analysis

Group be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if

any), gross negligence, or willful misconduct; and it is further

ORDERED that in no event shall Analysis Group be indemnified if the Debtor or a representative of the estate asserts a claim for, and a Court determines by final order that such claim arose out of, Analysis Group's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that Analysis Group shall use its best efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in this chapter 11 case; and it is further

ORDERED that to the extent the Engagement Letter or the Motion are inconsistent with this Order, the terms of this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____ __, 2014
        New York, New York

_____
United States Bankruptcy Judge

## EXHIBIT 1

**ENGAGEMENT LETTER**

**ANALYSIS GROUP**
ECONOMIC, FINANCIAL and STRATEGY CONSULTANTS

Main 1 214 523 1400   Fax 1 214 523 1401   www.analysisgroup.com

2911 Turtle Creek Boulevard   Suite 600   Dallas, TX  75219

February 11, 2009

Harold P. Weinberger, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Re: *PharmAthene, Inc. v. SIGA Technologies, Inc.*
C.A. No. 2627-VCP

Dear Mr. Weinberger:

This letter is intended to formalize the retention by Kramer Levin Naftalis & Frankel LLP on
behalf of SIGA Technologies, Inc. (the "Client") of Keith R. Ugone of Analysis Group, Inc.
("AG") as an expert in connection with the above referenced litigation.  We have been retained to
provide independent, unbiased expert opinions with respect to various issues raised in this
litigation.

In consideration of the consultation and testimony, the Client agrees to compensate AG for time
actually expended in connection with these matters and reimbursement of reasonable out-of-
pocket expenses.  Our Dallas office hourly billing rates by professional staff are as follows:

| Analysis Group Staff: | |
|---|---|
| Keith R. Ugone, Managing Principal | $550 |
| Vice Presidents / Principals | $390 - $475 |
| Managers | $335 - $375 |
| Associates | $285 - $315 |
| Sr. Analysts | $215 - $240 |
| Analysts | $190 - $215 |

Under no circumstances is any amount of payment due for work performed contingent on the
outcome of the above litigation.

Unless you require otherwise in writing, AG will bill you monthly and the bills shall include a
summary description of the tasks performed and hours worked by each person working on the
engagement as well as a statement of the total amount of out-of-pocket expenses and
disbursements incurred (including but not limited to travel, communications, purchase of data,
report production, and other similar costs).  Our invoices are payable upon receipt and are
considered past due after 30 days.  We require that all outstanding bills be paid before delivery of
any reports or before any testimony is given.

We understand that we are being retained in order to assist in connection with this proceeding. In
that capacity, we understand that it may be necessary for AG to have access to materials that are
privileged under attorney-client privilege, attorney work product, or otherwise confidential.  All
materials that we generate, or which we receive copies of during the course of our engagement,
shall be held in confidence, and will not be disclosed to third parties other than those assisting in
this engagement or as required in discovery.

Should any effort be made (a) either by subpoena or otherwise to gain access to information,
materials, documents, work product or information of any kind in our possession that has been

Harold P. Weinberger
February 11, 2009
Page 2 of 2

generated, obtained or learned as a result of the work performed by us under the engagement, or
(b) to otherwise stop, interrupt or interfere with the performance of our work in connection with
the engagement, whether by judicial action or other means, in such event, to the extent feasible
and permissible by law under the circumstances, we shall promptly notify you and follow lawful
directions from you with respect to the response to any such effort.

We are not aware at this time of any conflict of interests that would preclude AG from providing
services to you in this engagement. We shall monitor for conflicts during the course of the
engagement.

The terms of this Agreement may not be waived except by express written consent. The
interpretation and application of the terms of this Agreement shall be governed and construed in
accordance with the laws of the State of New York excluding (to the greatest extent a court of
such state would permit) any rule of law that would cause application of the laws of any
jurisdiction other than the law of the state so specified. If the terms outlined in this letter are
acceptable, please sign the letter in the space provided below and return the original to me in the
enclosed prepaid envelope, keeping a copy for your file.

To the extent that we are asked to reach conclusions or form opinions, we are obligated to give
our best independent judgment without regard to the impact that such conclusions or opinions
may have upon the above referenced matter. Those opinions and conclusions may well change
from time to time. Any such opinions or conclusions and any such changes, whatever the cause,
shall not be the basis of any claim, and all such claims are hereby irrevocably waived by you.

You hereby agree to fully indemnify AG and to hold AG harmless from any and all claims
against AG arising from or related to this engagement except for claims arising from AG's gross
negligence or willful misconduct. In any event, under no circumstance will the total liability for
all claims of any kind arising out of this engagement, whether in contract, tort or otherwise, ever
exceed the total fees paid to AG and AG shall not ever, no matter what the circumstance, be liable
for any indirect, consequential or punitive damages.

We are looking forward to working with you.

Sincerely,


Keith R. Ugone, Managing Principal                    11 Feb '09
Analysis Group, Inc.                                   Date

Accepted by:


Harold P. Weinberger                                   Feb 19, 2009
Kramer Levin Naftalis & Frankel LLP                    Date