**HEARING DATE AND TIME: May 13, 2015 at 11:00 a.m. (Eastern Time)**

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900
Martin J. Bienenstock
Scott K. Rutsky
Ehud Barak

*Attorneys for the Statutory Creditors'*
*Committee of SIGA Technologies, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
*In re*                                                    :
:        **Chapter 11**
**SIGA TECHNOLOGIES, INC.,**                               :
:        **Case No. 14-12623 (SHL)**
     **Debtor.**                                           :
:
------------------------------------------------------------x

**OMNIBUS REPLY OF STATUTORY CREDITORS' COMMITTEE**
**TO OBJECTIONS TO COMMITTEE'S (I) RULE 2004 MOTION**
**AND (II) APPLICATION TO RETAIN SPECIAL LITIGATION CO-COUNSEL**

The statutory creditors' committee (the "Committee") of SIGA Technologies, Inc. ("SIGA") submits this omnibus reply (the "Reply") to the (i) *Objection of Debtor to Motion of Statutory Creditors' Committee for Order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery from Debtor and Certain Third Parties* [ECF No. 407] (the "SIGA Objection to Rule 2004 Motion"); (ii) *Objection of MacAndrews & Forbes Incorporated, MacAndrews & Forbes Group LLC, and MacAndrews & Forbes LLC to Motion of Statutory Creditors' Committee for order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery from Debtor and Certain Third Parties* [ECF No. 408], and (iii) *Objection of Debtor to Application of Statutory Creditors'*

*Committee for an Order Authorizing Employment and Retention of Susman Godfrey L.L.P. and Ressler & Ressler as Special Litigation Co-Counsel* [ECF No. 406] (the foregoing objections, collectively, the "Objections"). In further support of the *Motion of Statutory Creditors' Committee for Order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery from Debtor and Certain Third Parties* [ECF No. 342] (the "Rule 2004 Motion") and the *Application of Statutory Creditors' Committee for an Order Authorizing Employment and Retention of Susman Godfrey L.L.P. and Ressler & Ressler as Special Litigation Co-Counsel* [ECF No. 386] (the "Retention Application," and together with the Rule 2004 Motion, the "Committee Investigation Motions"), the Committee respectfully represents as follows:

## Preliminary Statement[1]

Consistent with its motion to disband the Committee, SIGA's opposition to the Committee Investigation Motions continues to expose its strategy for this case: that SIGA should enjoy all of the benefits of chapter 11, but not be subject to any of its creditor protection provisions. This strategy has now been taken a step further as SIGA desperately tries to prevent the Committee from carrying out its most basic statutory duties and powers to investigate claims against SIGA's insiders and affiliates. This is not surprising. We are all here because of SIGA's deliberate, bad faith conduct in its pre-petition dealings with PharmAthene—conduct that occurred at the direction of many of the same parties that control SIGA today. One thing is abundantly clear from SIGA's objections to the instant motions—SIGA never has and never will prosecute causes of action on behalf of its estate to recover for the wrongful conduct that resulted in its $195 million liability to PharmAthene. Moreover, SIGA is hopelessly conflicted in these

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Committee Investigation Motions.

matters, and its opposition to the Committee's legitimate efforts to explore alternative avenues of recovery for its constituency evidences a complete abdication of SIGA's fiduciary duties.

Section 1103(c)(2) of the Bankruptcy Code grants the Committee an absolute right to investigate the "acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or the formulation of a plan." 11 U.S.C. § 1103(c)(2). An examination pursuant to Rule 2004[2] is the tool Congress provided statutory creditors' committees to pursue its investigatory powers and carry out its statutory duties, and is particularly necessary in this case given SIGA's efforts to impede the Committee.[3] As shown below, SIGA's claim that the examination topics thus far identified by the Committee cannot give rise to valid causes of action is not only wrong, it is beside the point. The Committee's Rule 2004 Motion is not a complaint, and is not subject to review under the pleading standards applicable to complaints. The law does not require proof of definitive causes of action before the Committee may use Rule 2004 to explore whether any such actions exist in the first place.

