UNITED STATES BANKRUPTCY COURT      Hearing:    July 21, 2015 at 11:00 a.m.
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                            :

In re                                    :          Chapter 11
                                            :

SIGA TECHNOLOGIES, INC.,           :          Case No. 14-12623 (SHL)
                                            :

                    Debtor.         :
                                            :

-------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION
FOR ENTRY OF AN ORDER (I) APPROVING PAYMENT OF ANNUAL
PERFORMANCE BONUS TO SENIOR EXECUTIVE OFFICERS AND (II)
AUTHORIZING IMPLEMENTATION OF KEY EMPLOYEE RETENTION PLAN**

TO:     THE HONORABLE SEAN H. LANE,
          UNITED STATES BANKRUPTCY JUDGE:

       William K. Harrington, the United States Trustee for Region 2, in furtherance of the

duties and responsibilities set forth in 28 U.S.C. §§ 586(a)(3) and (5), hereby respectfully files

his objection (the "Objection") to the above-captioned debtor's Motion (the "Motion") for an

Order Pursuant to Sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code (I) Approving

Payment of Annual Performance Bonus to Senior Executive Officers and (II) Authorizing

Implementation of Key Employee Retention Plan (the "**KERP**").  ECF Doc. No. 250.

## I.  PRELIMINARY STATEMENT

       The Debtor seeks to pay performance bonuses (the "**Cash Performance Bonuses**") to

four (4) executives (the "**Executives**" or "**Participants**").[1]  The Debtor's perplexing blanket

assertion that it may pay bonuses to its executives without a court order because such payments

are permissible pursuant to Section 363(b)(1) of the Bankruptcy Code as ordinary course

payments is surprising, given the statutory and case law on this subject.  Equally incorrect is the

---

[1] By Order dated February 18, 2015, the Court authorized the implementation of the Debtor's Key Employee
Retention Plan for two non-insider key employees.  ECF Doc. No. 276.

Debtor's alternative argument that the bonuses should be approved under Section 363(b) with a

court order if there is a good business reason for the Debtor's decision to pay these bonuses.

Congress in 2005 added Section 503(c) to the Bankruptcy Code precisely to curtail bonuses in

bankruptcy cases.  The provisions of Section 503(c) establish specific evidentiary standards that

must be met before a bankruptcy court may authorize payments to insiders.  But instead of

addressing the governing statute, the Debtor has chosen simply to ignore them.  By taking this

approach, the Debtor has attempted to do an end-run around the statutory requirements, thereby

frustrating Congress's intent.  The Debtor's decision to disregard the governing statute should

not be sanctioned by the Court, and the Cash Performance Bonuses must be denied.

## II.  BACKGROUND

### A.    General

1.    On September 16, 2014 (the "**Petition Date**"), SIGA Technologies, Inc. (the

"**Debtor**" or "**SIGA**") commenced a voluntary case under Chapter 11 of the Bankruptcy Code.

ECF Doc. No. 1.  The Debtor continues to operate its business and manage its property as a

debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    The Debtor, a biotech/pharmaceutical company with 35 employees, produces,

among other products, Tecovirimat, an antiviral drug.  See Motion, ¶¶ 5-6.

3.    The Debtor's income derives principally from its contracts with the Biomedical

Advanced Research and Development Authority ("**BARDA**"), a component of the U.S.

Department of Health and Human Services.  See id. at ¶¶ 8-9, 22.  SIGA is currently seeking

approval from the U.S. Food & Drug Administration ("**FDA**") for the use of Tecovirimat.  Id. at

¶¶ 6, 22.

### B.    The Cash Performance Bonus

4.      The Debtor has four (4) senior executives, each of whom is to receive a Cash Performance Bonus, provided that the Motion is granted.  The Participants are as follows:  (i) Chief Executive Officer, Dr. Eric A. Rose; (ii) Vice President and Chief Scientific Officer, Dr. Dennis E. Hruby; (iii) Executive Vice President and Chief Financial Officer, Daniel J. Luckshire; and (iv) Executive Vice President and General Counsel, William J. Haynes II.  Id. at ¶ 11.

