HEARING DATE AND TIME: August 18, 2015 at 2:00 p.m. (Eastern Time)
OBJECTION DEADLINE: August 11, 2015 at 4:00 p.m. (Eastern Time)

Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                                          :     Chapter 11 Case No.
                                                               :
**SIGA TECHNOLOGIES, INC.,**                                   :     14-12623 (SHL)
                                                               :
                      **Debtor.**                              :
                                                               :
---------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF DEBTOR**
**FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. § 1121(d)**
**FURTHER EXTENDING EXCLUSIVE PERIODS**

PLEASE TAKE NOTICE that a hearing on the annexed Motion, dated August 3, 2015 (the "**Motion**"), of SIGA Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), for an order pursuant to section 1121(d) of title 11, United States Code (the "**Bankruptcy Code**"), further extending the Debtor's exclusive periods in which to file a chapter 11 plan and solicit acceptances thereof, all as more fully set forth in the Motion, will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), on **August 18, 2015 at 2:00 p.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) the attorneys for the Debtor, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Stephen Karotkin); (ii) the Debtor, c/o SIGA Technologies, Inc., 660 Madison Avenue, Suite 1700, New York, New York 10065 (Attn:  William J. Haynes II, Esq.); (iii) the attorneys for the statutory creditors' committee, Proskauer Rose LLP, Eleven Times Square, New York, New York  10036 (Attn:  Martin J. Bienenstock, Esq. and Scott K. Rutsky, Esq.); and (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn:  Richard C. Morrissey, Esq.), so as to be received no later than **August 11, 2015 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtor may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

Dated: New York, New York
      August 3, 2015

        /s/ Stephen Karotkin
        Stephen Karotkin
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Debtor
        and Debtor in Possession

HEARING DATE AND TIME: August 18, 2015 at 2:00 p.m. (Eastern Time)
OBJECTION DEADLINE: August 11, 2015 at 4:00 p.m. (Eastern Time)

Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
SIGA TECHNOLOGIES, INC.,                      :    14-12623 (SHL)
                                              :
                              Debtor.         :
                                              :
------------------------------------------------------------x
```

**MOTION OF DEBTOR FOR ENTRY OF ORDER**
**PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING EXCLUSIVE PERIODS**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

SIGA Technologies, Inc. ("**SIGA**" or the "**Debtor**"), respectfully represents:

**Background**

1. On September 16, 2014 (the "**Commencement Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

2. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit

of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2, sworn to on September 16, 2014 (ECF No. 3) (the "**Rose Affidavit**"), which is incorporated herein by reference.

### The Creditors' Committee

3.  On October 7, 2014, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Statutory Creditors' Committee (ECF No. 61) (the "**Committee**").

### Jurisdiction

4.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

5.  By Order, dated January 14, 2015 (ECF No. 238) (the "**First Extension Order**"), the Court granted SIGA an extension of the initial 120-day period during which it had the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and the 180-day period to obtain acceptances of its plan (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), through and including May 14, 2015 and July 13, 2015, respectively, pursuant to section 1121(d) of the Bankruptcy Code. By Order, dated May 18, 2015 (ECF No. 423) (the "**Second Extension Order**"), the Court granted SIGA a further extension of the Exclusive Periods, through and including August 14, 2015 and October 13, 2015, respectively, pursuant to section 1121(d) of the Bankruptcy Code. Concurrently herewith, the Debtor has provided the Court with a proposed "bridge order" extending the Exclusive Periods until such time as this Court has rendered a ruling on this Motion.

2

6. Pursuant to this Motion, the Debtor requests, pursuant to section 1121(d) of the Bankruptcy Code, a further four-month extension of (a) the Exclusive Filing Period through and including December 14, 2015 and (b) the Exclusive Solicitation Period through and including February 16, 2016, in each case, without prejudice to the Debtor's right to seek additional extensions of such periods.

7. As demonstrated below, a further extension of the Exclusive Periods in this chapter 11 case as requested clearly is warranted, is in the best interest of the Debtor's economic stakeholders, including SIGA's more than 5,500 public stockholders, and is consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. As previously reported to this Court, SIGA has been engaged in negotiations with the Committee with respect to the terms of a chapter 11 plan in an attempt to develop consensus. These negotiations are ongoing and have been very productive. The parties, however, have not yet reached an agreement on all terms. SIGA is optimistic that these negotiations and discussions will culminate in a consensual plan of reorganization, but there is more work to be done and more time is needed to achieve this goal. Granting the requested extension of the Exclusive Periods will permit SIGA and the Committee to continue their negotiations in a rational and productive manner, and under circumstances and in an atmosphere most likely to produce a successful result.