SIGA's objection to the Committee's application to retain special counsel is equally without merit. Contrary to SIGA's gross distortion of reality, the Committee has engaged special counsel that will conduct an efficient and cost-effective investigation at 20% discounted rates (and at hourly rates far below the rates of virtually every other law firm retained in this case). Special counsel will also pursue litigation (if later authorized to do so by this Court) on a non-controversial contingency fee basis. SIGA's illogical contention that this engagement will burden the estate is not only a "red herring," but a transparent effort to deprive the Committee of

---

[2] "Rule 2004" means Rule 2004 of the Federal Rules of Bankruptcy Procedure.

[3] Among other things, SIGA: (i) lobbied the U.S. Trustee not to appoint a committee, and otherwise tried to get the trustee to severely curtail the Committee's powers, (ii) tried to block the Committee's retention of a financial advisor; (iii) has provided limited diligence information to the Committee despite informal requests made over four months ago; and (iv) refused to permit the Committee's advisors to share information SIGA did provide with the Committee members, prompting the Committee to seek relief in this Court.

its chosen counsel. It makes all the sense in the world for the lawyers who perform the investigation to then bring the actions, rather than have one legal team transition over to another (as SIGA suggests). That transition from an investigation legal team to a litigation legal team—both of which would be addressing the same causes of action—would necessarily give rise to needless duplication of effort and expense, the exact situation SIGA professes to avoid. The Objections should be overruled in their entirety.

## Reply

### I. SIGA's Boilerplate Objections Lack Merit and Should Be Overruled[4]

1. **SIGA Cannot Repudiate the Committee's Statutory Duty and Power to Investigate Claims Against Insiders.** The Bankruptcy Code clearly delineates a statutory committee's powers and duties. These include the express power to "<u>investigate the acts, conduct, assets</u>, liabilities, and financial condition of the debtor, the operation of the debtor's business . . . <u>and any other matter relevant to the case or to the formulation of a plan</u>." 11 U.S.C. § 1103(c)(2) (emphasis added). The Committee's right to investigate is all the more critical in this case because the very targets of any investigation will include parties currently in control of SIGA. Even if SIGA attempted to investigate and prosecute such actions—which it clearly does not intend to do—SIGA's insiders and control parties would be both plaintiffs and defendants in the same action. Thus, SIGA is hopelessly conflicted in these matters. SIGA's vehement protestations against the Committee's efforts to investigate SIGA's insiders and affiliates, and its repeated and unwarranted attacks on PharmAthene, show its true colors. SIGA is not even pretending to act like a fiduciary, and its arguments in these matters, at best, must be viewed with

---

[4] M&F joined SIGA's objection to Rule 2004 Motion, and the Committee's reply to SIGA's objection also applies to M&F's joinder.

extreme skepticism. The Committee is the only entity that can properly investigate and, if appropriate, bring any estate causes of action against insiders and affiliates of SIGA.

        2.    <u>The Committee's Investigation Benefits All SIGA's Claimholders</u>. According to SIGA, the Committee's discovery request is "predicated on specious claims that, among other things, would advance only PharmAthene's parochial interests." SIGA Objection to Rule 2004 Motion ¶ 2. This is a complete fabrication based on false facts. For example, SIGA's complains, without support, that the Committee's investigation into SIGA's accounting for deferred revenues benefits PharmAthene exclusively. This is nonsense. PharmAthene is in the final appellate stages of its litigation with SIGA (dealing solely with damages, not liability), which likely will not involve a further trial. If SIGA engaged in improper accounting, there may be viable actions on behalf of its estate against SIGA, its officers, directors, affiliates and auditors. The Committee has every right to find out. All claimholders (not just PharmAthene) benefit from efforts to augment the estate, especially if SIGA is insolvent. In fact, it is inconceivable that SIGA, as a fiduciary for all stakeholders, would not endorse such an investigation—if only to validate SIGA's contentions that insider claims do not exist.[5]

        3.    Yet another false fact is SIGA's claim that the Committee does not need discovery because PharmAthene had extensive discovery in its lawsuit against SIGA. Conveniently, SIGA fails to mention that because of confidentiality restrictions imposed by SIGA in that lawsuit, PharmAthene is not allowed to turn over its discovery to the Committee.[6]

---

[5] If SIGA's refusal to investigate emanates from the fact that SIGA conducted its own investigation and reached such conclusion, SIGA is more than welcome to share its findings with the Committee. Yet SIGA has not even averred that it ever conducted any such investigation.