5.      Prior to the Petition Date, the Executives' compensation consisted of three components:  (i) base salary, (ii) an annual cash performance bonus, and (iii) equity compensation.  Id. at ¶ 16.  According to the Motion, this compensation policy has been in effect "since early 2012."  Id.

6.      A Compensation Committee of SIGA's Board of Directors awarded the performance bonus and equity compensation on an annual basis.  Id. at ¶ 17. [2]  The performance bonus and equity compensation were "generally payable no later than March 15 of the year following the fiscal year to which [they] relate."  Id.

7.      The Debtor seeks authority to pay the Cash Performance Bonus to the Executives, which the Debtor states "incentivize[d] the [Executives] to, among other things, remain committed to the commercial goals of Tecovirimat, derive value for the BARDA Contracts, and expedite FDA approval" so that the company can "sell[] SIGA's lead product to a broader market."  Id. at ¶ 22.

8.      Although the Motion states that the Compensation Committee "engages in a competitive market analysis and benchmarking of the compensation awarded to executives of similar companies," Id. at ¶ 21, it also cautions that, because "SIGA's operations and business model are unique," its "success . . . cannot be measured with customary metrics such as EBITDA

---

[2] The Debtor states that in 2012 and 2013, approximately 55% of the Executives' overall compensation was attributable to the performance bonuses and equity compensation.  Motion, ¶ 18.

and gross sales, which are frequently used by other companies to evaluate executive

performance." Id. at 22.

9.      The Debtor explains that the Compensation Committee, "[i]n determining

whether to award the Cash Performance Bonus for 2014," considered several factors, as follows:

> (i) creating value through the BARDA Contracts, (ii) the
> successful restructuring of SIGA's business operations to
> position SIGA for diversification of its business, (iii)
> SIGA's regulatory progress with the FDA, (iv) SIGA's
> financial growth and strength, and (v) SIGA's operational
> stability and performance subsequent to the commencement
> of its chapter 11 case.

Id. at 23.

10.     Finally, the Debtor states that the each of the Executives is "integral to the

Debtor's operations and the successful execution of the BARDA Contracts." Id. at 11.

## III.  DISCUSSION

### A.      The Legal Framework:  Section 503 of the Bankruptcy Code

Section 503(c) of the Bankruptcy Code provides in relevant part:

Notwithstanding subsection (b), there shall neither be allowed, nor paid –

(1)     a transfer made to, or an obligation incurred for the benefit of, an insider of the
debtor for the purpose of inducing such person to remain with the debtors'
business, absent a finding by the court based on evidence in the record that

   (A)     the transfer or obligation is essential to retention of the person because the
   individual has a bona fide job offer from another business at the same or
   greater rate of compensation;

   (B)     the services provided by the person are essential to the survival of the
   business; and

   (C)     either –

      (i) the amount of the transfer made to, or obligation incurred for the
      benefit of, the person is not greater than an amount equal to 10 times the
      amount of the mean transfer or obligation of a similar kind given to

nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

(ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

. . .

(3)     other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c).

Congress added Section 503(c) in 2005 as one of the BAPCPA amendments in 2005, to curtail payments of retention incentives to insiders.  In re Journal Register Co., 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009).  In particular, Congress imposed significant limits on the payments of retention and incentive bonuses and severance to insiders and on the payments of retention bonuses granted to non-insiders without factual and circumstantial justification.  Id.  The intent of Section 503(c) is to "limit the scope of "key employee retention plans" and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor."  4 Alan N. Resnick & Henry J. Sommer (eds.), Collier on Bankruptcy ¶ 503.17 (15th ed. rev. 2007); In re AMR Corp., 497 B.R. 690, 696 (Bankr. S.D.N.Y. 2013) (the language of Section 503(c) is prohibitive; if payments to insiders do not comply with the applicable 503(c) provisions, they "shall neither be allowed, nor paid"); accord In re Residential Capital LLC, 478 B.R. 154 (Bankr. S.D.N.Y. 2012) ("Rescap.").