8. If, on the other hand, the plan negotiations with the Committee are unsuccessful, the Debtor would be faced with the prospect of formulating a chapter 11 plan in the context of the uncertainty created by its pending appeal before the Delaware Supreme Court, in the action commenced by PharmAthene, Inc. ("**PharmAthene**") in the Delaware Court of Chancery, styled *PharmAthene, Inc. v. SIGA Technologies, Inc.*, Civ. Action No. 2627-VCP (the "**PharmAthene Litigation**"). The dispute as to the magnitude of the Debtor's liability to

3

PharmAthene, if any, in the absence of a consensual plan, impacts the ability to propose a rational plan, including not only the appropriate treatment of PharmAthene's disputed claim, but also the treatment of the claims of other creditors, as well as the treatment of SIGA's thousands of public stockholders.  The appeal is fully briefed, oral argument is expected to occur in October, and based on how expeditiously the Delaware Supreme Court recently has been deciding cases, a disposition of the appeal should occur before year end.  Given that this litigation is so near conclusion, in the absence of a consensual plan with the Committee, the Debtor should be afforded the opportunity to formulate and propose a chapter 11 plan in the context of the certainty that ruling will bring to the plan process and the determination of the appropriate distributions to the various constituencies.

9. SIGA believes it has meritorious grounds on appeal that either will eliminate any claim for expectation damages or substantially reduce any claim that PharmAthene may have.  Given the size of the Chancery Court's judgment and its potential impact on SIGA's business, creditors, stockholders, and the entire plan process, the importance of pursuing the appeal to finality cannot be under-estimated.

10. The PharmAthene Litigation and its disputed status continue to present a major impediment to the chapter 11 plan process.  Until more clarity is reached as to the ultimate amount of PharmAthene's disputed claim or a consensus can be reached with the Committee that fully addresses this uncertainty and assures SIGA's ability to operate effectively and maximize value for all of its stakeholders, the formulation of a sensible chapter 11 plan of reorganization that extracts SIGA's business enterprise from the specter of the PharmAthene Litigation and its overhang on SIGA's ability to fully exploit its potential, is not realistically achievable.  This is particularly important in view of the Debtor's contracts with the Biomedical Advanced Research

4

and Development Authority ("**BARDA**") and the need to assure BARDA of the Debtor's long-term stability and viability.

11. Moreover, extending the Exclusive Periods as requested will not harm or prejudice creditors, is in the best interests of all stakeholders, and will result in a fair and equitable plan process. The Debtor's business enterprise is operating smoothly. SIGA is fully complying with its obligations under the BARDA contracts, it is proceeding as expeditiously as possible towards FDA approval of its smallpox drug, Tecovirimat, and has unencumbered cash on hand in excess of $100 million. PharmAthene already has indicated its willingness to forgo any distribution until the PharmAthene Litigation is finally resolved. Under these circumstances, it would be imprudent to compel the Debtor to propose a chapter 11 plan at this time given that the PharmAthene Litigation likely will be resolved within the next several months and in view of the ongoing plan negotiations with the Committee.

12. SIGA is committed to negotiating an appropriate consensual plan of reorganization with the Committee while it concurrently pursues its appeal of the PharmAthene Litigation or a settlement of such litigation. The requested extension of the Exclusive Periods will enable the plan process to continue to unfold in a reasonable manner, avoid the disruption, expense and loss of value inevitably attendant to a competing plan scenario, will maximize the possibility of reaching a consensus, and will enable the Debtor to achieve a successful reorganization for the benefit of all economic stakeholders.

## Basis for Relief Requested

13. Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after

5

notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."). However, the 120-day period "may not be extended beyond a date that is 18 months after the [commencement] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [commencement] date." *Id.* § 1121(d)(2). Ample cause exists to further extend the Exclusive Periods for SIGA as requested in this Motion.

14. The Exclusive Periods established by Congress were incorporated in the Bankruptcy Code to afford a full and fair opportunity for a debtor to propose a chapter 11 plan and enable solicitation of acceptances of the plan without the deterioration and disruption of a debtor's business typically caused by the filing of competing plans. Indeed, the primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan. SIGA intends to achieve this objective. Extending the Exclusive Periods will provide SIGA a full and fair opportunity to accomplish this in a rational and value-enhancing scenario.

15. The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the exclusive periods. The legislative history of section 1121 indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

6

16. The broad discretion the Court may exercise in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *See In re Borders Group, Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same). Those factors are not exclusive and include, without limitation:

(i) the size and complexity of the debtor's case;

(ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

(vii) the amount of time which has elapsed in the case;

(viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

7

     (ix) whether an unresolved contingency exists.

*Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also Borders*, 460 B.R. at 822 (evaluating the nine factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *McLean Indus.*, 87 B.R. at 834; *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that debtor showed cause to extend exclusive period based upon certain of the nine factors).