[6] Certainly, if SIGA would agree to waive these restrictions, the Committee's investigation can proceed much faster. Notably, SIGA has not granted PharmAthene permission to turn over its prior discovery to the Committee.

4.      SIGA's repeated effort to conflate PharmAthene with the Committee is just as disingenuous. The Committee originally had three members until Catalent resigned because SIGA paid off its pre-petition claim. Then, it functioned as a two-member committee until May 1, 2015, when Albemarle resigned following SIGA's assumption of Albemarle's contract and payment of its $2.7 million claim. Immediately following Albemarle's resignation, the U.S. Trustee appointed Patheon to the Committee.[7] At all times, the Committee has acted in the best interests of general unsecured claimholders, and all Committee actions have been taken following a deliberative process with the advice of the Committee's attorneys and financial advisors.

5.      <u>The Committee Need Not Prove Claims to Conduct An Investigation</u>. SIGA's efforts to short-circuit the Committee's investigation by challenging the merits of potential claims identified by the Committee are of no avail and are immaterial. The Committee is *not* required to prove any claim before conducting its investigation. Rule 2004 examinations are notably "fishing expeditions." *See, e.g., In re Enron*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). As a result, the relief requested in the Rule 2004 Motion falls squarely within the limits of Rule 2004. A movant under Rule 2004 is not required to prove claims to conduct an investigation. *In re ECAM Publ'ns, Inc.*, 131 B.R. 556, 560 (Bankr. S.D.N.Y. 1991) (one purpose of a Rule 2004 examination is "to determine whether there are grounds to bring an action to recover property of the estate"). To the contrary, the entire purpose of a Rule 2004

---

[7] Unhappy with the U.S. Trustee's appointment of Patheon to the Committee, SIGA has now challenged Patheon's status as a creditor. While not relevant to these matters, SIGA's claims are baseless. As a simple review of SIGA's schedules on file with the Court will show [ECF No. 112- schedule G] Patheon (f/k/a DSM) is a party to a pre-petition executory contract with SIGA and holds contingent and unliquidated pre-petition claims. These contingent claims include (but are not limited to): potential claims for (i) indemnification, (ii) breach of confidentiality provisions, and (iii) breach of use restrictions on intellectual property, in each case relating to any conduct arising in or attributable to the pre-petition period, or arising following any rejection of the contract by SIGA. Additionally, if SIGA were to reject the contract (which covers both indemnifications for prepetition work and mutual obligations for postpetition work), additional rejection damage claims could arise, including for disposal of inventory, etc.

motion is to obtain evidence to assess whether claims exist. *See In re Whitley*, 2011 Bankr. LEXIS 4793, at *6 (Bankr. M.D.N.C. Dec. 13, 2011) ("Nor is it a valid objection that the trustee is attempting to use Rule 2004 in order to determine whether there are claims that can be asserted by the trustee. A trustee may use Rule 2004 as a pre-discovery device to unearth claims and causes of action for the estate and reveal the breadth and nature of the estate."); *In re Drexel Burnham*, 123 B.R. at 708."); *In re Recoton Corp.*, 307 B.R. 751 (Bankr. S.D.N.Y. 2004) (allowing the Committee to proceed under Rule 2004 "to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims.").