Section 503(c) establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments to an insider for the purpose of inducing such person

to remain with a debtor's business or payments made on account of severance.  In re Dana Corp., 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) ("Dana I"); 11 U.S.C. § 503(c)(1).  By enacting the BAPCPA, Congress put into place "a set of challenging standards" and "high hurdles" for debtors to overcome before retention bonuses could be paid.  In re Mesa Air Grp., Inc., Case No. 10-10018 (MG), 2010 WL 3810899, *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citations omitted). The proponent of a bonus plan has the burden of showing that the plan is not a retention plan governed by Section 503(c)(1).  In re Hawker Beechcraft, Inc., 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).

Where Section 503(c)(1) applies, the transfer cannot be justified solely on the debtor's business judgment. See In re Borders Grp., Inc., 453 B.R. 459, 470-71 (Bankr. S.D.N.Y. 2011). If a proposed transfer falls within Section 503(c)(1), then the business judgment rule does not apply, regardless of whether a sound business purpose may actually exist.  Dana I, 351 B.R. at 100; 11 U.S.C. § 503(c)(1).

Further, a debtor's label of a plan as incentivizing to avoid the strictures of Section 503(c)(1) must be viewed with skepticism; rather, the circumstances under which the proposal is made and the structure of the compensation package control.  In re Velo Holdings Inc., 472 B.R. 201, 209-10 (Bankr. S.D.N.Y. 2012) ("Attempts to characterize what are essentially prohibited retention programs as incentive programs in order to bypass the requirements of section 503(c)(1) are looked upon with disfavor, as the courts consider the circumstances under which particular proposals are made, along with the structure of the compensation packages, when determining whether the compensation programs are subject to section 503(c)(1).") (internal quotation marks and citations omitted); see also Rescap., 478 B.R. at 161 (An incentive plan "should incentivize employees for their post-petition efforts, not compensate them for the work

they did before the bankruptcy filing."); <u>Hawker Beechcraft</u>, 479 B.R. at 313 ("The concern in

the type of motion presented ... is that the debtor has dressed up a KERP to look like a KEIP in

the hope that it will pass muster under the less demanding 'facts and circumstances' standard in

... § 503(c)(3)."); <u>Dana I</u>, 351 B.R. at 102 n. 3 ("If it walks like a duck (KERP) and quacks like a

duck (KERP), it's a duck (KERP).").

Finally, not only must bonus plans comply with Section 503(c) but, as administrative

expenses they must also be "actual, necessary costs and expenses of preserving the estate," as

required by Section 503(b).

**B.  The Cash Performance Bonuses Must be Denied as the Debtor Has Failed to
    Demonstrate That It Passes Muster Under Section 503(c)**

The Debtor argues that the Motion was made purely in an abundance of caution because

the Cash Performance Bonuses are ordinary course transactions which do not require a court

order in order to be paid, pursuant to section 363(c) of the Bankruptcy Code.  <u>See</u> Motion at Para

45.   Alternatively, the Debtor further argues that even if the Court were to find the Cash

Performance Bonuses to be out of the ordinary course of the Debtor's business, they should still

be approved, pursuant to section 363(c) because the Debtor had a good business reason for using

the Debtor's assets to make the Cash Performance Bonuses.   <u>Id</u>.   The Debtor's argument that

Section 363(c) of the Code is the appropriate framework of analysis for a bonus program is

incorrect.