  17. Application of the identified standards to the unique facts of this chapter 11 case demonstrates that, based upon the totality of the circumstances, cause exists to grant the requested extensions of the Exclusive Periods. The extensions are necessary and appropriate in order for SIGA to have the opportunity contemplated by the Bankruptcy Code, and to maximize the potential for confirming a plan that preserves and maximizes value and that is fair and equitable to all of SIGA's economic stakeholders, including its thousands of public stockholders.

**Plan Negotiations with the Committee**

  18. As the Court is well-aware, the Debtor, the Committee, and their respective retained professionals have been and continue to be engaged in substantive plan negotiations to achieve a consensual plan. As previously noted, these negotiations have focused on whether a plan construct can be achieved pursuant to which SIGA could emerge from chapter 11, but continue the PharmAthene Litigation to final judgment subsequent to the effective date of a plan without the need to post a bond. This rather unique type of plan construct involves a number of complex issues the parties are working through, including addressing issues relating to SIGA's ongoing operations and related matters during the period between the effective date of

the plan and when the PharmAthene Litigation is finally resolved, either in the Delaware Courts or by a settlement.

19. These negotiations are ongoing and have encompassed several face to face meetings, the exchange of extremely detailed proposed plan of reorganization term sheets, and the commencement of the drafting of a proposed plan to further advance the process. The parties and their respective professionals have worked diligently and in good faith in this effort and have made substantial progress toward achieving a consensus. While, as noted, there remain several unresolved points that the parties continue to discuss, the negotiations have been very constructive and the parties continue to be deeply engaged in the process.

20. Extending the Exclusive Periods as requested in this Motion will permit these negotiations to continue in the appropriate context and in an environment conducive to reaching a deal. The Court should allow this scenario to continue without the disruption and alteration of the negotiating dynamics that a termination of the Exclusive Periods necessarily will create, particularly where significant progress is being made.

**Important Contingencies Are Near Resolution**

21. In addition to the ongoing plan negotiations, the current status of the appeal in the PharmAthene Litigation to the Delaware Supreme Court and its imminent resolution alone constitute sufficient cause to grant the requested extension of the Exclusive Periods. As stated, the significance of the ultimate liquidation of PharmAthene's claim to the plan formulation process cannot be underestimated. The amount of PharmAthene's claim, if any, will impact materially the Debtor's liquidity and financial position, the appropriate treatment to be provided to holders of claims and SIGA's public stockholders and, thus, the structure of any rational chapter 11 plan. The appeal before the Delaware Supreme Court is

9

proceeding on schedule, and argument is expected in the Fall, with a decision shortly thereafter. Given the significance of the PharmAthene Litigation to the formulation of a sensible and fair and equitable plan, and the imminence of a decision by the Delaware Supreme Court, the requested extensions certainly are reasonable and justifiable.

22. Indeed, in view of the fact that this case has not reached its one year anniversary, the ongoing plan negotiations and the lack of prejudice that will be suffered by any party in interest, the requested extensions of the Exclusive Periods are appropriate and consistent with the intent and purpose of chapter 11. To terminate the Exclusive Periods at this juncture would defeat the very purpose of section 1121 of the Bankruptcy Code – to afford the Debtor a meaningful opportunity to negotiate with its stakeholders and propose a confirmable chapter 11 plan. Terminating the Exclusive Periods should not be permitted, especially where there is a tangible and reasonable timetable to final resolution of the PharmAthene Litigation, as well as substantive and productive plan negotiations taking place concurrently.

**SIGA Continues to Make Good Faith**
**Progress to Achieve the Objectives of Chapter 11**

23. As noted in SIGA's motion for the Second Extension Order (ECF No. 385) (the "**Second Extension Motion**"), SIGA has made significant progress in furtherance of its reorganization under chapter 11, including stabilizing its business, reaffirming relationships with key suppliers and service providers, assuming its contracts with BARDA to ensure continuation of its sole revenue source and path to FDA approval, implementing certain cost-reduction measures, and generally administering the chapter 11 case efficiently and economically.

24. SIGA has administered and will continue to administer its chapter 11 case in an expeditious and cost-efficient manner that will maximize value, no matter who may be entitled to that value. Notwithstanding the progress SIGA has made to date, achieving a successful reorganization requires additional time to continue the ongoing plan negotiations and, in the event those discussions are not successful, to gain clarity with respect to the PharmAthene Litigation and its impact on the Debtor, its creditors, its stockholders, and other parties in interest. The requested extensions are reasonable and appropriate in the context of these facts and circumstances.