6. To be sure, a target's purported negative assessment of potential claims against it is predictable, lacks credibility, and has no bearing on a request to investigate. SIGA's arguments concerning the merits of potential claims are improper because they are based on unsupported assertions of fact that relate to the very evidence SIGA has failed to produce. The Committee would be remiss in its duties if it did not conduct an appropriate investigation into claims against insiders, especially where, as here, many current insiders were in control of SIGA at the time of its bad faith dealings with PharmAthene.

7. Additionally, SIGA's attempt to discard the potential causes of action outlined in the Rule 2004 Motion is futile. As a further demonstration that SIGA is not functioning like a fiduciary, it tellingly ignores that statutes of limitations are sometimes tolled and that there are valid causes of action against control persons who allow limitations periods to lapse. Moreover, the Committee only provided examples of a few actions it is looking to investigate, which actions jump off the pages of the Delaware courts' findings and conclusions about SIGA's conduct. The Committee did not mention many other actions, such as that in

2012, SIGA amended certain warrants to extend their expiration, for no apparent consideration.[8] In addition, some of SIGA's "independent directors" do not appear to meet the definition of "independent" as required under the NASDAQ and NYSE rules.[9] SIGA's history of bad faith conduct, coupled with the potential causes of action raised by the Committee (which may be complemented once the Committee receives the information it is requesting), support granting the Committee's Rule 2004 Motion.

8.    Finally, courts have rejected objections to Rule 2004 investigations based on arguments that the statutes of limitation has run. *See, e.g.*, *In re Dreher*, 2006 Bankr. LEXIS 2418, at *7 (Bankr. S.D. Miss. Sept. 20, 2006). The only thing the Committee needs to show at this point is that the Rule 2004 examination is necessary to enable the Committee to carry out its statutory duties.

9.    <u>The Committee's Investigation and Plan Negotiations Go Hand In Hand</u>. SIGA (which refused to begin plan negotiations for months) complains the Committee's investigation is counterproductive to the negotiation of a chapter 11 plan. SIGA Objection to Rule 2004 Motion ¶ 4. On SIGA's logic, a statutory committee is faced with a Hobson's choice: negotiate a plan or investigate. If that is the case, then plan negotiations must be deferred until after the Committee gathers facts. To state SIGA's position is to refute it. As

---

[8] In June 19, 2012, SIGA extended warrants owned by M&F for two additional years for no consideration. SIGA, Statement of Changes in Beneficial Ownership (Form 4) (Jun. 19, 2012) (reported by MacAndrews & Forbes Holdings Inc.). The commitment warrants were originally issued to M&F on June of 2008, under a certain letter agreement that expired on June of 2010. The commitment warrants were originally given to M&F in consideration for M&F's commitment to invest in SIGA. When asked about the extension of the commitment warrants on a call with investors, SIGA declined to answer why the warrants were extended and if there was any consideration given *in liu* of the extension. *See* SIGA Guidance/Update Call Tr., Aug. 6, 2012, available at http://seekingalpha.com/article/784941-siga-technologies-inc-q2-2012-guidance-update-call-aug-06-2012?part=single.

[9] This did not prevent SIGA from appointing these so-called "independent" individuals—who are clearly officers of SIGA's controlling shareholder—to a delicate position on SIGA's board, namely its audit committee. This is despite the fact that audit committee members may not be an "affiliated person" of the company or any of its subsidiaries. *See* Sarbanes-Oxley Act § 301; Exchange Act Rule 10A-3(b)(1)(ii)(B); NYSE Manual Section 303A.06; NASDAQ Rule 5605(c)(2)(A)(ii)).

SIGA knows, plan negotiations and investigations proceed on dual tracks in most all chapter 11 cases.