The Debtor is seeking authority to incur an administrative expense for this bonus plan,

notwithstanding Congress's mandate through Section 503(c) that bonuses to insiders are not to

be authorized absent factual and circumstantial justification.  <u>See</u> <u>Journal Register</u>, 407 B.R. at

535.  Permitting the Debtor to avoid a specific provision of the Bankruptcy Code governing the

payment of bonuses by relying instead on the more general provisions of section 363(c)(3),

would frustrate the intention of Congress in promulgating Section 503(c)(3).  See RadLAX

Gateway Hotel, LLC v. Amalgamated Bank, 132 S. Ct. 2065, 2070-71 (2012) (general

authorizations in the Bankruptcy Code cannot be used to avoid specific statutory provisions); In

re Smart World Techs., LLC, 423 F.3d 166, 184 (2d Cir. 2005) (bankruptcy court's authority to

make "necessary or appropriate orders" does not allow the bankruptcy court to "overstep"

"statutory limitations").

       In its only reference to Section 503(c)(1) in connection with the Cash Performance

Bonus, the Debtor simply asserts that the Cash Performance Bonus does not contravene the

provisions of section 503(c)(1) of the Bankruptcy Code.  However, the Debtor provides no

analysis whatsoever, and even under the United States Trustee's cursory analysis the Cash

Performance Bonus does not pass muster under section 503(c)(1) for several reasons.

       First, the Motion provides no evidence that the Cash Performance Bonus is not primarily

retentive for purposes of Section 503(c)(1).   Second, the Debtor does not argue that the

Executives are not "insiders" under Section 101(31) of the Bankruptcy Code, i.e., that they are

not officers or "persons in control" of the Debtor.  11 U.S.C. § 101(31)(B)(ii); see also In re

Global Aviation Holdings, Inc., 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) (statutory definition

is "merely illustrative and the term insider should be flexibly applied on a case by case basis);

Borders, 453 B.R. at 469 ("[i]nsider status can also be determined on a case by-case basis based

on the totality of the circumstances, including the degree of an individual's involvement in a

debtor's affairs"); In re Foothills Texas, Inc., 408 B.R. 573, 574 (Bankr. D. Del. 2009) (a person

holding an officer's title is presumptively an officer and thus an "insider," unless rebutted).

       Moreover, even if the Debtor were able to demonstrate that Section 503(c)(3) applies, the

Debtor must establish by a preponderance of the evidence that the Bonus Plan is primarily

incentivizing and not primarily retentive.  Rescap., 478 B.R. at 170; Hawker Beechcraft, 2012 WL 3637251, at *4.  The Debtor has not provided any such analysis and the Court, the United States Trustee and interested parties should not be required to guess as to what analysis the Debtor would have applied if it had applied the correct legal framework.  As such, the Debtor has failed to meet its burden of proof to establish that the Cash Performance Bonuses are permissible under Section 503(c) of the Bankruptcy Code and that aspect of the Motion must be denied.

As an aside, it is noted that the Debtor does not suggest that the Executives would not perform the necessary work adequately without the proposed bonuses.  Insiders should not be paid bonuses to "incentivize" them to live up to their fiduciary duties to the estate.  See Dana I, 351 B.R. at 102 (citing Clarkson Co., Ltd. v. Shaheen, 660 F.2d 506, 512 (2d Cir. 1981)).   They have existing obligations to perform the services for which they are already being paid.  See 11 U.S.C. §§ 704 and 1106.  In any event, there is no evidence that the Executives would not perform the work necessary to meet the "goals and objectives" described in the Motion.  See Motion, ¶ 23.


## IV.   CONCLUSION

The Debtor has failed to demonstrate that the Cash Performance Bonuses satisfies statutory muster under section 503(c) and therefore, it should not be approved.   With respect to both the Cash Performance Bonuses and the KERP, to the extent that the Debtor argues that the business judgment test applies, that argument should be rejected by the Court.

**WHEREFORE,** the United States Trustee respectfully requests that the Court sustain the foregoing Objection, deny the Motion, and grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        July 20, 2015

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:     */s/ Richard C. Morrissey*
        Richard C. Morrissey
        Trial Attorney
        U.S. Federal Office Building
        201 Varick Street, Suite 1006
        New York, New York 10014
        Tel. No. (212) 510-0500