**The Requested Extensions Have a Proper Purpose**

25. This is the Debtor's third request for extensions of the Exclusive Periods. The Debtor is not seeking these extensions as a negotiation tactic, to artificially delay the conclusion of this chapter 11 case, or to hold creditors hostage to an unsatisfactory plan proposal. Rather, the requested extensions are driven by the Debtor's desire to continue the productive plan negotiations with the Committee in the hope of reaching a plan structure satisfactory to the Debtor and the Committee, and to conduct those negotiations in circumstances that will maximize the opportunity for success. The extensions also are necessary in light of the unresolved issues that must be addressed for the Debtor to propose a plan that will be fair and equitable to all of its economic stakeholders and that will assure SIGA's ability to thrive and prosper.

26. Moreover, as stated, no parties in interest will be prejudiced by the requested extensions. PharmAthene already has indicated its willingness to await any distribution until the PharmAthene Litigation is finally resolved. Further, the Debtor's business operations are sound and the requested extensions will permit the plan process to unfold in a

11

rational manner that will enhance value for all economic stakeholders.  Conversely, termination of the Exclusive Periods at this juncture will upset the delicate balance critical to achieving a consensual plan and result in unnecessary business uncertainty and dislocation that can only be value destructive to all parties in interest.

27.     This is particularly important in view of the BARDA Contracts.  As the Court is well aware, the BARDA Contracts are critical not only to SIGA's near-term cash flow, but also to its long-term prospects.  Notwithstanding the fact that the BARDA Contracts have been assumed, termination of the Exclusive Periods at this juncture or a disorderly plan process would expose the Debtor to a crisis in confidence, undermining SIGA's relationship with BARDA.  This likely would jeopardize BARDA's favorable and prompt consideration of important discretionary items in the contracts, interrupt and delay SIGA's receipt of revenues and delay the FDA approval process, which is absolutely essential to opening up substantial new markets both domestically and internationally.  The Court should not permit this scenario to unfold.

**The Debtor Is Making Required Postpetition Administrative
Expense Payments as They Come Due and Has the Ability to Continue to Do So**

28.     Courts considering an extension of exclusivity also may assess a debtor's liquidity and solvency.  *See Adelphia Commc'ns*, 352 B.R. at 587; *Texaco*, 76 B.R. at 322.  Here, there is no question the Debtor has more than sufficient liquidity and is paying its administrative expenses as they come due and will continue to do so.

## Conclusion

29.     As stated, SIGA is prosecuting the appeal to resolve the PharmAthene Litigation as expeditiously as possible and simultaneously is engaged in constructive

negotiations with the Committee with respect to a consensual plan of reorganization. The requested extensions of the Exclusive Periods will allow this process to continue in a rational manner, preserve enterprise value and SIGA's relationship with BARDA, and provide SIGA with a fair and reasonable opportunity to negotiate, propose, file, and solicit acceptances of a chapter 11 plan as contemplated by chapter 11 of the Bankruptcy Code.

### Notice

30. Notice of this Motion has been provided to parties in interest in accordance with the Order Pursuant to 11 U.S.C. §§ 105(a) and (d) and Bankruptcy Rules 2002(m) and 9007 Implementing Certain Notice and Case Management Procedures (ECF No. 138). The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

31. No previous request for the relief sought herein has been made by the Debtor to this or any other Court, other than the motions resulting in the First Extension Order and the Second Extension Order.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       August 3, 2015

/s/ Stephen Karotkin
Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                      :

In re                                               :         Chapter 11 Case No.
                                                    :

SIGA TECHNOLOGIES, INC.,              :         14-12623 (SHL)
                                                    :
                 Debtor.                    :
                                                      :
------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. § 1121(d)
FURTHER EXTENDING EXCLUSIVE PERIODS**

Upon the Motion, dated August 3, 2015 (the "**Motion**"),[1] of SIGA Technologies, Inc. (the "**Debtor**"), pursuant to section 1121(d) of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order further extending the Debtor's exclusive periods in which to file a chapter 11 plan (the "**Exclusive Filing Period**") and solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the relief sought in the Motion is in the best interests of the Debtor, its estate, creditors, and all parties in interest, and that just cause exists for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtor's Exclusive Filing Period in which to file a chapter 11 plan is extended to and including December 14, 2015; and it is further

ORDERED that, pursuant to section 1121(d) of the Bankruptcy Code, the Debtor's Exclusive Solicitation Period in which to solicit acceptances of its chapter 11 plan is extended to and including February 16, 2016; and it is further

ORDERED that the extensions of the Exclusive Periods granted herein are without prejudice to such further requests that may be made pursuant to section 1121(d) of the Bankruptcy Code by the Debtor or any party in interest, for cause shown, upon notice and a hearing; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
       August [  ], 2015

 

_____
United States Bankruptcy Judge

WEIL:\95405707\7\74193.0003