    10.  <u>The Authorities SIGA Cites Are Inapposite</u>.  SIGA argues the Rule 2004 Motion was filed for abuse or harassment purposes and should not be approved.  Not only does SIGA not explain how the Rule 2004 Motion harasses or is abusive in any way, but also, the decisions SIGA cites for this proposition are inapposite.  First, none of the cases involve an investigation by a statutory creditors' committee that, like the Committee here, is expressly authorized to investigate a debtor under section 1103(c)(2) and has a duty to do so.  Second, in each case, there were specific factors identified by the courts that led them to conclude that the examinations sought were for improper purposes.  No such concerns exist here.  And unlike certain of the cases cited, the Committee is bringing this Rule 2004 Motion promptly after all attempts to obtain the information from SIGA without Court interference have failed.  In *In re MF Global Inc.*, Ch. 11 Case No. 11-02790, 2013 WL 74580 (Bankr. S.D.N.Y. Jan. 8, 2013), the movant was not a party in interest, but a self-described "watchdog" entity with its own independent goals, who asked for a Rule 2004 exam "in furtherance of its *own* interests, not those of the estate." *Id.* at *4.  In *Duratech Industries, Inc.*, 241 B.R. 283 (E.D.N.Y. 1999), the court found the movant, who had admitted to stealing business records, customer lists, and some of the debtor's business equipment, which was the basis of pending civil litigation between the movant and the debtor, (i) waited 12 months before filing its Rule 2004 motion, and (ii) did not need discovery to draft a plan of reorganization because there sufficient information was available publicly.  *Id.* at 288.  *In re Coffee Cupboard, Inc.*, 128 B.R. 509 (Bankr. E.D.N.Y. 1991), involves a chapter 11 case that was closed, and later reopened and converted to a chapter

7. The court restricted discovery because, among other things, the creditors who requested the reopening of the case already had ample time in the chapter 11 case to conduct discovery.

11. SIGA also tries to argue the Rule 2004 Motion cannot be used to gain information relevant to an action pending in another court, but its argument is misplaced both as a matter of law[10] and as a matter of fact. As a practical and indisputable matter, the Committee has no litigation pending in another court, and PharmAthene's litigation is only against SIGA (as opposed to its insiders and affiliates) and is in the final appellate stage. Even if PharmAthene received information in its capacity as a Committee member, it would not help PharmAthene because, as SIGA itself points out (SIGA Objection to Rule 2004 Motion ¶ 16), briefing in the Delaware appellate Court will be over by May 11, 2015 (the date of this Reply) and in any case no new evidence could be added to the record at this point. Additionally, PharmAthene (as SIGA knows) is subject to stringent confidentiality restrictions that would prohibit the use of information obtained in its capcaity as a Committee member for any other purpose, and SIGA can seek a protective order from this Court to prevent disclosure to PharmAthene of any truly sensitive data.[11]

---

[10] In *Coffee Cupboard*, the court held that "[t]he mere fact that there is pending litigation against a person sought to be examined under Rule 2004 and possible use of such testimony in collateral litigation <u>is not a sufficient reason for denying the examination</u>." *In re Coffee Cupboard, Inc.*, 128 B.R. at 516 (emphasis added) (internal citation omitted). Also, the Court limited production of documents where they are "unrelated to this [bankruptcy case] and discovery obtained in this case could, in all probability, <u>only</u> be used tangentially in that case" or "does not appear to be calculated to produce any information related to [the bankruptcy case]." *Id.* at 516–17 (emphasis added). As opposed to the situation in this case, where SIGA commenced the case to obtain leverage against PharmAthene in the Delaware litigation, in *Coffee Cupboard*, the creditors tried to use the bankruptcy case to gain leverage in an unrelated litigation by obtaining information in the bankruptcy case that may not be reachable in the litigation. In *Snyder v. Society Bank*, 181 B.R. 40 (S.D. Tex. 1994), the movant's primary motive was to use the discovery in the state court action which the movant commenced. In *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002), the parties moving for Rule 2004 examination were litigants in a separate securities fraud action seeking to obtain information that the creditors' committee had obtained pursuant to its own Rule 2004 motion. Clearly, none of these decisions can be compared with the situation at hand.

[11] Curiously, SIGA, on the one hand, argues that all the relevant information was already produced to PharmAthene in discovery in the Delaware litigation between the parties, therefore, a Committee investigation is unnecessary, SIGA Objection to Rule 2004 Motion ¶ 38; but, on the other hand, SIGA objects to revealing information because it might reach PharmAthene. SIGA Objection to Rule 2004 Motion ¶ 24.

## II. The Retention Application Should Be Approved

12. <u>It Makes No Sense for Proskauer to Investigate Claims that Will Be Prosecuted By Another Firm</u>. SIGA asserts the Retention Application is unnecessary because Proskauer can investigate and prosecute any causes of action against SIGA and its affiliates. Besides the fact that the Committee (not SIGA) is entitled to choose its own counsel for different purposes, there are at least two major flaws with SIGA's position.

13. First, SIGA conveniently ignores that in Proskauer's retention papers, it disclosed that, from time to time, it has represented affiliates of MacAndrews & Forbes Holdings Inc. and MacAndrews & Forbes LLC (collectively, "<u>M&F</u>") in unrelated matters, and would, thus, be unable to prosecute any causes of action against M&F. *Declaration of Scott K. Rutsky in Support of Application of Statutory Creditors' Committee for Order Authorizing Employment and Retention of Proskauer Rose LLP as Its Attorneys Nunc Pro Tunc to October 8, 2014* ¶ 12 [ECF No. 124-2]. Because of this fact, the involvement of Proskauer into the investigation of any causes of action against SIGA and its affiliates would cause a bifurcation of work because a different firm would handle any ensuing lawsuit. This would actually cause an increase in costs, not to mention inefficiencies. Second, SIGA's position completely undermines any legitimate concern about cost, as the Joint Venture's hourly rates are significantly less than Proskauer's rates even after Proskauer granted a 10% discount.

14. <u>The Retention of the Joint Venture Will Reduce Expenses for the Estate</u>. Without any support, SIGA claims that any discount or contingency fee is "illusory." Objection to the Retention Application ¶ 10. SIGA plainly ignores the proposal. First, the Joint Venture has agreed to substantial discounts from its standard hourly rates (20% versus the standard 10% agreed to by many firms in this case). Second, the standard hourly rates of the Joint Venture are

dramatically lower than the standard hourly rates of other professionals employed in this case. For example, the hourly rates for associates are $250 to $500 for the Joint Venture and $459 to $820 for Weil.[12]  Third, the most time-intensive part of the Joint Venture's engagement will be compensated based on a contingency fee.  Indeed, if the Joint Venture advises that based on its investigation a complaint should be filed, and the Committee and this Court agree, then the Joint Venture will only be paid for litigating claims if there is a recovery.

15.    <u>There Will Be No Duplication Between Susman and Ressler</u>.  Ressler is a small contingency firm of four professionals with a special expertise in bad faith claims (like those at issue here) and a significant background in bankruptcy.  Susman is a world-class firm, well-known for bringing successful contingency cases against officers, directors, and insiders. The two firms have worked together on a number of complex cases, without duplication of effort or expense, and function as a single, integrated legal team.  It is irrelevant whether legal services are rendered by lawyers from a single firm.  The Committee's desire is to engage an effective, and cost efficient legal team.  That is exactly what is being proposed here, but after using expense as a basis to object to financial advisors and nearly everything else, SIGA now wants the more expensive alternative, Proskauer, to do the investigation.  A 20% discount off of hourly rates lower than Proskauer's for the investigation, and  a contingency fee arrangement for the litigation is somehow in SIGA's world more expensive.  Again, to state its position is to refute it.

---

[12]  A comparison of the standard hourly rates in this case is attached hereto as <u>Exhibit A</u>.

**WHEREFORE** the Committee respectfully requests that the Court enter an order: (i) overruling the Objections, (ii) granting the Rule 2004 Motion and the Retention Application, and (iii) granting the Committee such other and further relief as the Court deems just and proper.

Dated: May 11, 2015
New York, New York

**PROSKAUER ROSE LLP**

By: /s/ Martin J. Bienenstock
Martin J. Bienenstock
Scott K. Rutsky
Ehud Barak
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Statutory Creditors' Committee of SIGA Technologies, Inc.*